1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NORTHWEST IMMIGRANT RIGHTS
PROJECT ("NWIRP"), a nonprofit Washington
public benefit corporation; and YUK MAN
MAGGIE CHENG, an individual,

Plaintiffs,

v.

JEFFERSON B. SESSIONS III, in his official
capacity as Attorney General of the United
States; UNITED STATES DEPARTMENT OF
JUSTICE; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW;  JUAN OSUNA, in
his official capacity as Director of the Executive
Office for Immigration Review; and JENNIFER
BARNES, in her official capacity as
Disciplinary Counsel for the Executive Office
for Immigration Review,

Defendants.

No. 2:17-cv-00716

MOTION FOR TEMPORARY
RESTRAINING ORDER

Note on Motion Calendar:
May 8, 2017

ORAL ARGUMENT REQUESTED

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

                                                                                                    **Page**

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................ 2

     A.   NWIRP Plays a Critical Role in Providing Legal Assistance to Immigrants............. 2

     B.   EOIR Threatens NWIRP with Disciplinary Sanctions for Providing Limited Legal
          Assistance to Unrepresented Immigrants ..................................................... 3

III. ARGUMENT ..................................................................................................... 5

     A.   Plaintiffs Meet the Standard for Granting Temporary Relief ................................ 5

     B.   Plaintiffs Are Likely to Succeed on the Merits Because EOIR's Compulsory-
          Representation Rule is Unconstitutional ..................................................... 6

          1.   EOIR's Compulsory-Representation Rule Violates the First Amendment
               Because It Unduly Burdens Plaintiffs' Right to Free Speech and Petition
               the Government ................................................................................. 6

               a.   Plaintiffs Have a Well-Established First Amendment Right to Speak
                    and Associate through the Provision of Nonprofit Legal Services .......... 6

               b.   EOIR's Rule is Subject to Strict Scrutiny Because It Imposes a
                    Content-Based Restriction and Targets Political Speech ...................... 9

               c.   The Rule Cannot Survive Strict Scrutiny ............................................. 10

                    (1)   *EOIR Cannot Articulate a Compelling Interest in Enforcing
                          the Compulsory-Representation Rule Against NWIRP* ................. 10

                    (2)   *The Rule Is Not Narrowly Tailored to Achieve EOIR's
                          Purported Interest* ...................................................... 12

               d.   The Rule Cannot Survive Intermediate Scrutiny.................................... 15

          2.   EOIR's Compulsory-Representation Rule Violates the Tenth Amendment
               Because It Interferes in the States' Power to Regulate Lawyer Conduct
               and Representation ............................................................................ 16

               a.   The Tenth Amendment Vests States with the Exclusive Right to
                    Regulate Lawyer Conduct Outside of Federal Proceedings.................. 16

               b.   EOIR's Compulsory-Representation Rule Encroaches Upon
                    Washington State's Sovereign Power to Regulate Lawyer Conduct ..... 17

     C.   Plaintiffs Are Suffering, and Will Continue to Suffer, Immediate and Irreparable
          Harm from EOIR's Conduct ................................................................... 21

     D.   The Balance of Equities and Public Interest Strongly Favor Immediate Relief....... 24

IV.  CONCLUSION .............................................................................................. 24

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – i

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3BA Intern. LLC v. Lubahn*,
No. C10-829RAJ, 2010 WL 2105129 (W.D. Wash. May 20, 2010) .....................................6

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..............................................................................................5, 6

*Bond v. United States*,
564 U.S. 211 (2011) ..................................................................................................................16

*Bradwell v. People of State of Illinois*,
83 U.S. (16 Wall.) 130 (1872) ..................................................................................................16

*Buckley v. Valeo*,
424 U.S. 1 (1976) .........................................................................................................................9

*Conant v. Walters*,
309 F.3d 629 (9th Cir. 2002) .................................................................................................6, 8

*Denius v. Dunlap*,
209 F.3d 944 (7th Cir. 2000) ....................................................................................................15

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2013) ..................................................................................................23

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ..................................................................................................................10

*Elrod v. Burns*,
427 U.S. 347 (1976) ..................................................................................................................22

*Forsyth Cnty., Ga. v. Nationalist Movement*,
505 U.S. 123 (1992) ............................................................................................................13, 14

*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975) ..................................................................................................................17

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) .....................................................................................................................8, 9

*Hunter ex rel. Brandt v. Regents of Univ. of Cal.*,
190 F.3d 1061 (9th Cir. 1999) ..................................................................................................12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*In re Primus*,
   436 U.S. 412 (1978) ........................................................................7, 8, 9, 11

*Jean v. Nelson*,
   727 F.2d 957 (11th Cir. 1984) ...................................................................7, 10

*Legal Services. Corp. v. Velazquez*,
   531 U.S. 533, 543 (2001) ...................................................................7, 9, 14, 15

*Leis v. Flynt*,
   439 U.S. 438 (1979) ...........................................................................................17

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ...................................................................................10, 14

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ......................................................................21, 24

*Moncrieffe v. Holder*,
   133 S. Ct. 1678, 1690 (2013) ............................................................................23

*NAACP v. Button*,
   371 U.S. 415 (1963) ................................................................................ *passim*

*New York v. United States*,
   505 U.S. 144 (1992) ...........................................................................................16

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978) ...........................................................................................17

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir. 2014) ..........................................................................14

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ............................................................................24

*Reed v. Town of Gilbert, Ariz.*,
   135 S. Ct. 2218 (2015) .........................................................................................9

*Reno v. ACLU*,
   521 U.S. 844 (1997) ...........................................................................................13

*San Diego Comm. Against Registration & the Draft (Card) v. Governing Bd. of Grossmont Union High Sch. Dist.*,
   790 F.2d 1471 (9th Cir. 1986) ..........................................................................22

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180 (9th Cir. 2011) ..........................................................................23

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ...................................................................................10

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011) ................................................................................6, 16

*Sperry v. Florida*,
    373 U.S. 379 (1963) ..................................................................................17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ......................................................................5

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
    389 U.S. 217 (1967) ....................................................................................7

*Univ. of Haw. Prof. Assembly v. Cayetano*,
    183 F.3d 1096 (9th Cir. 1999) ...................................................................24

*Ward v. Rock Against Racism*,
    491 U.S. 781  (1989) .............................................................................15, 16

*Winter v. Nat'l Res. Def. Council*,
    555 U.S. 7 (2008) ................................................................................5, 24

*Wollschlaeger v. Florida*,
    848 F.3d 1293 (11th Cir. 2017) ...................................................................8

**Regulations**

8 C.F.R. § 1001.1(i) ..............................................................................3, 4, 18

8 C.F.R. § 1001.1(k) ..........................................................................3, 4, 9, 18

8 C.F.R. § 1003.101(t) ...............................................................................3, 9

8 C.F.R. § 1292 ..............................................................................................3

73 Fed. Reg. 76,914 .............................................................................3, 10, 11

80 Fed. Reg. 59,500 .......................................................................................4

**Rules**

Washington Rule of Prof. Conduct 1.2 .............................................................15, 19

