Hon. Richard A. Jones

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9   NORTHWEST IMMIGRANT RIGHTS
    PROJECT ("NWIRP"), a nonprofit
10  Washington Public benefit corporation; and
    YUK MAN MAGGIE CHENG, an individual,
11

12            Plaintiff,

13         v.

14

15  JEFFERSON B. SESSIONS III, in his official
    capacity as Attorney General of the United
16  States; UNITED STATES DEPARTMENT
    OF JUSTICE; EXECUTIVE OFFICE FOR
17  IMMIGRATION REVIEW; JUAN OSUNA,
    in his official capacity as Director of the
18  Executive Office for Immigration Review; and
    JENNIFER BARNES, in her official capacity
19  as Disciplinary Counsel for the Executive
    Office for Immigration Review,
20

21            Defendants.

22

Case No. 2:17-cv-00716

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER

Noted on Motion Calendar and Hearing:

Wednesday, May 17, 2017, at 9:00 am

23

24

25

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-1-

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................2

      A.   EOIR's Regulation of Legal Practice before Immigration
           Courts ........................................................................................................3

      B.   The  Disciplinary  Counsel's  Letter  to  NWIRP  regarding  their
           practices ....................................................................................................4

III.  STANDARD FOR TEMPORARY RESTRAINING ORDER ....................................7

IV.   ARGUMENT ......................................................................................................8

      A.   Plaintiffs cannot establish that they are likely to suffer irreparable Harm absent
           a temporary restraining order.......................................................................8

           1.    Plaintiffs' have not established they are likely to succeed on
                 their  claim  that  they  have  a  First  Amendment  right  to
                 represent  clients  in  removal  proceedings  without  filing  a
                 Notice of
                 Appearance ......................................................................................8

           2.    Plaintiffs'  are  unlikely  to  demonstrate  that  EOIR's
                 regulation of practitioners interferes with a state's power to
                 regulate lawyers. ............................................................................12

           3.    Plaintiffs' have failed to seek review under the
                 Administrative Procedure Act, or to exhaust administrative
                 remedies………………………………………….………14

      B.   Plaintiffs' Cannot Show that They are Likely to Suffer Irreparable Harm
           Absent a Temporary Restraining Order .......................................................15

      C.   The Public interest and balance of the equities weigh against a     temporary
           restraining order .........................................................................................19

V.    CONCLUSION..................................................................................................20

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000) ................................................................. 21

*Alliance for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .............................................................. 8

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................. 15

*Bible Club v. Placentia-Yorba Linda Sch. Dist.*,
   573 F. Supp. 2d 1291 (C.D. Cal. 2008) .............................................. 17

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*,
   331 F.3d 342 (2d Cir. 2003) ................................................................ 18

*Brown v. California Dep't of Transp.*,
   321 F.3d 1217 (9th Cir. 2003) ............................................................ 19

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ........................................................ 15, 19

*Castillo-Perez v. INS*,
   212 F.3d 518 (9th Cir. 2000) .............................................................. 19

*Colo. River Indian Tribes v. Parker*,
   776 F.2d 846 (9th Cir. 1985) .............................................................. 18

*Duran v. Carris*,
   238 F.3d 1268 (10th Cir. 2001) .......................................................... 13

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011) .............................................................. 8

*G and G Fremont LLC v. City of Las Vegas*,
   No. 2:14-cv-688, 2014 WL 4206882 (Aug. 25, 2014) ...................... 17

*Goldfarb v. Va. State Bar*,
   421 U.S. 773 (1975) ............................................................................. 11

*Goldsmith v. United States Board of Tax Appeals*,
   270 U.S. 117 (1926) ............................................................................. 11

*Hernandez v. Mukasey,*
    524 F.3d 1014 (9th Cir. 2008)......................................................................... 19

*Honolulu Weekly, Inc. v. Harris,*
    298 F.3d 1037 (9th Cir. 2002)................................................................... 12, 13

*Huston v. Burpo,* No. 94-cv-20771,
    1995 WL 73097 (N.D. Cal. Feb. 13, 1995)................................................. 17

*In re Hood,*
    727 F.3d 1360 (11th Cir. 2013)................................................................... 13

*In re Primus,*
    436 U.S. 412 (1978) ........................................................................................ 9

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016)..................................................................... 18

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth*
    *Departments, Appellate Division of the Supreme Court of New York,*
    852 F.3d 178 (2d Cir. 2017)........................................................................... 8

*Koden v. U.S. Dep't of Justice,*
    564 F.2d 228 (7th Cir. 1977)....................................................................... 11

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001) ........................................................................................ 9

*Mothershed v. Justices of the Supreme Court,*
    410 F.3d 602 (9th Cir. 2005)............................................................... passim

*N.D. v. Haw. Dep't of Educ.,*
    600 F.3d 1104 (9th Cir.2010)..................................................................... 19

*NAACP v. Button,*
    371 U.S.  (1963) .............................................................................................. 9

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................................................... 19

*Paciulan v. George,*
    38 F. Supp. 2d 1128 (N.D. Cal. 1999) ......................................................... 9

*Phany Poeng v. United States*,
　　167 F. Supp. 2d 1136 (S.D. Cal. 2001) ................................................................. 18

*Pinho v. Gonzales*,
　　432 F.3d 193 (3d Cir. 2005) ................................................................................. 14

*Ramos v. U.S. Dep't of Justice*,
　　538 F. Supp. 2d 4 (D.D.C. 2008) ......................................................................... 15

*Romero v. U.S. Dept. of Justice*,
　　556 F. App'x 365 (5th Cir. 2014)....................................................................... 9, 12

*Sampson v. Murray*,
　　415 U.S. 61, (1974) ............................................................................................. 15

*Singh v. INS*,
　　315 F.3d 1186 (9th Cir. 2003) ...................................................................... passim