Washington Rule of Prof. Conduct 1.6 .............................................................15, 20

Immigration Court Practice Manual, Rule 2.3(d) ..............................................4, 18

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**Constitutional Provisions**

United States Constitution, First Amendment .................................................................... *passim*

United States Constitution, Tenth Amendment ........................................................6, 16, 19, 21

**Other Authorities**

Ingrid Eagly & Steven Shafer, *Special Report: Access to Counsel in Immigration Court*, Am. Imm. Council (Sept. 2016) ...........................................................23

Undisclosed Legal Assistance to Pro Se Litigations, American Bar Ass'n Formal Opinion 07-446 (May 5, 2007) ...............................................20

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# I.   INTRODUCTION

The Northwest Immigrant Rights Project ("NWIRP") provides free and low-cost legal assistance to more than 10,000 immigrants each year through its 70 staff members and more than 350 volunteer attorneys.  However, the Executive Office for Immigration Review ("EOIR")—the federal agency charged with adjudicating immigration court cases—has now issued NWIRP a "cease and desist" order, constraining NWIRP's ability to offer this assistance.  Based on a new and novel application of its own 2008 rule governing attorney misconduct, EOIR now insists that NWIRP must either commit in advance to full legal representation of *every* immigrant in removal proceedings it assists (which is plainly impossible), or refrain from providing them *any* form of legal assistance.  EOIR's cease-and-desist order to NWIRP will deprive thousands of unrepresented immigrants—including asylum seekers and unaccompanied children—of the chance to consult with a NWIRP lawyer and to receive critical assistance in understanding immigration law and navigating the byzantine immigration system.

EOIR's new edict restricts not just the appearance and conduct of attorneys in removal proceedings, but also their communications with clients and potential clients outside such proceedings.  By compelling NWIRP to provide full representation to every immigrant NWIRP seeks to assist in removal proceedings, EOIR is effectively preventing NWIRP from offering *any* form of limited legal assistance to such persons—even assistance provided entirely outside of an active EOIR proceeding.  EOIR's rule, and its application to NWIRP, violates the First Amendment by restricting NWIRP's rights to free speech, to free association, and to petition the government.  It also violates the Tenth Amendment by invading the sovereign power reserved to Washington and other states to regulate the practice of law within their borders.

EOIR has suddenly targeted Washington state—specifically, its primary nonprofit legal services provider for immigrants—with an unprecedented application of a vague, overbroad rule.  Armed with the chilling threat of disciplinary sanctions, EOIR's cease-and-desist order sharply curtails NWIRP's ability to provide legal assistance to immigrants in removal proceedings.  EOIR's unconstitutional conduct has caused and is causing immediate and irreparable harm to

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

NWIRP, its staff, and its volunteer attorneys, and it is decidedly contrary to the public interest. NWIRP respectfully asks this Court to temporarily enjoin EOIR from further enforcement of its compulsory-representation rule against NWIRP.

## II.   FACTUAL BACKGROUND

### A.   NWIRP Plays a Critical Role in Providing Legal Assistance to Immigrants

Founded in 1984, NWIRP seeks to promote justice by defending and advancing the rights of immigrants through direct legal services, systematic advocacy, and community education. Compl. ¶ 1.1. NWIRP is the primary nonprofit legal services provider for immigrants in removal proceedings in Washington State and for persons detained at the Northwest Detention Center ("NWDC") in Tacoma, Washington. Compl. ¶ 3.1. NWIRP relies on grants and charitable contributions to fund its operations and services. Compl. ¶ 3.4. NWIRP provides "Know Your Rights" ("KYR") presentations, community workshops, and individual consultations to unrepresented individuals. Compl. ¶ 3.3; Cheng Decl. ¶ 5. NWIRP screens more than 1,000 potential clients per year, and its staff attorneys provide direct representation in hundreds of immigration cases before EOIR, Compl. ¶¶ 3.1–3.2. NWIRP also organizes pro bono representation for more than 200 additional cases each year in removal proceedings. Compl. ¶ 3.2.

Indigent persons in removal proceedings are not entitled to appointed counsel; as a result, the majority of people in removal proceedings do not have legal representation. Compl. ¶ 3.18; Warden-Hertz Decl. ¶ 5. Due to time, cost, and other resource constraints, however, NWIRP cannot provide full legal representation to every person who seeks out NWIRP's assistance. Compl. ¶ 3.5; Cheng Decl. ¶¶ 6–8. Full representation in removal proceedings often entails the preparation and filing of required procedural and substantive motions, applications and briefing for all defenses and forms of relief for which the applicant is eligible, and/or extensive documentation of key facts in the case, including reports on country conditions, testimony by expert or lay witnesses, and evaluations by psychologists or other medical professionals. Compl. ¶ 3.5. Removal proceedings also often involve multiple hearings over the

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

course of several years.  *Id.*; Cheng Decl. ¶ 6.  So, as an alternative to full representation, NWIRP provides a range of limited legal services to otherwise unrepresented immigrants. Compl. ¶ 3.4; Warden-Hertz Decl. ¶ 7.  These services include helping them file motions to terminate proceedings, motions to change venue, and motions to reopen old removal orders before EOIR.  *Id.*; Cheng Decl. ¶ 5.  NWIRP also assists hundreds of clients in preparing various application forms seeking relief from removal, including applications for asylum, family visas, cancellation of removal, special immigrant juvenile status, and U & T visas for victims of trafficking and violent crimes.  Compl. ¶ 3.4; Cheng Decl. ¶ 5.

NWIRP's limited legal services are critical to immigrants who cannot afford private legal representation, especially those who are illiterate or speak a rare language and therefore have difficulty accessing resources and preparing their own filings.  Cheng Decl. ¶ 9; Warden-Hertz Decl. ¶ 8.  These services help pro se individuals navigate complex immigration court procedures, file motions and applications with all information necessary to preserve eligibility for relief, and understand their rights and options.  *Id.*  To ensure accountability when providing these services, NWIRP provides written and oral notice to individuals that it is not agreeing to represent them, and explains the scope of the services it will and will not provide.  Cheng Decl. ¶ 10; Warden-Hertz Decl. ¶ 7.

**B.** **EOIR Threatens NWIRP with Disciplinary Sanctions for Providing Limited Legal Assistance to Unrepresented Immigrants**

On December 18, 2008, EOIR published a new rule of professional conduct governing "practitioners who appear before [EOIR]," creating additional categories of attorney misconduct that are subject to disciplinary sanctions.  *See* Professional Conduct for Practitioners, 73 Fed. Reg. 76,914 (Dec. 18, 2008) (the "Rule"), codified at 8 C.F.R. §§ 1001, 1003 & 1292.  Among other things, EOIR's Rule establishes that an attorney "shall be subject to disciplinary sanctions" if the attorney "[f]ails to submit a signed a completed Notice of Entry of Appearance … when the [attorney] … [h]as engaged in practice or preparation."  8 C.F.R. § 1003.102(t)(1). The Rule further defines the terms "practice" and "preparation" as follows:

---

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

> The term *practice* means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS, or any immigration judge, or the Board. . . .
>
> The term *preparation,* constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers . . . .

8 C.F.R. § 1001.1(i), (k).

When this Rule was adopted, NWIRP met with the local immigration court administrator to discuss its impact on NWIRP's services to pro se individuals.  Compl. ¶ 3.11.  NWIRP agreed that it would notify the courts of its assistance with any pro se motion or brief by including a subscript or other clear indication that NWIRP had prepared or assisted in preparing the motion or application.  *Id.*  In the nine years since the Rule was adopted, neither the immigration courts nor EOIR raised any concerns over this practice—until now.  *Id.*

On April 13, 2017, NWIRP received a letter from Defendant Jennifer Barnes, EOIR's Disciplinary Counsel, stating EOIR was aware that NWIRP had assisted at least two pro se applicants in filing motions without first filing notices of appearance.  Compl. ¶ 3.14 & Ex. 1.  Defendant Barnes instructed NWIRP to "cease and desist from representing aliens unless and until the appropriate Notice of Entry of Appearance form is filed with each client that NWIRP represents," threatening disciplinary action if NWIRP failed to do so.  *Id.*  Notably, EOIR did not suggest NWIRP's limited assistance to the two pro se individuals was deficient in any respect.

EOIR does not allow practitioners to enter limited notices of appearance to handle discrete motions or issues in a removal case.[1]  Cheng Decl. ¶ 6; Warden-Hertz Decl. ¶ 7.  Any attorney who appears consents to fully represent the immigrant in the proceeding until its conclusion.  The attorney cannot withdraw from representation without leave of the immigration court, and that leave is granted only in exceptional circumstances.  *See* Immigration Court Practice Manual, Rule 2.3(d) ("Once an attorney has made an appearance, that attorney has an

---

[1] The one exception allows for a limited appearance for the purpose of representing a respondent in a custody proceeding. *See* Separate Representation for Custody and Bond Proceedings, 80 Fed. Reg. 59,500 (Oct. 1, 2015).

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 4

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

obligation to continue representation until such time as a motion to withdraw or substitute counsel has been granted by the Immigration Court.");[2] *see also* Cheng Decl. ¶ 9.  NWIRP does not have the resources to provide full representation of each immigrant to whom it currently provides limited services.  In effect, EOIR's new application of its compulsory-representation rule will force NWIRP to discontinue providing limited legal services to thousands of individuals in removal proceedings.  Cheng Decl. ¶ 6; Warden-Hertz Decl. ¶ 14.

The Rule forces NWIRP attorneys to accept a scope of representation beyond what they and their clients have agreed to.  As written, EOIR's also letter casts into doubt whether NWIRP can even consult with pro se persons or screen cases for referral to volunteer attorneys, let alone provide assistance with preparation of applications or motions.  This uncertainty means NWIRP must now choose to either abandon most of the services it provides to immigrants in removal proceedings or to continue to provide those services under the imminent threat of disciplinary sanctions.  EOIR's letter has a considerable chilling effect on NWIRP's activities, impairing its ability to advocate for the statutory and constitutional rights of immigrants.

## III.    ARGUMENT

### A.    Plaintiffs Meet the Standard for Granting Temporary Relief

The standard for granting a temporary restraining order is "substantially identical" to the standard for granting a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The Court need only find (1) a likelihood of succeed on the merits; (2) a likelihood of irreparable harm if relief is denied; (3) the balance of equities tips in the movant's favor; and (4) the public interest favors granting relief.  *See Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008).  The Ninth Circuit uses a balancing, or "sliding scale," approach, clarifying that where the balance of equities weighs strongly in favor of the moving party, it may prevail if its claims raise serious legal questions and otherwise meet the remaining factors.  *See, e.g.*, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir.

---

[2] *Available at*  https://www.justice.gov/sites/default/files/pages/attachments/2016/12/02/ practice_manual.pdf#page=26 (last updated April 11, 2017).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

2011).  "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *Id*. at 1131–32.

**B.      Plaintiffs Are Likely to Succeed on the Merits Because EOIR's Compulsory-Representation Rule is Unconstitutional**

"The court need not examine [Plaintiffs'] likelihood of success on all of [their] claims, but rather only those claims sufficient to justify the injunctive relief sought."  *3BA Intern. LLC v. Lubahn*, No. C10-829RAJ, 2010 WL 2105129, at *4 (W.D. Wash. May 20, 2010).  Here, NWIRP is likely to succeed on the merits of its claims because EOIR's Rule, and its application to NWIRP, violates the First and Tenth Amendments to the United States Constitution.

**1.      EOIR's Compulsory-Representation Rule Violates the First Amendment Because It Unduly Burdens Plaintiffs' Right to Free Speech and Petition the Government**

The Rule, both on its face and as applied to NWIRP, violates the First Amendment. NWIRP has a well-established First Amendment right to advocate on behalf of immigrants, including the right to speak and associate through the provision of nonprofit legal services. Because the Rule is a content-based restriction and because it targets political speech, it warrants strict scrutiny—a standard it cannot survive.  But, even under intermediate scrutiny, the Rule must still be invalidated because it is not narrowly tailored to achieve EOIR's interest in adopting it.

**a.      Plaintiffs Have a Well-Established First Amendment Right to Speak and Associate through the Provision of Nonprofit Legal Services**

NWIRP's right to advise and assist clients and prospective clients in immigration proceedings, free of government interference, is protected by the First Amendment.  "Attorneys have rights to speak freely subject only to the government regulating with 'narrow specificity.'" *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002) (citing *NAACP v. Button,* 371 U.S. 415, 433, 438–39 (1963)).  "[T]he creation and dissemination of information" in the context of a lawyer-client relationship unquestionably constitutes "speech within the meaning of the First Amendment."  *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    "The Supreme Court has repeatedly emphasized that counsel have a [First Amendment]

2    right to inform individuals of their rights . . . when they do so as an exercise of political speech

3    without expectation of remuneration." *Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir. 1984), *aff'd,*

4    472 U.S. 846 (1985).  For instance, in *NAACP v. Button*, the Supreme Court invalidated a state

5    restriction on lawyer solicitation that prohibited attorneys from "advis[ing] another [person] that

6    his legal rights have been infringed and refer[ing] him to a particular attorney . . . for assistance."

7    371 U.S. 415, 434 (1963).  Because the regulation burdened an attorney's right to communicate

8    with a prospective client, the Court struck down the law, holding that the government "may not,

9    under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id.* at 439.