*Small v. Avanti Health Systems, LLC*,
　　661 F.3d 1180 (9th Cir. 2011)............................................................................. 19

*Sperry v. Florida*,
　　373 U.S. 379 (1963) ............................................................................................ 13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
　　240 F.3d 832 (9th Cir. 2001)................................................................................. 7

*Winter v. Natural Res. Defense Council, Inc.*,
　　555 U.S. 7 (2008) ............................................................................................. 7, 15

## FEDERAL REGISTER

73 Fed. Reg. 44183 ............................................................................................. 3, 4

73 Fed. Reg. 76914 ................................................................................................ 4

## REGULATIONS

8 C.F.R. § 292.3(a)............................................................................................... 14

8 C.F.R. § 1001.1(f) ............................................................................................... 3

8 C.F.R. § 1001.1(h) ....................................................................................... 13

8 C.F.R. § 1001.1(i) ......................................................................................... 3

8 C.F.R. § 1001.1(k) ........................................................................................ 3

8 C.F.R. § 1003.02(t) ...................................................................................... 23

8 C.F.R. § 1003.17(a) ....................................................................................... 8

8 C.F.R. § 1003.101 ..................................................................................... 7, 16

8 C.F.R. § 1003.101(a) ................................................................................. 3, 15

8 C.F.R. § 1003.102(t) ...................................................................................... 3

8 C.F.R. § 1003.104(a) ...................................................................................... 4

8 C.F.R. § 1003.104(b) ...................................................................................... 4

8 C.F.R. § 1003.104(c) ...................................................................................... 4

8 C.F.R. § 1003.105 ...................................................................................... 4, 6

8 C.F.R. § 1003.105(a)(1) .................................................................................. 4

8 C.F.R. § 1003.110 .......................................................................................... 3

# I.   INTRODUCTION

The Executive Office for Immigration Review ("EOIR") is the agency entrusted with handling the immigration courts of the United States.  As part of its inherent power to regulate immigration courts, EOIR imposes reasonable and sensible regulations on those advocates who practice before the courts in order to ensure that hearings are fair and impartial for the parties involved.  All that EOIR sought when it contacted the Northwest Immigrant Rights Project ("NWIRP") was to advise the organization that its practitioners must comply with a regulation requiring them to enter an appearance before the Immigration Court as the representative of record of those individuals for whom it advocates in the Immigration Courts. Ex. A, Letter from Disciplinary Counsel to NWIRP, April 5, 2017.  EOIR in no way sought to impose broad restrictions on NWIRP's other important work with immigrant communities.  However, NWIRP's misunderstanding of the scope of EOIR's letter has brought them to seek extraordinary relief.

This Court should deny Plaintiffs motion for a temporary restraining order because they are unlikely to prevail on their lawsuit and the balance of equities weigh against temporary relief. Plaintiffs are unable to demonstrate that EOIR seeks to impair their First Amendment rights by requiring them to file a Notice of Appearance in those cases in which they draft legal pleadings to then be presented by *pro se* respondents in proceedings before EOIR.  Furthermore, EOIR's requirements imposed on practitioners that provide legal representation to individuals in immigration court proceedings do not impair on Washington State's role of regulating attorney conduct.  Requiring that Plaintiffs enter their appearance in cases in which they advocate for individuals before the immigration courts does not amount to irreparable harm, as Plaintiffs are free to continue their broad work with immigrant communities irrespective of the EOIR letter. Lastly, it is in the public interest to ensure that immigration court proceedings are fair, which require equal enforcement of rules governing professional conduct.  This Court should deny Plaintiffs' motion for a temporary restraining order.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-2-

## II.    BACKGROUND

**A.    EOIR'S Regulation of Legal Practice before Immigration Courts.**

EOIR regulates the conduct of advocates that practice before the immigration courts through regulations contained at 8 C.F.R. § 1003.101-1003.111.  Those regulations provide that the Board of Immigration Appeals ("Board") may impose disciplinary sanctions on practice before the Board, the immigration courts, or the Department of Homeland Security, "if it is in the public interest to do so."  8 C.F.R. § 1003.101(a).  Any practitioner – which includes licensed attorneys as well as many classes of individuals who are not attorneys – is subject to the Board's disciplinary power.[1]  8 C.F.R. §§ 1001.1(f), (j), 1003.101(b).

A practitioner may be subject to discipline if he fails to submit a "Notice of Entry of Appearance as Attorney or Representative" ("Notice of Appearance"), engages in "practice" or "preparation," and engages in a pattern or practice of failing to submit a Notice of Appearance.  8 C.F.R. § 1003.102(t).  "Practice" is defined as "act or acts of any person appearing in any case, either in person or *through the preparation or filing of any brief or other document, paper, application, or petition* on behalf of another person or client" before the immigration courts.  8 C.F.R. § 1001.1(i) (emphasis added).  The term "preparation" under the regulation is "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities."  8 C.F.R. § 1001.1(k).  Preparation, however, does not cover assistance in the preparation of forms.  *See id.*

The rule requiring a Notice of Appearance serves important purposes.  First, EOIR requiring a Notice of Appearance curtails the ability of practitioners who seek to avoid the responsibility of formal representation, and whatever sanctions might result from their ineffective assistance, by failing to file their appearance with the immigration court.  73 Fed. Reg. at 44,183.  Second, this rule minimizes the risk that a practitioner's decision to not formally

---

[1]  Organizations recognized by EOIR as a Nonprofit Religious, Charitable, Social Service, or Similar Organization Established in the United States to designate representative to provide immigration legal services on behalf of its clients before EOIR or DHS may be subject to discipline for conduct enumerated on 8 C.F.R. § 1003.110.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-3-

represent an individual despite drafting legal pleadings and completing legal filings will  render

ineffective any recourse his or her client would have as a result of the practitioner's ineffective

assistance of counsel or other misconduct.  73 Fed. Reg. at 44,183.  Third, as the Ninth Circuit

stated, the Notice of Appearance makes clear to the parties who is representing a particular

respondent in removal proceedings.  *Singh v. INS*, 315 F.3d 1186, 1189 (9th Cir. 2003).  The

Notice of Appearance rule is not a new rule and was enacted as far back as 2008.  73 Fed. Reg.