10    The Court strongly affirmed constitutional protections for lawyers to "advocat[e] lawful means

11    of vindicating legal rights," concluding the First Amendment "protects vigorous advocacy,

12    certainly of lawful ends, against governmental intrusion." *Id.* at 429, 437.  Further, the Court

13    emphasized that the NAACP provided nonprofit legal services—as Plaintiffs do here—as "a

14    form of political expression" by "serving to vindicate the rights of members" of a particular

15    community." *Id.* at 429, 431.

16    Likewise, in *In re Primus*, the Supreme Court again underscored the broad First

17    Amendment protection for pro bono attorneys seeking to vindicate the legal rights of

18    underserved populations.  436 U.S. 412 (1978).  The Court held that South Carolina could not

19    punish an attorney for soliciting "a prospective litigant by mail, on behalf of the ACLU," without

20    violating the First Amendment.  *Id.* at 432.  The Court affirmed that the government may "not

21    abridge unnecessarily the associational freedom of nonprofit organizations, or their members,

22    having characteristics like those of the NAACP or the ACLU." *Id.* at 439; *see also United Mine*

23    *Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 221 (1967) (the Court's

24    holding in *Button* is not "narrowly limited" to apply only to "litigation that can be characterized

25    as a form of political expression").  And again in 2001, the Court affirmed that the government

26    may not seek to "prohibit the analysis of certain legal issues" without violating the First

27    Amendment.  *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("*LSC*").

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

EOIR may not evade First Amendment scrutiny here by mischaracterizing the Rule as a restriction on conduct as opposed to speech.  In 2010, the Supreme Court categorically rejected the government's argument that a statutory prohibition on lawyers providing terror organizations "material support" through "specialized knowledge" or "expert advice or assistance" regulated conduct rather than speech.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 25 (2010) ("*HLP*") (rejecting the government's position as "extreme").  As the Court explained, while the law "may be described as directed at conduct . . . as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Id.* at 28.  "[L]abeling certain verbal or written communications 'speech' and others 'conduct' is unprincipled and susceptible to manipulation." *Wollschlaeger v. Florida*, 848 F.3d 1293, 1308 (11th Cir. 2017) (quoting *King v. New Jersey*, 767 F.3d 216, 228 (3d Cir. 2014)).

Nor can EOIR avoid First Amendment scrutiny by characterizing its Rule as a regulation of the legal profession rather than a restriction on speech.  The Supreme Court routinely applies "heightened scrutiny to regulations restricting the speech of professionals." *Wollschlaeger*, 848 F.3d at 1310.  "Being a member of a regulated profession does not, as the government suggests, result in a surrender of First Amendment rights." *Conant*, 309 F.3d at 637 (citing *Button,* 371 U.S. at 433).  "[I]t is no answer to the constitutional claims . . .  to say that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Button*, 371 U.S. at 438–39.

EOIR's compulsory-representation rule infringes the same First Amendment rights recognized by the Supreme Court in *Button*, *Primus*, and *LSC*.  The First Amendment "protects vigorous advocacy, certainly of lawful ends, against governmental intrusion," particularly when offered on a pro bono basis on behalf of an "unpopular minority." *Button*, 371 U.S. at 429, 434, 441.  NWIRP exists to provide pro bono advocacy for the rights of an "unpopular minority"— immigrants in removal proceedings.  And like the NAACP and ACLU, the services NWIRP provides to individual clients are part of the organization's broader political efforts on behalf of immigrants' rights, which implicates the right to free speech, the right to free association, and the

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 8

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

right to petition the government for redress.[3]   Moreover, by constraining NWIRP's ability to advise or assist persons in immigration proceedings, the compulsory-representation rule limits NWIRP's right to provide "vigorous advocacy . . . against governmental intrusion"—which is "even more problematic because . . . the client is unlikely to find other counsel." *LSC*, 531 U.S. at 546.  As a result, EOIR's Rule is subject to the "exacting scrutiny applicable to limitations on core First Amendment rights." *Primus*, 436 U.S. at 432 (quoting *Buckley v. Valeo,* 424 U.S. 1, 44–45 (1976)).

> **b.   EOIR's Rule is Subject to Strict Scrutiny Because It Imposes a Content-Based Restriction and Targets Political Speech**

Because EOIR's compulsory-representation rule is a content-based restriction, it must be analyzed under strict scrutiny.  A content-based law is one that "cannot be justified without reference to the content of the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015).  "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2229–30. And, as the Supreme Court confirmed in *HLP*, government conduct that restricts the content of attorney advice is subject to strict scrutiny.  561 U.S. at 27 (the law "regulates speech on the basis of its content [because] Plaintiffs want to speak to [terrorist organizations], and whether they may do so . . . depends on what they say.").  The Rule here singles out a certain form of speech on a specific subject matter: legal advice about immigration law to unrepresented immigrants in removal proceedings.  Moreover, EOIR cannot measure an attorney's compliance with the Rule unless it examines content of the speech, as it applies in those instances where an attorney has rendered "legal advice." *See* 8 C.F.R. §§ 1001.1(k), 1003.102(t).  To the extent NWIRP intends to speak to unrepresented immigrants who are seeking legal advice, and wants to do so without triggering the compulsory-representation rule, "whether they may do so . . .

---

[3] *See Button*, 371 U.S. at 428–29 ("[T]he activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments . . . ."); *id.* at 430 ("[U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

depends on what they say." *HLP*, 561 U.S. at 27 (2010).  The Rule is therefore a content-based restriction and subject to strict scrutiny.

Strict scrutiny is also warranted in this case because EOIR's Rule targets political speech on issues of public concern.  The Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (internal citations and quotations omitted).  "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . .  or when it is . . . a subject of general interest and of value and concern to the public."  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and quotations omitted).  Informing immigrant communities of their legal rights without expectation of compensation is "an exercise of political speech."  *See Jean*, 727 F.2d at 983.  And when a "law burdens core political speech," the Supreme Court requires courts to apply strict scrutiny. *McIntyre*, 514 U.S. at 347.

### c.    The Rule Cannot Survive Strict Scrutiny

EOIR's compulsory-representation rule cannot withstand strict scrutiny.  EOIR cannot articulate a compelling interest served by applying the compulsory-representation rule to NWIRP.  And, both on its face and as applied to NWIRP, the Rule is not narrowly tailored to serve that compelling government interest.

#### (1)    EOIR Cannot Articulate a Compelling Interest in Enforcing the Compulsory-Representation Rule Against NWIRP

In enacting the Rule, EOIR explained that it wanted "to advance the level of professional conduct in immigration matters and foster increased transparency in the client-practitioner relationship."  73 Fed. Reg. 76,914.  EOIR sought to ensure that "[a]ny practitioner who accepts responsibility for rendering immigration-related services to a client [will] be held accountable for his or her own actions, including the loss of the privilege of practice before EOIR, when such conduct fails to meet the minimum standards of professional conduct . . . ."