76,914 (Dec. 18, 2008).

In cases where EOIR receives complaints regarding practitioner conduct, the Disciplinary

Counsel will conduct a preliminary inquiry.  8 C.F.R. § 1003.104(a)-(b).  The Disciplinary

Counsel, in her discretion, may take actions to resolve the dispute without a need for disciplinary

proceedings.  8 C.F.R. § 1003.104(c).  The Disciplinary Counsel may choose to charge a

practitioner before the Board with professional misconduct if sufficient prima facie evidence

exists to support the charge.  8 C.F.R. § 1003.105(a)(1).  The regulations provide an extensive

procedure governing the Board's disciplinary proceedings.  8 C.F.R. § 1003.105.

**B.      The Disciplinary Counsel's Letter to NWIRP regarding their practices.**

NWIRP is a non-profit organization based in the State of Washington that provides

various legal services to that State's migrant population.  Compl. ¶ 1.1.  NWIRP provides

representations and coordinates representation for other migrants seeking its services.  Compl.

¶ 3.1.  NWIRP receives funds – including Legal Orientation Program ("LOP") funds from the

United States Department of Justice – in order to provide information and services to migrants.

Compl. ¶ 3.3-3.4; NWIRP, Community Education, https://www.nwirp.org/our-work/community-

education/ (last visited May 11, 2017) ("Since 2005, NWIRP has received funding through the

U.S. Department of Justice to operate the Legal Orientation Program (LOP) at the [Northwest

Detention Center]."

The Department of Justice, through EOIR, manages the LOP program through a contract

with the Vera Institute of Justice ("Vera") and several subcontracting legal services

organizations.  United States Department of Justice, Legal Orientation Program,

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)                                    -4-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

https://www.justice.gov/eoir/legal-orientation-program (last visited May 11, 2017).  The LOP program provides funds to organizations to provide legal orientation but does not permit that LOP funds be used for legal representation.  Vera lists NWIRP as an LOP partner organization. Vera Institute of Justice, Legal Orientation Program, https://www.vera.org/projects/legal-orientation-program/legal-orientation-program-lop-facilities (last visited May 11, 2017).  More than six years ago, on July 11, 2011, EOIR issued a memo to Vera providing guidance on the distinction between providing "legal orientation" and "legal representation."  Ex. B, Memorandum from Steven Lang, Program Director, Office of Legal Access Programs, to Orem Root, Director, Vera Institute of Justice (July 11, 2011).  The memo provides guidance to LOP organizations services so that contracting organizations do not use LOP funds for legal representation.  Ex. B.

NWIRP claims that in an August 2016 conversations with EOIR's Fraud and Abuse Prevention Counsel regarding coordination efforts in Washington to combat "notario" fraud, NWIRP also discussed with EOIR the different tools it uses to assist migrant communities. Compl. ¶ 3.12.  NWIRP claims on a follow-up conversation with the Fraud and Abuse Prevention Counsel and the EOIR Disciplinary Counsel, held on October 11, 2016, six months prior to filing with this Court their request for extraordinary remedy, the Disciplinary Counsel informed NWIRP that the regulations governing the EOIR rules of professional conduct provided limitations on the ability to prepare legal documents for *pro se* individuals to file with the Immigration Court.  Compl. ¶ 3.13.

In their complaint, NWIRP alleges that it met with an unidentified "local immigration court administrator" to discuss the impact of this rule on NWIRP's work.  Compl. ¶ 3.11. NWIRP claims that a "convention was accepted" with the local court permitting the organization to denote that NWIRP has prepared or assisted in the preparation of motions or applications.  *Id.* Notably, NWIRP does not provide or identify any document or written agreement memorializing this "convention."  NWIRP also fails to allege that any office of EOIR tasked with governing practitioner conduct was aware of NWIRP's practice or endorsed such practice.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)                                                         P.O. Box 868 Ben Franklin Station
                                                                                              Washington, D.C. 20044
(Case No. 2:17-cv-716)                                                              (202) 305-7181

-5-

On or about November 1, 2016, the court administrator for the Tacoma Immigration Court forwarded a *pro se* motion to the Office of General Counsel that contained the notation "This *pro se* brief/motion has been prepared with the assistance of [NWIRP]."  Ex. C, Decl. of Elizabeth Burges.  On January 13, 2017, the Office of General Counsel received another inquiry, this time from the Seattle Immigration Court, concerning another *pro se* motion to reopen with a similar notation.  Ex. C.  The notations do not indicate whom within NWIRP provided that assistance, or if the assistance was provided by an attorney, an accredited representative, or any individual authorized to practice before the immigration courts, or even under which authority it could do so.