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Therefore, ostensibly to ensure it could enforce those standards against an attorney who provided substandard assistance, EOIR required practitioners to enter a notice of appearance and identify themselves as representing a particular immigrant in a pending proceeding. *Id.*

NWIRP does not dispute that, on its face, EOIR's professed interest is compelling. In fact, NWIRP has sought to further this interest and has even assisted EOIR in doing so. NWIRP received funding from the Washington State Attorney General's Office to implement a special project addressing "notario fraud"—the unauthorized practice of law by "immigration consultants" who charge immigrants and deliver substandard services, or no services at all.[4] Compl. ¶ 3.12. NWIRP informed EOIR of the tools it uses to combat notario fraud, and has worked with EOIR on coordinated efforts to combat such fraud. *Id.*

In this case, however, NWIRP asserts both facial *and* as-applied challenges to the Rule. This means EOIR must also articulate not only a compelling interest in enacting the Rule in the first place, but also a compelling interest in applying the Rule to NWIRP in these particular circumstances. *See In re Primus*, 436 U.S. at 434–35 (an attorney "may not be disciplined unless her activity in fact involved the type of misconduct" the rule was intended to prevent, and the record was devoid of evidence that such misconduct "actually occurred" in her case). Here, EOIR cannot articulate any compelling interest in enforcing the compulsory-representation rule against NWIRP. None of the problems EOIR allegedly seeks to prevent are present here. EOIR's cease-and-desist letter does not suggest that NWIRP's legal services at issue here— assisting two immigrants with preparing motions—were deficient in any respect. EOIR has never alleged NWIRP has "fail[ed] to meet the minimum standards of professional conduct" established by EOIR. 73 Fed. Reg. 76,914. And, more broadly, EOIR's purported interest in holding attorneys accountable for misconduct and fraud is not served by barring nonprofit legal organizations (especially those, like NWIRP, that have been accredited by EOIR and placed on its pro bono referral lists, *see* Warden-Hertz Decl. ¶ 4) from providing limited legal services to

---

[4] *See* ABA, *Fight Notario Fraud*, http://www.americanbar.org/groups/public_services/ immigration/projects_initiatives/fightnotariofraud.html.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

indigent person for little or no compensation, especially when those organizations identify themselves on the forms, motions, briefs, and applications they assist in preparing.

EOIR cannot articulate *any* compelling interest in enforcing the Rule against NWIRP.

### (2)   The Rule Is Not Narrowly Tailored to Achieve EOIR's Purported Interest

"[S]trict scrutiny requires a direct rather than approximate fit of means to ends." *Hunter ex rel. Brandt v. Regents of Univ. of Cal.*, 190 F.3d 1061, 1077 (9th Cir. 1999) (internal quotation marks omitted). Even if the interest expressed by EOIR were sufficiently compelling, the means used to achieve those interests—the Rule—is not narrowly tailored to achieve that interest, for at least four reasons:

*First*, the Rule imposes an all-or-nothing paradigm of client representation that has no logical bearing on EOIR's professed interest in reducing attorney misconduct. If EOIR's interest is to hold providers accountable when they fail to meet minimum standards of professional conduct, a rule requiring them simply to identify themselves in a proceeding is sufficient to satisfy that interest. Compelling them to accept full representation of the client, however, is an additional and entirely unnecessary burden that does not further EOIR's professed interest. In fact, if anything, the compulsory-representation requirement is likely to *increase* attorney misconduct by overburdening attorneys with an excessive caseload they cannot reasonably and diligently manage.

*Second*, the Rule triggers an appearance requirement based on preliminary contacts between a lawyer and a client (or even a prospective client)—contacts that do not implicate EOIR's concern about minimum standards of professional conduct. For instance, NWIRP frequently screens potential clients, during which NWIRP gathers information necessary to provide or refer services based on the individual's needs. Compl. ¶¶ 3.1, 3.2, 3.21(b). Almost *anything* a lawyer says during that process could be construed as "advice" or an "auxiliary activity" related to immigration proceedings—even if NWIRP ultimately declines to provide representation or assistance. Additionally, a NWIRP lawyer may provide general information

about the immigration court system, identify potential avenues for relief, identify necessary forms for the individual to complete, inform a client about upcoming deadlines, and advise the client regarding how to request a custody hearing.  Compl. ¶ 3.21.  This is similarly true where NWIRP screens individuals and completes the necessary paperwork for purposes of referring their cases to pro bono attorneys.  None of these services constitute an agreement to represent a client sufficient to trigger professional-conduct standards applicable to an EOIR proceeding, but each might nonetheless trigger EOIR's compulsory-representation rule.  Likewise, NWIRP's community workshops and KYR presentations may also be subject to the Rule.  NWIRP does not automatically form an attorney-client relationship with individuals who attend these community events, but almost every word spoken by a NWIRP attorney during the event could be construed as "advice," and the presentation itself may be an "auxiliary activity," especially if NWIRP provides assistance in filling out application forms.  But these community events do not implicate EOIR's interest in establishing minimal standards of professional conduct in EOIR proceedings.

**Third**, the Rule is impermissibly vague and overbroad.  "The vagueness of [any content-based regulation of speech] raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997).  Likewise, any regulation that impacts speech may be invalidated as overbroad "in cases where the [regulation] sweeps to broadly, penalizing a substantial amount of speech that is constitutionally protected." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).  The Court in *Button* described the extraordinary threat created by a vague and overbroad restriction on attorney speech and advocacy:

> The objectionable quality of vagueness and overbreadth [depends] . . . upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.  These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.

*Button*, 371 U.S. at 432–33.  An ambiguous law that leaves unclear whether certain attorney speech is permissible cannot be tolerated.  *See id.* at 432.

The Rule's definition of "preparation" is vague because it does not sufficiently define the scope of conduct that triggers the compulsory-representation requirement.  "Preparation," for example, requires the giving of "advice" and "auxiliary activities," but neither of these terms is defined.  Some ***or all*** of the above examples of services NWIRP provides could fall within the definition.  The Rule—and EOIR's recent application of it to NWIRP—provide no constitutionally sufficient guidance from which NWIRP can fairly determine what conduct is and is not burdened by the Rule.

The Rule is also overbroad because it "sweeps too broadly" and burdens constitutionally protected speech.  *Forsyth Cnty.*, 505 U.S. at 130.  NWIRP's community workshops and KYR presentations are two of the most apparent examples.  "[W]here a professional is engaged in public dialogue, First Amendment protection is at its greatest."  *Pickup v. Brown*, 740 F.3d 1208, 1227–28 (9th Cir. 2014).  "The right of free speech, the right to teach and the right of assembly are … fundamental rights."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336 n.1 (1995).  The Rule, however, will curtail, if not prevent, NWIRP from engaging in these constitutionally protected activities.

***Fourth***, the Rule distorts the traditional attorney-client relationship, the practical effect of which is to limit legal advocacy for unrepresented, indigent immigrants. On this basis alone, the Rule violates the First Amendment and must be invalidated.