In response to these filings, on April 5, 2017, the Disciplinary Counsel sent NWIRP a letter "ask[ing] that NWIRP cease and desist from representing aliens unless and until the appropriate Notice of Entry of Appearance form is filed with each client that NWIRP represents."  Ex. A.  In that letter, the Disciplinary Counsel stated that it recently came to her attention that NWIRP has attempted to advocate for two individuals in immigration court by preparing filings for court without entering a Notice of Appearance.  Ex. A.  The letter explained to NWIRP that the Notice of Appearance requirement allows EOIR to hold "attorneys accountable for their conduct" and that it "makes it possible for EOIR to impose disciplinary sanctions on attorneys who do not provide adequate representation to their clients."  Ex. A.  The letter only asked NWIRP to comply with regulatory requirements.  The letter did not impose any disciplinary sanction on NWIRP or any of its attorneys for violating EOIR regulations; it did not instruct NWIRP to cease engaging in other legal work on behalf of Washington's migrant community or under any program, including the LOP program.  Indeed, while the EOIR Disciplinary Counsel has the authority to charge a practitioner with professional misconduct, *see* 8 C.F.R. §1003.105, she does not have the authority to impose disciplinary sanctions, which is reserved for the EOIR Adjudicating Official or the Board of Immigration Appeals.  *See* 8 C.F.R. §1003.101.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-6-

On May 2, 2017, NWIRP requested EOIR that it rescind its April 5, 2017, letter because it believed the letter unduly restricted its work.  Ex. D, Letter from Matt Adams, Legal Director, NWIRP, to Jennifer Barnes, Disciplinary Counsel, EOIR (May 2, 2017).  EOIR's General Counsel responded to NWIRP's letter on May 8, 2017.  Ex. E, Letter from Jean King, General Counsel, EOIR, to Matt Adams (May 8, 2017).  In the response, EOIR stated that while it is committed in supporting programs assisting individual in immigration courts proceedings, "EOIR must be consistent in how it enforces the Rules of Professional Conduct."  Ex. E.  EOIR explained the history behind the Notice of Appearance requirement to NWIRP, highlighting that the regulation "is meant to advance the level of professional conduct in immigration matters and foster increased transparency in the client-practitioner relationship. Ex. E.  EOIR also noted that NWIRP is an LOP provider that has had access to EOIR's guidance distinguishing between providing legal assistance and legal representation and that "EOIR has not made any changes to its policies affecting this guidance."  Ex. E.  EOIR highlighted that "in no way [EOIR] wishes to impede the important work done by organizations like [NWIRP]," but it stands by the April 5, 2017, letter.  Ex. E.

### III.    STANDARD FOR TEMPORARY RESTRAINING ORDER

The standard for issuance of a temporary restraining order is the same as that for issuance of a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A preliminary injunction is an extraordinary remedy never awarded as of right.  *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 20 (2008).  To obtain a preliminary injunction, a party must ordinarily demonstrate:  (1) a likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in favor of preliminary relief, and (4) that an injunction is in the public interest.  *Id.*  Petitioner must satisfy each factor.  *Id.*  Although the Ninth Circuit still employs a "sliding scale" approach to the four factors, *see Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011), the moving party must show a likelihood of irreparable harm to warrant preliminary

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)                                    -7-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

relief.  *See Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011).

## IV.   ARGUMENT

**A.   Plaintiffs cannot establish that they are likely to suffer irreparable harm absent a temporary restraining order.**

> **1.   Plaintiffs have not established they are likely to succeed on their claim that they have a First Amendment right to represent clients in removal proceedings without filing a Notice of Appearance.**

Plaintiffs' First Amendment claim rests on the proposition that they have a Constitutional right to represent clients in removal proceedings without filing a Notice of Entry of Appearance, as required by the regulations.  8 C.F.R. § 1003.17(a).  While Plaintiffs' TRO cites to numerous cases which address the First Amendment rights of attorney's in the context of soliciting clients, none of these cases remotely support the view that attorneys may invoke the First Amendment in order to avoid complying with rules of the court in which they seek to practice.  *See* TRO at 6-9 (citing, inter alia, *NAACP v. Button*, 371 U.S. 414 (1963); *In re Primus*, 436 U.S. 412 (1978); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001)).  As the Second Circuit recently explained:

> The *Button* line of cases might casually be characterized as reflecting lawyers'
> expressive rights in the causes they pursue – when those causes implicate
> expressive values . . . .  *The Supreme Court has never held, however, that
> attorneys have their own First Amendment right as attorneys to associate with
> current or potential clients*, or their own First Amendment right to petition the
> government for the redress of their clients' grievances when the lawyers are
> acting as advocates for others, and not advocating for their own cause.

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Departments, Appellate Division of the Supreme Court of New York*, 852 F.3d 178, 186 (2d Cir. 2017) (emphasis).

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-8-

Similarly, in *Southern Christian Leadership Conf. v. Supreme Court of the State of Louisiana*, the Fifth Circuit rejected plaintiffs' reliance on *Button* and *Primus* where the Louisiana Supreme Court's regulation of legal practice by law school clinics "did not prohibit or prevent speech of any kind." 252 F.3d 781, 789 (5th Cir. 2001). The court observed that the rule in question did not "prevent the clinics or their members from engaging in outreach, or even from contacting particular clients, advising them of their rights, and offering and then proceeding to represent those clients." *Id.* Rather, "the rule only prohibit[ed] the non-lawyer student members of the clinics from representing *as attorneys* any party the clinic has so solicited." *Id.* Given these circumstances, the Fifth Circuit held that the regulations in question were "a far cry from the criminal and disciplinary sanctions invalidated by the Supreme Court in Button and Primus." *Id.* at 790; *see Paciulan v. George*, 38 F. Supp. 2d 1128, 1137 (N.D. Cal. 1999) (rejecting plaintiffs' contention that "any restriction on practicing law in California implicates attorneys' rights under the First Amendment"). The cases on which Plaintiffs rely, thus, do not support the notion that the First Amendment is implicated by every regulation of attorney conduct, or that attorneys have the absolute right to represent clients in immigration courts without filing a Notice of Entry of Appearance.