In *LSC*, the Court compared a restraint on lawyer speech to cases where "the Government seeks to use an existing medium of expression and to control it . . . in ways which distort its usual functioning."  531 U.S. at 543.  "Where the government uses or attempts to regulate a particular medium," courts must examine the medium's "accepted usage in determining whether a particular restriction on speech is necessary for the program's purposes and limitations."  *Id.*  The Court ultimately invalidated the speech restraint because "[r]estricting

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 14

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    LSC attorneys in advising their clients and in presenting arguments and analyses to the courts

2    distorts the legal system by altering the traditional role of the attorneys." *Id.* at 544.

3           EOIR's Rule similarly distorts the legal system and alters the traditional role of

4    attorneys.  The right of attorneys and clients to jointly define and limit the scope of the

5    representation is a crucial aspect of the attorney-client relationship.  *See* Wash. R. Prof. Conduct

6    ("WRPC") 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is

7    reasonable under the circumstances and the client gives informed consent.")  The "rule affords

8    the lawyer and client substantial latitude to limit the representation." *Id.*, cmt. 7.  Like in *LSC*,

9    the Rule here inhibits the "proper functioning" of the attorney-client relationship by imposing a

10   "serious and fundamental restriction on advocacy of attorneys." *LSC*, 531 U.S. at 544.

11          The regulation also may force lawyers to violate their ethical duty of confidentiality.

12   Clients may not wish to disclose their identities or the fact they have received legal assistance,

13   and lawyers must honor that:  "A lawyer shall not reveal information relating to the

14   representation of a client unless the client gives informed consent."  WRPC 1.6(a).  "If by

15   compelling an individual to reveal information that he would rather keep confidential the state

16   chills the individual's ability to engage in protected speech, the state has infringed the

17   individual's First Amendment right in the protected speech, unless it provides a sufficient

18   justification for the required disclosure." *Denius v. Dunlap*, 209 F.3d 944, 954–55 (7th Cir.

19   2000) (citations omitted).

20          In sum, the Rule is not narrowly tailored to achieve EOIR's interest and it therefore fails

21   strict scrutiny.

22          **d.     The Rule Cannot Survive Intermediate Scrutiny**

23          Even if the Court reviews the Rule under intermediate scrutiny, the Rule cannot survive.

24   Under intermediate scrutiny, the regulation must be "narrowly tailored to serve a significant

25   governmental interest and . . . leave open ample alternative channels for communication of the

26   information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

27

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 15

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

For the same reasons the Rule does not serve a "compelling" EOIR interest, it also fails to serve a "significant" interest.  As explained above, the Rule is not narrowly tailored to serve EOIR's interest.  Moreover, the regulation does not "leave open ample alternative channels for communication of the information." *Id.*  The *only* channel left open by the regulation is for an attorney to commit in advance to full representation of a client before she can provide any meaningful legal assistance.  This single channel will greatly curtail NWIRP's ability to associate and express through advocacy by broadly reaching the immigrant community.

*          *          *

"Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) (citations omitted). But that is exactly what EOIR has chosen to do here.  EOIR's compulsory-representation rule violates the First Amendment and should be invalidated.

### 2. EOIR's Compulsory-Representation Rule Violates the Tenth Amendment Because It Interferes in the States' Power to Regulate Lawyer Conduct and Representation

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X. The Tenth Amendment "is a mere affirmation of what, upon any just reasoning, is a necessary rule of interpreting the constitution[:] . . . that what is not conferred, is withheld, and belongs to the state authorities." *New York v. United States*, 505 U.S. 144, 156 (1992).  Individuals and private organizations—like NWIRP here—have standing to bring Tenth Amendment claims so long as their "injury [stems] from governmental action taken in excess of the authority that federalism defines." *Bond v. United States*, 564 U.S. 211, 220 (2011).

#### a. The Tenth Amendment Vests States with the Exclusive Right to Regulate Lawyer Conduct Outside of Federal Proceedings

The Tenth Amendment unequivocally vests "the right to control and regulate the granting of license to practice law" in the States, not the federal government. *Bradwell v. People of State of Illinois*, 83 U.S. (16 Wall.) 130, 139 (1872).  "Since the founding of the Republic, the

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

licensing and regulation of lawyers has been left *exclusively* to the States and the District of Columbia within their respective jurisdictions." *Leis v. Flynt*, 439 U.S. 438, 442 (1979) (emphasis added). "The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (quoting *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792 (1975)). To that end, the "States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers." *Leis*, 439 U.S. at 700–01. The Tenth Amendment's limitations on federal power are implicated whenever a federal agency tries to regulate the practice of law. *See Sperry v. Florida*, 373 U.S. 379 (1963).

Federal agencies have inherent powers to regulate the conduct of attorneys who appear and practice before them, but that inherent power extends only to the matter or case before the particular agency or court in which the attorney has appeared. Federal agencies do not have the broad power to regulate an attorney's professional life and practice of law outside the agency proceeding. The Supreme Court's *Sperry* decision recognizes the constitutionally limited role federal agencies perform in regulating lawyer conduct. In *Sperry*, the Court reversed an injunction prohibiting unauthorized practice of law by a Florida patent agent who was not admitted to the Florida bar. 373 U.S. at 404. Nonetheless, the Court also reaffirmed that, as a general principle, the regulation of the practice of law is "otherwise a matter within the control of the State." *Id.* at 403–04.

**b.  EOIR's Compulsory-Representation Rule Encroaches Upon Washington State's Sovereign Power to Regulate Lawyer Conduct**

The Rule encroaches upon the professional life and practice of law by NWIRP's attorneys, well outside the scope of any specific EOIR-related proceeding. It intrudes upon the sovereign power of the State of Washington to regulate lawyer conduct and the practice of law within its borders, and it directly conflicts with the obligations the State imposes on its attorneys.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

The Rule compels an attorney to appear and commit in advance to full representation of an immigrant once the attorney has engaged in either "practice" or "preparation," as the Rule defines those terms. Practice includes "the preparation *or* filing of any brief or other document, paper, application, or petition" on behalf of the immigrant. 8 C.F.R. § 1001.1(i) (emphasis added). Thus, a lawyer who merely assists a client by submitting a filing to EOIR—even if the lawyer played no role in preparing the filing—has engaged in "practice." The definition of "preparation" is even broader. Preparation means "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities . . . ." § 1001.1(k). The Rule does not define "auxiliary activities," but includes within its scope the "incidental preparation of papers," *id.*—a ubiquitous task common to nearly every legal engagement.