To the extent that EOIR's regulations implicate any of Plaintiffs' First Amendment rights, it is well settled that these rights are subject to regulation. *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) ("the [Supreme] Court has . . . repeatedly emphasized that the States have broad power to regulate the practice of law"). In the same manner, EOIR has the authority to regulate the conduct of practitioners who appear before it. *See Romero v. U.S. Dept. of Justice*, 556 F. App'x 365, 368 (5th Cir. 2014) ("When the EOIR sent Romero the cease and desist letter, it was regulating the conduct of those who appear before it, exactly as it was authorized to do.") (citing 8 U.S.C. §§ 1103(g) 1362); *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117, 121-23 (1926); *Koden v. U.S. Dep't of Justice*, 564 F.2d 228, 235 (7th Cir. 1977)). The Supreme Court has explained that the "interest of the States [or in this case, the agency] in regulating lawyers is especially great since lawyers are essential to

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)                    -9-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

the primary governmental function of administering justice, and have historically been 'officers of the courts.'"  *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975).

In order to further its "substantial interest in regulating the legal profession" that practices before it, EOIR may institute reasonable time, place, and manner restrictions.  *Mothershed*, 410 F.3d at 611.  "Time, place, and manner restrictions are reasonable provided they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Id.*  As explained in the attached May 8, 2017 letter from EOIR General Counsel, Jean King, to Plaintiffs, the rule requiring that attorneys who represent clients in immigration court enter a Notice of Appearance has been in place since 2008, and exists in order to hold accountable those who seek to take advantage of individuals who appear in immigration court.  *See* Ex. E.  Indeed, the Ninth Circuit has discussed at great length the importance of the requirement that attorneys who practice in immigration court enter a notice of appearance:

> The notice of appearance required by [prior versions of the regulation governing notices of appearances], serves important purposes.  The [Board of Immigration Appeals ("BIA")] has a substantial interest in assuring that, at any given time, there is no ambiguity as to who has been given, and who has accepted, the responsibility of representing a party before it.  Under the regulations, the notice of appearance constitutes an affirmative representation by the purported representative to the BIA that he or she is qualified to be a representative under the applicable regulations, that he or she has been authorized by the party on whose behalf he or she appears, and that he or she accepts the responsibility of representation until relieved.  It also allows the clerk or the computer dispatching notices for the court to scan the docket sheet to determine how to give the required notice correctly, without reviewing all documents in the record.

*Singh v. I.N.S.*, 315 F.3d 1186, 1189-90 (9th Cir. 2003).

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-10-

Contrary to what Plaintiffs assert in their motion, EOIR's regulations requiring attorneys who represent clients to file a notice of appearance are content neutral. "Speech restrictions are content-neutral when they can be justified without reference to the content of regulated speech." *Mothershed*, 410 F.3d at 611 (citing *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043 (9th Cir. 2002)). In *Mothershed*, the Ninth Circuit held that the Arizona Supreme Court's rules were content-neutral because they imposed a "generally applicable prohibition on the retention of out-of-state counsel without regard to subject matter of the representation." *Id.* at 612 (noting that the rules "d[id] not, for example, prohibit out-of-state counsel from undertaking only certain categories of representation such as suits against the State or against tobacco companies.") In the same manner, the EOIR regulations in question are content-neutral in that they apply to all attorneys who practice before the immigration courts, regardless of whether they are sole practitioners who receive remuneration or are attorneys who are part of a larger nonprofit legal services provider such as NWIRP, and regardless of what types of cases they bring. *Id.*

Because EOIR's regulations are content-neutral, strict scrutiny does not apply. Rather, the Court's "standard for determining whether [the regulations] are narrowly tailored is more relaxed." *Menotti v. City of Seattle*, 409 F.3 1113, 1167 (9th Cir. 2005). Under this intermediate standard, "the policy adopted need not be the least restrictive or least intrusive means available." *Id.*; see *Mothershed*, 410 F.3d at 612 ("A time, place, and manner regulation is narrowly tailored as long as the substantial government interest it serves would be achieved less effectively absent the regulation and the regulation achieves its ends without . . . significantly restricting a substantial quantity of speech that does not create the same evils.")

Regardless of the level of scrutiny, Plaintiffs have not established that EOIR's regulation sweeps so broadly as to infringe upon their First Amendment rights. *See* Mot. for TRO at 10-16. Rather, in advancing their argument that EOIR's regulations are not narrowly tailored, Plaintiffs misstate the scope of the regulation defining "representation." *See* 8 C.F.R. § 1001.1(h). Contrary to what Plaintiffs' assert, the regulations do not have the effect of "impos[ing] an all-or-nothing paradigm of client representation." Mot. for TRO at 12. Nor do they "trigger an

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-11-

appearance requirement based on preliminary contacts between a lawyer and a client." *Id*.  As the attached (and publically available) EOIR Memorandum of July 11, 2011 reflects, EOIR clarified for practitioners the distinction between legal orientation (for which no entry of appearance is required) versus the more substantive "representation," which triggers the notice of appearance requirement.  *See* Ex. B.  The Memorandum sets forth seven categories of tasks and interactions, including individual orientations and assistance with completing legal forms, in which attorneys can participate without formally engaging in "representation." *Id*.  The publically available guidance of this nature also undermines Plaintiffs' contention that EOIR's regulations are "impermissibly vague and overbroad." *See* Mot. for TRO at 13-14.  In sum, even assuming that EOIR's regulations implicate Plaintiffs' First Amendment rights, the regulations constitute reasonable time, place, and manner regulations, and thus Plaintiffs' First Amendment claim is likely to fail as a matter of law. *Mothershed*, 410 F.3d at 612.