Under the Rule's definition of "preparation," a short consultation in which an attorney offers general advice to an unrepresented immigrant about court procedures probably constitutes "preparation," requiring the attorney to enter an appearance. Indeed, this obligation would almost certainly be triggered during every initial screening of a prospective client in which the attorney offers any legal advice—long before the attorney has a full understanding of the facts and can make an informed decision about whether to commit the resources necessary to offer full representation. This is especially troubling because once an attorney has appeared in an EOIR proceeding, she cannot withdraw without leave of the court, which is granted only in exceptional circumstances. *See* Immigration Court Practice Manual, Rule 2.3(d); Cheng Decl. ¶ 9. Thus, when an attorney enters an appearance, she is committing to fully represent the client in the proceedings from that point forward for the entire duration of the case. Faced with the significant burden this Rule imposes on those attorneys who engage in mere "practice" or "preparation," many attorneys will understandably choose to sharply curtail the services they offer and the communications they have with unrepresented immigrants.

EOIR's Rule impermissibly encroaches upon Washington State's sovereign interest in regulating lawyer conduct within its borders, and it creates conflicting ethical and legal duties for NWIRP's attorneys, in at least three different ways:

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

***First***, under the Tenth Amendment, EOIR has no authority to regulate conduct that occurs entirely within an attorney's ordinary practice of law outside of a particular agency proceeding. There are an unimaginable (and ill-defined) set of circumstances that may constitute "preparation" under this definition, none of which involve an attorney's participation in EOIR proceedings. For example, NWIRP attorneys participate in community meetings and group assistance events, where they might present legal advice on a particular topic and answer questions involving removal proceedings. Compl. ¶ 3.3. EOIR's definition of "preparation" is so broad that it would even, perversely, include individual screenings in which an NWIRP lawyer advises a prospective client that she has ***no*** legal or factual basis for bringing or challenging a proceeding; thus, ***after*** determining that the individual case does not merit the use of NWIRP's scarce resources, the NWIRP lawyer would then be compelled, under EOIR's regulations, to commit to that same representation.[5]

***Second***, the compulsory-representation requirement conflicts with Washington Rule of Professional Conduct 1.2 because it mandates an all-or-nothing approach to the lawyer-client relationship. Rule 1.2 specifies that "a lawyer shall abide by a client's decisions concerning the objectives of representation," and that a "lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent," WRPC 1.2(a), (c). As the comments to Rule 1.2 reflect, "the client [has] the ultimate authority to determine the purposes to be served by legal representation," WRPC 1.2, cmt. 1. Moreover, limited representation may ultimately serve the best interests of both the lawyer and the client:

> If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief telephone consultation.

*Id.*, cmt. 7.

---

[5] The regulation also does not take into account those situations, however rare, when an immigrant may decline an attorney's services—once an attorney has offered legal advice, under EOIR's Rule, the attorney is obligated to enter an appearance whether the client wants the attorney's services or not.

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 19

The sensible approach Washington has taken to adopt and encourage (where appropriate) the right of attorneys and clients to enter into limited representation arrangements is not unique to this state.  Indeed, this same professional-conduct rule and its comments appear in the Model Rules of Professional Conduct adopted by the American Bar Association, which have now been adopted in 49 states and the District of Columbia.  EOIR's Rule, however, overrides Washington's decision to permit limited representation, and in so doing, it violates Washington's sovereign right to regulate the conduct of its lawyers.

*Third*, the compulsory-representation requirement conflicts with Washington Rule of Professional Conduct 1.6 because it requires an attorney to disclose to the government the fact that a particular individual has received legal assistance, even in those situations where the client may not want that assistance disclosed.  Rule 1.6 prohibits a lawyer from "reveal[ing] information relating to the representation of a client."  WRPC 1.6(a).  "A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation."  WRPC 1.6, cmt. 2.  By imposing strict confidentiality on a client (or even a prospective client's) communication with lawyer, "[t]he client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter."  *Id.*  This ironclad guarantee of confidentiality "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."  *Id.*, cmt 3.  "The phrase 'information relating to the representation' should be interpreted broadly [and] includes, but is not necessarily limited to … information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."  *Id.*, cmt. 21.  In fact, the ABA has issued an opinion specifically authorizing the limited representation prohibited by the EOIR's Rule: "A lawyer may provide legal assistance to litigants appearing before tribunals '*pro se*' and help prepare written submissions *without disclosing or ensuring the disclosures of the nature or extent of such assistance*."  ABA Opinion 07-446 (May 5, 2007) (emphasis added).  To the

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 20

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

extent EOIR's Rule compels attorneys to disclose a client's identity and the fact of representation before NWIRP has agreed to provide full representation, it impermissibly intrudes upon Washington's sovereign power to require lawyers to maintain client confidences.

*          *          *

The State of Washington, through its supreme court's sovereign exercise of judicial power, has established requirements for and regulates the licensing and conduct of lawyers within this state.  The Rules of Professional Conduct are one result of the exercise of that power. These Rules define the professional obligations of attorneys that practice within this State, and they impose inviolable duties that govern the practice of law.

EOIR cannot, under the guise of controlling administrative proceedings before it, arrogate to itself the authority to generally regulate the interactions and agreements between lawyers and their clients, particularly when the activities it seeks to regulate are unconnected with any specific agency proceeding.  Unless and until the attorney seeks to appear before the agency and files the notice of appearance, the attorney has not consented to appear before the agency in that proceeding.  EOIR cannot use threat of lawyer disciplinary regulations to ***compel*** the lawyer to undertake greater representation than the lawyer and client have bargained for, nor can it forbid the lawyer and client from agreeing to discrete services outside of the proceeding. EOIR's compulsory-representation rule violates the Tenth Amendment.

## C.       Plaintiffs Are Suffering, and Will Continue to Suffer, Immediate and Irreparable Harm from EOIR's Conduct

If the Court declines to intervene, Plaintiffs have and will continue to suffer immediate irreparable harm.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is particularly true of "[t]he loss of First Amendment freedoms . . . [as] [t]he timeliness of political speech is particularly important."  *San Diego Comm. Against Registration & the Draft (Card) v. Governing Bd. of Grossmont Union High Sch. Dist.*, 790 F.2d 1471, 1473 (9th Cir. 1986).  Although EOIR's

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 21

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  actions deprive NWIRP of fundamental constitutional rights—and this fact alone would

2  constitute sufficient irreparable injury to warrant injunctive relief—the harm caused by EOIR's

3  actions reaches far beyond NWIRP.

4      EOIR's order that NWIRP "cease and desist from representing [persons in removal

5  proceedings]" absent a notice of appearance prevents NWIRP attorneys from advocating on

6  behalf of unrepresented persons unless NWIRP can commit in advance to assuming full

7  representation of their case before the immigration court or the Board of Immigration Appeals.

8  Despite more than 1,000 unrepresented people in removal proceedings in Seattle and Tacoma

9  immigration courts, EOIR's cease-and-desist letter has already forced NWIRP forced to curtail

10 the limited legal services it provides to the hundreds of unrepresented individuals in removal

11 proceedings.  Cheng Decl. ¶ 16.  NWIRP is the only organization listed in EOIR's List of Pro

12 Bono Legal Services that provides assistance to adults facing removal proceedings in Tacoma

13 and Seattle.  Warden-Hertz Decl. ¶ 4.  EOIR's actions are depriving or will deprive hundreds of

14 people from receiving *any* legal assistance in their removal proceedings.