> **2.    Plaintiffs are unlikely to demonstrate that EOIR's regulation of practitioners interferes with a state's power to regulate lawyers.**

As Plaintiffs acknowledge, and discussed above, "federal agencies have inherent powers to regulate the conduct of attorneys who appear and practice before them."  Mot. for TRO at 17; *see Romero*, 556 F. App'x at 368.  Plaintiffs' argument that EOIR's regulations exceed their inherent powers and "encroach upon the professional life an practice of law . . . well outside of any EOIR-related proceeding," *see* Mot. for TRO at 17, is again based on a misreading of the regulations in question.  As reflected in EOIR's 2011 Memorandum concerning Legal Orientation Programs, Washington State attorneys may engage in a variety of services that do not trigger the Notice of Appearance requirement.  Ex. B.  The information contained in this publically available Memorandum directly refutes Plaintiffs' suggestion that an attorney's participation in a community meeting or group assistance event would require an attorney to file a Notice of Appearance. *Id*. at 2-4 (discussing both group and individual orientations outside the scope of formal representation).  It also underscores the fact that EOIR's regulations do not mandate an "all-or-nothing approach" as Plaintiffs contend. *See* Mot. for TRO at 19.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

(Case No. 2:17-cv-716)

-12-

To the extent that Plaintiffs rely on the Washington Rules of Professional Conduct ("WRPC"), they have not shown that those Rules are inconsistent or incompatible with EOIR's regulations governing representation in immigration courts.  EOIR rules do not impair Washington's power as it "maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives" to regulate the conduct of immigration court practitioners.  *Sperry*, 373 U.S. at 402.  As *Sperry v. Florida*, 373 U.S. 379, 402-04 (1963), demonstrates, to the extent that any Washington rule may appear inconsistent with EOIR's requirements, the state rule must yield.  *Sperry*, 373 U.S. at 403-04.  The Notice of Appearance requirement serves the critical role of placing the parties in notice of who is the representative of a particular respondent in removal proceedings and brings that practitioner to the jurisdiction of the court.  *Singh*, 315 F.3d at 1189; 73 Fed. Reg. at 44,183.  Clearly, requiring a Notice of Appearance is a central requirement for the conduct of fair and efficient immigration court proceedings, and subjecting practitioners to discipline for failing to file such notice furthers that purpose.[2]

Plaintiffs' quote from a comment to Rule 1.2, which states that "the client has the ultimate authority to determine the purpose to be served by legal representation."  Mot. TRO at 19.  But they omit the latter portion of that same sentence, which notes that any such authority by the client must be "within the limits imposed by law and the lawyers' professional obligations."  WRPC 1.2 cmt 1.  In the case of an attorney who represents a client in proceedings before the

---

[2]  Federal courts have noted a discrepancy in the treatment of "ghostwritten" pleadings by attorneys to be used by *pro se* litigants.  *Compare In re Hood*, 727 F.3d 1360, 1365 (11th Cir. 2013) (finding no fraudulent conduct in ghostwritten pleading used in bankruptcy court), *with Duran v. Carris*, 238 F.3d 1268, 1271-73 (10th Cir. 2001) (condemning ghostwriting of brief, requiring that attorney signs briefs, and stating that "[a] lawyer usually has no obligation to provide reduced fee or pro bono representation; that is a matter of conscience and professionalism.  Once either kind of representation is undertaken, however, it must be undertaken competently and ethically or liability will attach to its provider.").  Given these differing practices, EOIR's Notice of Appearance requirement provides uniformity as to this issue for purposes of immigration practice.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

immigration court, the federal regulations and the lawyers' professional obligations plainly require the attorney to enter a notice of appearance.

Nor do EOIR's regulations in any way require that attorneys breach the duty of confidentiality they owe to clients. *See* Mot. for TRO at 20 (citing WRPC 1.6). The regulations in question do not require an attorney to disclose any "information relating to the representation," WRPC 1.6 cmt. 1, apart from the bare fact of representation in the immigration court. Plaintiffs cite to no authority to support their expansive reading of WRPC 1.6(a), which would permit any client to demand that his or her attorney remain anonymous before a tribunal. Moreover, the concern that a client would not want an attorney to identify himself before a tribunal is entirely speculative – Plaintiffs' have not identified a single instance in which a client has ever made such a request.

In sum, Plaintiffs' have not shown that EOIR's regulations require Washington State attorneys to take action that conflict with their duties under the WRPC. Moreover, by their own terms, EOIR's Rules and Procedures of Professional Conduct only apply to practitioners authorized to practice before EOIR. *See* 8 C.F.R. § 1003.101 (describing the authority to impose disciplinary sanctions only on practice before the Board of Immigration Appeals, the Immigration Courts and DHS); *see also* 8 C.F.R. § 292.3(a). Plaintiffs have thus failed to show that they are likely to succeed on the merits of their Tenth Amendment claim.

### 3.    Plaintiffs have failed to seek review under the Administrative Procedure Act, or to exhaust administrative remedies.

NWIRP is also unable to prevail on their challenges because they have failed to adequately plead a cause of action under the APA, and in any event, no valid cause of action exists. Under the APA, the Court may review a final agency action if that action was final, adversely affected the party seeking review, and does not involve a discretionary determination. *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005). An agency action is considered final if two elements are met. First, the action must "mark the consummation of the agency's decision making process" and second, "the action must be one by which rights or obligations have been

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-14-

determined," or from which "legal consequences will flow." *Id.* (citing *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)).

As a preliminary matter, a challenge to the Board's disciplinary process is subject to APA review and NWIRP fails to allege a cause of action under the APA. *See Ramos v. U.S. Dep't of Justice*, 538 F. Supp. 2d 4, 8-12 (D.D.C. 2008) (reviewing a final disciplinary action from the Board under the APA). But even if NWIRP had made such claim, it would fail because the letter from the Disciplinary Counsel does not represent a final reviewable agency action. The Disciplinary Counsel's letter does not represent a final imposition of any penalty on NWIRP or any of its practitioners. *See* 8 C.F.R. § 1003.101(a) (listing disciplinary sanctions the Board may impose). Under EOIR regulations, the Disciplinary Counsel may bring disciplinary proceedings before the Board, which then provides the practitioner with an opportunity to respond. *See* 8 C.F.R. §§ 1003.104-1003.106. The Disciplinary Counsel letter to NWIRP did not trigger the initiation of any Board proceedings against any NWIRP employee, but merely advised NWIRP to refrain from engaging in certain practices. Consequently, the Disciplinary Counsel letter did not "mark the consummation of the agency's decision making process," nor did that decision determine any of NWIRP's "rights or obligations" from which "legal consequences will flow." *Bennett*, 520 U.S. at 177-78.

## B.   Plaintiffs Cannot Show that They Are Likely to Suffer Irreparable Harm Absent a Temporary Restraining Order.

Plaintiffs must demonstrate with specificity an irreparable harm that is *likely* and *immediate* in the absence of an injunction. *Winter,* 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (holding the threat of irreparable harm must be immediate). Harm is irreparable when, as the name suggests, the harm cannot be undone by a later order by the court. *See id.*; *Sampson v. Murray*, 415 U.S. 61, 90, (1974) ("The possibility

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-15-

that adequate compensatory or other corrective relief will be available at a later date . . . weighs

heavily against a claim of irreparable harm.").   Plaintiffs assert that they are harmed by the

regulation's claimed infringement on NWIRP and its lawyers' freedom of speech and their

claimed inability to carry out NWIRP's mission, as well as harm to third parties not before this

court.  Mot. for TRO at  21, 23.   These claims do not satisfy the standard for irreparable harm

for several reasons.

First, as explained above, NWIRP vastly overstates the alleged consequences of the letter

and its interpretation of the applicable regulation on NWIRP's provision of legal services.  The

letter—which is not a final or even intermediate disciplinary action—addresses only the

complained-of conduct:  the preparation of legal pleadings and/or motions on behalf of

individual respondents without filing a Notice of Entry of Appearance.  It does not address

NWIRP's individual consultations providing information to unrepresented respondents in

immigration courts, Mot. for TRO at 2; its orientations or presentations informing respondents of

their rights, Mot. for TRO at 2; Cheng Decl. ¶¶ 11- 12; its referrals of respondents to other

attorneys; its assistance with the preparation of applications for immigration court respondents

without providing legal advice, Mot. for TRO at 3-22; Cheng Decl. ¶ 7; or its physical

submission of a respondent's application.  Mot. at  22.  Indeed, such activities are generally not

considered "representation" under the regulation, according to EOIR's July 2011 Guidelines.

*See* Ex. B (addressing, among other issues, whether individualized assessments, group

orientations, and assistance with the preparation of applications for relief constitute

representation).[3]  Accordingly, there is no showing that NWIRP is unable to carry out its mission

in any respect due to EOIR's letter.

The inability to prepare or assist in the preparation of motions without entering an

appearance on behalf of the movant does not constitute the type of harm that justifies a grant of

emergency relief.  Although courts have at times presumed the existence of irreparable injury

---

[3]  Notably, Plaintiffs filed this lawsuit rather than seeking clarification of the letter's
meaning or EOIR's interpretation of the regulation from EOIR's Disciplinary Counsel.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)                                                                    P.O. Box 868 Ben Franklin Station
                                                                                                           Washington, D.C. 20044
                                                                                                                (202) 305-7181

-16-

when the plaintiff alleges restrictions on his freedom of speech, the Court should not apply such a presumption here.   As an initial matter, their First Amendment claim must at the very least be "colorable" in order to benefit from such a presumption, *Brown v. California Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003), and Plaintiffs' claim does not withstand this minimal requirement.  The regulation, as interpreted in the EOIR letter, does not prevent Plaintiffs from consulting with or representing aliens or making particular arguments; it merely subjects lawyers to a requirement to enter their appearance when filing motions in immigration court and before the Board, in order to ensure lawyers' accountability for their work on behalf of aliens.  As discussed above, Plaintiffs do not cite a single case to support their theory that their freedom of speech and association is burdened by this professional conduct requirement.  Accordingly, their First Amendment claims are not substantial enough to support a presumption of irreparable injury.  *Huston v. Burpo*, No. 94-cv-20771, 1995 WL 73097, at *5 (N.D. Cal. Feb. 13, 1995) (finding an insufficient showing of a constitutional violation to support a presumption of irreparable injury); *G and G Fremont LLC v. City of Las Vegas*, No. 2:14-cv-688, 2014 WL 4206882, at *1-2 (Aug. 25, 2014) (declining to presume irreparably injury solely because plaintiffs alleged a constitutional violation); *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1300 (C.D. Cal. 2008) (noting that plaintiffs must show a "probable" violation of constitutional rights to benefit from a presumption of irreparability).

Relatedly, the presumption should not apply because the harm Plaintiffs complain of is not a direct infringement on their claimed expressive rights to screen, consult with, advice, and otherwise assist aliens seeking legal services.  *See* Compl. ¶¶ 4.2, 5.2.  Instead, Plaintiffs argue that the requirement of entering an appearance indirectly prevents them from *limiting* their representation of immigration court respondents, which they claim means they cannot represent as many such respondents as they would like because of resource constraints.[4]  Mot. at 21;

---

[4] As explained just below, Plaintiffs' contention that this results in harm to aliens who will not receive "any legal assistance in their removal proceedings," Mot. for TRO at 22, is not a proper part of the irreparable harm analysis in this case.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

-17-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

Compl. ¶ 3.23.  Plaintiffs do not explain why the requirement to enter an appearance forces them to *immediately* stop advising certain clients, nor do they explain how the consequences of entering a notice of appearance on behalf of their clients cannot be remedied later by a motion to withdraw before the immigration court or even relief from this court if they ultimately prevailed on their claims.  Thus, even assuming the regulation burdened Plaintiffs' First Amendment rights, the connection between the regulation and the claimed effect on Plaintiffs' speech is too tenuous to support a presumption or finding of irreparable injury.  *E.g.*, *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) (explaining that the presumption of irreparable injury has been limited to cases where a regulation directly limits speech).

Finally, any claimed harm to NWIRP's clients or prospective clients—who are not parties to this case—is irrelevant to the irreparable harm analysis.  To obtain a temporary restraining order, Plaintiffs must demonstrate that they themselves face irreparable harm; they cannot meet their burden based on claims of harm to third parties.  *Phany Poeng v. United States*, 167 F. Supp. 2d 1136, 1142 (S.D. Cal. 2001); *see also, e.g.*, *Colo. River Indian Tribes v. Parker*, 776 F.2d 846, 850 (9th Cir. 1985) ("[I]njury must be suffered by a party seeking relief."); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) ("[T]he preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm.").  In any event, any claim of constitutional deprivation asserted by aliens in removal proceedings who are supposedly unable to benefit from NWIRP's services must be raised in those proceedings or on judicial review thereof before the Court of Appeals.  *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-35 (9th Cir. 2016) (requiring that right-to-counsel and other legal or constitutional claims arising from immigration removal proceedings must be raised in those administrative proceedings or on judicial review thereof).  It is improper for Plaintiffs to rely on alleged harms to others—particularly those that could not be raised in the first instance in this Court—as a basis for their request for emergency relief.  Finally, the cited harm to alien respondents is speculative and there is no concrete evidence that the harm, should it come to

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-18-

pass, would be irreparable.  *See* Cheng Decl. ¶¶ 12-14 (assuming that unrepresented respondents will incorrectly complete their asylum applications or will be ordered removed; and that no other remedies or exceptions will be available to those respondents in the context of their removal proceedings); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

For the foregoing reasons, Plaintiffs have not shown the likely and imminent irreparable injury necessary to warrant entry of a temporary restraining order enjoining enforcement of the 2008 regulation.

**C.     The public interest and balance of the equities weigh against a temporary restraining order.**

Where the Government is the opposing party, the balance of equities and public interest factors merge.  *Nken v. Holder,* 556 U.S. 418, 435 (2009).  Indeed, "the public interest favors applying federal law correctly."  *Small v. Avanti Health Systems, LLC,* 661 F.3d 1180, 1197 (9th Cir. 2011)); *see also N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir.2010) ("[I]t is obvious that compliance with the law is in the public interest.").")  Here, the last two factors heavily weigh in favor of the government.

EOIR's ability to promote compliance with the Notice of Appearance requirement at 8 C.F.R. § 1003.02(t) serves important goals of ensuring fair immigration court hearings and protecting individuals in removal proceedings.  Requiring that any practitioner – including those affiliated with NWIRP – file a Notice of Appearance makes clear to the immigration court and the respondent in immigration court proceedings who is responsible to advocate for the respondent and subject to discipline for any misconduct.  *Singh*, 315 F.3d at 1189; 73 Fed. Reg. at 44,183.  Such clear knowledge by the parties of who represents a respondent would facilitate the respondent's ability to obtain future relief if the practitioner engages in ineffective assistance. *See, e.g.*, *Castillo-Perez v. INS*, 212 F.3d 518, 525-26 (9th Cir. 2000) (discussing infective assistance of counsel claims in immigration court proceedings); *Hernandez v. Mukasey*, 524 F.3d 1014, 1017-19 (9th Cir. 2008) (discussing problems faced by individuals who rely on non-

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

attorney advise for immigration court proceedings).  Even more, the public has a strong interest in ensuring that EOIR enforces reasonable standards of conduct in the nation's immigration courts, a goal furthered by the Notice of Appearance requirement.  EOIR and the public at large have a strong interest in enforcing a rule that makes clear to all parties in immigration court proceedings who is representing a particular respondent with all the rights and responsibilities attached to that representation.

NWIRP's argument that the Notice of Appearance requirement does not advance any EOIR interest, Mot. for TRO at 24, ignores the reason the regulation was enacted – to ensure practitioners do not avoid the responsibility of formal representation.  73 Fed. Reg. at 44, 183.  Any burden on NWIRP to undertake formal representation before the immigration court is outweighed by EOIR's need "that, at any given time, there is no ambiguity as to who has been given, and who has accepted, the responsibility of representing a party before it."  *Singh*, 315 F.3d at 1189.  The last two factors weigh against the issuance of a TRO.

## VI.    CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for a temporary restraining order.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
UNDER LOCAL RULE 65(B)(5)

(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

Dated:  May 11, 2017.                      Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           WILLIAM C. PEACHEY
                                           Director
                                           Office of Immigration Litigation

                                           GISELA A. WESTWATER
                                           Assistant Director

                                           C. FRED SHEFFIELD
                                           KATHERINE J. SHINNERS
                                           Trial Attorneys

                                           /s/ Victor M. Mercado-Santana
                                           VICTOR M. MERCADO-SANTANA
                                           Trial Attorney
                                           Civil Division, Office of Immigration
                                           Litigation
                                           United States Department of Justice
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, DC  20044
                                           Telephone:  (202) 305-7001
                                           Facsimile:  (202) 616 -8962
                                           victor.m.mercado-santana@usdoj.gov

                                           /s/ Gladys M. Steffens Guzmán
                                           GLADYS M. STEFFENS GUZMÁN
                                           Office of Immigration Litigation
                                           Department of Justice, Civil Division
                                           Trial Attorney, District Court Section
                                           450 5th Street, NW
                                           Washington, DC  20001
                                           Telephone: (202) 305-7181
                                           Facsimile:  (202) 305-1890

                                           E-Mail: gladys.steffens-guzman@usdoj.gov

                                           *Counsel for Defendants*