15     The cease-and-desist order dramatically impacts NWIRP's ability to carry out its

16 mission of promoting the statutory and constitutional rights of immigrants in removal

17 proceedings.  Cheng Decl. ¶ 11; Warden-Hertz Decl. ¶ 15.  For example, following EOIR's

18 letter, four asylum seekers have already sought *pro se* assistance at NWIRP.  Cheng Decl. ¶ 16.

19 All of them needed to file their asylum applications with the immigration court within several

20 days in order to meet a statutory one-year deadline.  *Id.*; *see* Compl. ¶ 3.21(d).  EOIR's letter,

21 however, prevents NWIRP from fully analyzing the facts of these individuals' cases and

22 ensuring the proper completion of their applications.  EOIR's letter also prevents NWIRP from

23 performing simple but critical tasks such as physically submitting an individual's application for

24 asylum at the Seattle immigration court, which is located only a few blocks away from NWIRP's

25 office.  One of the above-mentioned asylum seekers, who resides two hours away from Seattle,

26 was unable to arrive at immigration court on his own before the court closed; consequently, he

27 will have to expend significant resources to return to Seattle in order to file his application.

Cheng Decl. ¶ 16.  Yet another example of the harmed caused by EOIR's cease-and-desist letter is an individual who requested NWIRP's help in filing a motion to change venue.  Cheng Decl. ¶ 9; *see* Compl. ¶ 3.21(g).  While EOIR publishes a template motion and self-help instructions on its website, even completing the template requires individuals to enter pleadings to their charges of removability and indicate the forms of relief they intend to seek, Cheng Decl. ¶ 16—tasks that necessarily entail legal and factual analysis, which NWIRP cannot perform without either violating EOIR's cease-and-desist letter or committing to full representation.

Further, NWIRP's inability to provide limited *pro se* assistance translates into irreparable harm for unrepresented individuals in proceedings before the Seattle and Tacoma immigration courts.  *See* Cheng Decl. ¶¶ 12-15 (detailing the consequences faced by indigent individuals for failure to properly file applications for relief and key procedural motions); Warden-Hertz Decl. ¶¶ 9-11 (same).  The harm is particularly pronounced for the vast numbers of unrepresented immigrants in detention, who face significant challenges to obtaining legal representation or evidentiary support for their cases. *See* Warden-Hertz Decl. ¶ 9 (describing obstacles faced by immigrant detainees in establishing their eligibility for relief); Ingrid Eagly & Steven Shafer, *Special Report: Access to Counsel in Immigration Court*, Am. Imm. Council, (Sept. 2016), at 6, available at https://www.americanimmigrationcouncil.org/research/access-counsel-immigration-court (last accessed May 4, 2017) ("[I]n the immigration system noncitizens can be transferred to detention centers located a great distance from where they reside or were apprehended.  This means that they are far from their families, lawyers, and the evidence they need to support their cases.  Furthermore, many detention facilities are located in remote areas."); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1690 (2013) ( "[D]uring removal proceedings noncitizens are not guaranteed legal representation and are often subject to mandatory detention, § 1226(c)(1)(B), where they have little ability to collect evidence.").

EOIR's constitutional violations will continue to cause irreparable harm unless and until the Court enters injunctive relief.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**D.**     **The Balance of Equities and Public Interest Strongly Favor Immediate Relief**

In balancing the equities, the Court must consider "'the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation omitted); *see also Univ. of Haw. Prof. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999) (to determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it). Since this case involves the government, the balance-of-equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013).

Here, these factors weigh strongly in favor of granting preliminary relief. "It is ***always*** in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011) ("[T]he public interest favors applying federal law correctly."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). NWIRP has shown ongoing and irreparable harm caused by EOIR's Rule and its cease-and-desist order, and it has illustrated how enforcement of that order against NWIRP does absolutely nothing to further EOIR's interest in promoting minimal standards of professional conduct for attorneys in EOIR proceedings.

## IV.     CONCLUSION

For the last thirty years, NWIRP has advocated for low-income immigrants in Washington by providing limited legal services to pro se persons in removal proceedings. Relying on a nine-year-old rule governing attorney misconduct, EOIR has now suddenly ordered NWIRP to "cease and desist" providing such services. EOIR has violated NWIRP's constitutional rights. NWIRP respectfully asks this Court to grant a temporary restraining order, enjoining EOIR from further enforcing its compulsory-representation rule until such time as the Court can further consider the merits of NWIRP's claims.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 8th day of May, 2017.

2
                                    DAVIS WRIGHT TREMAINE LLP
3                                   *Attorneys for Northwest Immigrant Rights Project*

4                                   By  s/ *James Harlan Corning*
5                                        Michele Radosevich, WSBA #24282
                                         Jaime Drozd Allen, WSBA #35742
                                         James Harlan Corning, WSBA #45177
6                                        Robert E. Miller, WSBA #46507
                                         Laura-Lee Williams, WSBA #51358
7                                        1201 Third Avenue, Suite 2200
                                         Seattle, WA  98101-3045
8                                        Telephone: (206) 622-3150
                                         Fax: (206) 757-7700
9                                        E-mail:  micheleradosevich@dwt.com
                                                  jaimeallen@dwt.com
10                                                jamescorning@dwt.com
                                                  robertmiller@dwt.com
11                                                lauraleewilliams@dwt.com

12
                                    NORTHWEST IMMIGRANT RIGHTS
13                                  PROJECT
                                    Matt Adams, WSBA #28287
14                                  Glenda M. Aldana Madrid, WSBA # 46987
                                    Leila Kang, WSBA #48048
15                                  615 2nd Avenue, Suite 400
                                    Seattle, WA 98104-2244
16                                  Phone: (206) 957-8611
                                    Fax: (206) 587-4025
17                                  E-mail:  matt@nwirp.org
                                             glenda@nwirp.org
18                                           leila@nwirp.org

19

20

21

22

23

24

25

26

27

MOTION FOR TEMPORARY RESTRAINING ORDER
(Case No. 2:17-cv-00716) – 25

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I certify that on May 8, 2017, I caused the following documents:

1. Complaint for Declaratory and Injunctive Relief, with Exhibit

2. Civil Cover Sheet

3. Motion for Temporary Restraining Order

4. [Proposed] Temporary Restraining Order

5. Declaration of Timothy Warden-Hertz

6. Declaration of Yuk Man Maggie Cheng

to be served by hand delivery, at or near the time they were filed with the Court, on the

following:


United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

Declared under penalty of perjury under the laws of the State of Washington this 8th day

of May, 2017, in Seattle, Washington.


By  s/ James Harlan Corning
James Harlan Corning, WSBA #45177

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax