UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST IMMIGRANT RIGHTS PROJECT ("NWIRP"), a nonprofit Washington public benefit corporation; and YUK MAN MAGGIE CHENG, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; JUAN OSUNA, in his official capacity as Director of the Executive Office for Immigration Review; and JENNIFER BARNES, in her official capacity as Disciplinary Counsel for the Executive Office for Immigration Review,<br><br>Defendants. | No. 2:17-cv-00716<br><br>PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER<br><br><br>ORAL ARGUMENT REQUESTED |

PLS' REPLY RE: TRO - 1
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

EOIR's Opposition is based on the misguided assumption that by "allowing" NWIRP to engage in some generalized activities, EOIR is not infringing on NWIRP's constitutionally protected rights to provide legal advice and limited representation to individuals in removal proceedings. EOIR's characterization of the services and programs NWIRP *can* provide obscures the actual issue: EOIR's cease and desist letter prescribes an "all or nothing" approach to legal representation, compelling NWIRP to either refrain from offering any legal advice and assistance whatsoever or commit to full representation throughout an individual's removal proceedings, notwithstanding its finite resources. EOIR seeks to obscure the issue by pointing out that NWIRP is still permitted to provide community presentations and clerical assistance in filling out paperwork. However, such activities are not a constitutionally-permissible substitute for providing individualized legal advice and limited assistance in completing application forms and filing motions, among other activities.

Notably, EOIR's cease and desist letter represents a sudden shift in its implementation of the regulations defining "practice" and "preparation." Prior to the cease and desist letter, NWIRP could provide limited representation to immigrants. Now, it is prohibited from doing so. EOIR does not dispute this new prohibition, but it fails to address the reason for the change, or even to acknowledge that it occurred. Plaintiffs are suffering immediate irreparable harm as a result of this intrusion on their First Amendment rights. In response, EOIR is unable to demonstrate how an order from this Court preserving the status quo while the parties have an opportunity to more fully present their positions causes them any hardship or undermines the public interest.

## II. ARGUMENT

**A. EOIR Ignores and Misrepresents the Impact of the Rule and Its Effect on NWIRP**

Throughout its Opposition, EOIR attempts to downplay the impact of its compulsory-representation Rule by insisting that it "merely subjects lawyers to a requirement to enter their appearance when filing motions in immigration court and before the Board." Opp'n 17. EOIR refuses, however, to engage with the central premise of NWIRP's Motion: that by requiring a notice of appearance, the Rule in effect compels attorney to represent the client for the duration of

PLS' REPLY RE: TRO - 1
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

the proceeding. EOIR also incorrectly suggests that NWIRP's Motion does not "explain how the consequences of entering a notice of appearance on behalf of their clients cannot be remedied later by a motion to withdraw." Opp'n at 18. EOIR ignores the point NWIRP repeatedly emphasizes in its Motion—an "attorney cannot withdraw from representation without leave of the immigration court, and that leave is granted only in exceptional circumstances." Mot. 4 (citing Immigration Court Practice Manual, Rule 2.3(d)). In other words, if an attorney enters an appearance, he or she is committing (and must be prepared to commit) to represent the client for the duration of the proceeding.

EOIR also attempts to narrowly recast the legal services its Rule impedes, suggesting that NWIRP can still broadly engage in a range of services to immigrants without implicating the Rule. As a threshold matter, this position is legally unsound: EOIR cannot justify a restraint on the giving of legal advice—a constitutionally protected activity—by suggesting there are other activities its Rule does not burden. But EOIR also dramatically undersells the impact of its Rule.

EOIR's change in interpretation precludes NWIRP from offering legal advice and assistance in a number of ways. Per EOIR's guidance "preparation constituting practice" occurs whenever "the legal representative (1) studies the facts of the case, (2) gives legal advice, and (3) performs other activities, such as the preparation of forms or a brief for the Immigration Court." Dkt. 14-2 at 3. This vague definition can include nearly anything an attorney does, and most certainly infringes on work NWIRP does that is crucial to its mission. Even under the very same guidance EOIR now points to as justification for all of the activities NWIRP can still supposedly continue, EOIR still condemns the following practices:

- Interview individuals in removal proceedings about their immigration and personal history; analyze their potential options for relief; ensure that they "select specific immigration forms . . . to complete," and "provide advice on how to answer a question." *Compare* Dkt. 14-2 at 7, *with* Dkt. 1 at ¶ 3.21(b)-(c).

- Interview asylum seekers about the harm they suffered in their home country; advise them of their eligibility for asylum, withholding of removal, or relief under CAT; explain why it is critical to include certain facts in the application; and provide evidence of country conditions that the individual would not otherwise know to research or be able to access. *Compare* Dkt 14-2 at 6–7 (attorneys may only assist immigrants in obtaining those documents that the client has "independently determined" are "necessary for their immigration case," and, in assisting with forms, may not "provide advice on how to answer a question"), *with, e.g.*, Dkt. 3 at ¶ 8 (individuals who have "limited education or

PLS' REPLY RE: TRO - 2
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

knowledge of English"), and *id.* at ¶ 9 (individuals who are "illiterate or speak a rare language").[1]

- Review an individual's notice to appear (charging document) and other documents, determine their grounds of removability and available forms of relief, then prepare corresponding motions or applications for relief. Dkt. 1-1 at ¶ 3.21(g); Dkt. 4 at ¶ 8 (explaining that NWIRP cannot enter an appearance for removal proceedings in another state); *id.* at ¶ 16 (citing an example of an individual who needed such assistance).

- Interview an individual about their criminal history and charges of removability, research and analyze whether a certain conviction constitutes a ground of removability, then help draft a motion to terminate proceedings or provide them with already-prepared briefs on whether certain convictions constitute removable offenses. Dkt. 1 at ¶ 3.21(f); Ex. 3 at ¶ 11 (noting "complex and evolving" nature of such legal analysis).

- Review the facts of an individual's prior removal case, advise them of the legal grounds to re-open removal proceedings, then help draft and file a motion to reopen, as expressly instructed by the cease-and-desist letter. Dkt. 1 at ¶ 3.21(h) Dkt. 1-1 at 1-2; Dkt. 3 at ¶ 10 (discussing importance of pro se assistance for motions to reopen).

These are all activities that are barred even under the guidance Defendants proffer in support of their position. In fact, EOIR is not even consistent in its own filing about what NWIRP can and can't do under the Rule, further illustrating the Rule's constitutional infirmities. EOIR suggests the Rule "does not cover assistance in the preparation of forms." Opp'n 3. But this directly conflicts with the position taken by their disciplinary counsel that NWIRP cannot assist immigrants in filling out asylum applications. Dkt. 1 ¶ 3.13; Opp'n at 5. And the guidance EOIR attaches to its brief states that attorneys "may not advise the individual on how to answer a question based on a participant's particular factual situation and the applicable law," "select specific immigration forms for an individual to complete," or "provide advice on how to answer a question." Opp'n at 7. In other words, EOIR would turn NWIRP into voiceless scribes, unable to provide any reasonable degree of legal assistance or advice.

Despite EOIR's efforts to downplay the impact of its Rule, these restrictions are having, and will continue to have, a profound and adverse impact on NWIRP's ability to assist immigrants.

**B.  EOIR's Content-Based Rule Violates Plaintiffs' First Amendment Rights**

    **1.  NWIRP Has a First Amendment Right to Speak as an Advocate**

---

[1] This is particularly important for individuals who are facing a one-year deadline, Dkt. 4 at ¶ 7, 8, 12 (discussing exigency of pro se assistance for those facing a one-year deadline) and for detained individuals, whose only alternative is to ask for help from a fellow detainee. Dkt. 3 at ¶ 9.

PLS' REPLY RE: TRO - 3
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

EOIR's arguments fail to override the overwhelming authority—including *Button*, *Primus*, and *LSC*—that provides First Amendment protection to nonprofit legal organizations engaging in legal work to further their mission. As a non-profit legal organization that promotes and defends the statutory and constitutional rights of immigrants, NWIRP is entitled to the free speech guarantees as an "advocate [for] lawful means of vindicating legal rights." *NAACP v. Button*, 371 U.S. 415, 429, 437 (non-profit legal services providers have a constitutionally protected right to free speech).

In attempting to refute NWIRP's First Amendment claim, EOIR relies on authority that is readily distinguishable from the instant case. *See* Dkt. 14 at 13–14. In *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Departments, Appellate Div. of the Supreme Court of N.Y.,* 852 F.3d 178, 186 (2d Cir. 2017) (attorneys at a **for-profit law firm** did not have a First Amendment right to associate with clients).[2] The court carefully distinguished the lesser protections due to for-profit lawyers than those of nonprofit lawyers engaged in advocacy work:

> In fact, the Court has explicitly distinguished between the First Amendment protections enjoyed by attorneys who, as part of an advocacy group like the ACLU or the NAACP, have recognized associational rights, and attorneys who are engaged in litigation for their own commercial rewards, albeit in the context of advancing or protecting the interests of their clients. 852 F.3d at 186.

EOIR's reliance on *Singh v. I.N.S.* is particularly misplaced. The decision emphasizing the importance of the notice of appearance requirement, in which the Court affirmed that the agency "has a substantial interest in assuring that, at any given time, there is no ambiguity as to who has been given, and who has accepted, the responsibility of representing a party before it." Opp'n at 10. But that is precisely the point. In giving legal advice and limited assistance to *pro se*

---

[2] Other authorities cited by EOIR are similarly distinguishable. *See Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 789 (5th Cir. 2001) (students in law school clinics were not entitled to same protections as members of the bar); *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 612 (9th Cir. 2005) (state bar regulations did not violate the First Amendment because it applied to all out-of-state attorneys, was narrowly tailored, and left available alternative channels); *Romero v. U.S. Dep't of Justice*, 556 F. App'x 365, 367 (5th Cir. 2014) (EOIR could regulate Venezuelan lawyer who appeared before the court and represented herself as an attorney before the EOIR); *Singh v. I.N.S.*, 315 F.3d 1186, 1189 (9th Cir. 2003) (attorney failed to enter notice of appearance when he and his client had agreed to full representation before EOIR).

PLS' REPLY RE: TRO - 4
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*unrepresented* immigrants, both NWIRP and its clients are absolutely clear and in agreement that NWIRP has *not* accepted the responsibility of representing the immigrant before EOIR. Unlike the attorney in *Singh*, who failed to enter a notice of appearance when he agreed to (and did) fully represent a client before EOIR, NWIRP and its clients both understand NWIRP is not undertaking full representation. Unlike in the *Singh* case, the application of EOIR's Rule here does not eliminate "ambiguity" about the scope of representation. Instead, it imposes a requirement of full representation once a lawyer provides "advice" to an immigrant, thereby imposing an undue and unwanted burden on the lawyer if and once they give legal advice. This advice "unquestionably constitutes speech within the meaning of the First Amendment." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011) (internal quotations omitted).

### 2. The Rule Imposes a Content-Based Restriction, Subject to Strict Scrutiny

EOIR relies on *Mothershed*, 410 F.3d at 611, to argue that the regulations are content-neutral because they "apply to all attorneys who practice before the immigration courts." [Dkt. 14 at 16]. EOIR makes two fundamental mistakes. *First*, the restrictions found to be content-neutral in *Mothershed* are completely unlike the restrictions at issue here. In *Mothershed*, the court upheld a state rule requiring out-of-state attorneys to be admitted *pro hac vice* before appearing in a particular matter. The restriction applied "without regard to the subject matter of the representation," it imposed a minor procedural requirement without any significant burden, and it left open "ample alternative channels" because clients within the state were free to receive assistance from attorneys already licensed in the state. None of those is true with respect to the Rule here.

*Second*, the Rule is unquestionably a content-based restriction. The Rule's definition of "preparation" does not trigger the compulsory-representation requirement unless and until an attorney provides "advice." *See* 8 C.F.R. § 1001.1(k). Speech that does not contain advice does not trigger the requirement. For example, as EOIR acknowledges, an attorney may "translate what is written on [a] form and explain any language that is unclear." Dkt. 14-2 at 7. But other types of speech are forbidden: attorney cannot, for instance, "advise an individual on how to answer a

PLS' REPLY RE: TRO - 5
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

question." *Id.* To determine whether an attorney has engaged in conduct sufficient to trigger the Rule's requirements, EOIR must examine the content of what the attorney has said to the client to see if it constitutes "advice." Thus, while the Rule "may be described as directed at conduct . . . as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010). If attorneys want to confer with clients without triggering the Rule's compulsory-representation requirement, "whether attorneys may do so...depends on what they say." *Id.*

Even if EOIR's interest in identifying the attorney helping an immigrant to prepare a motion or form was a compelling one, that interest is equally served by a more narrowly tailored rule that would simply require the attorney to self-identify, without the additional and burdensome requirement of undertaking full representation. EOIR offers no rationale for why this (or another) more narrowly tailored approach does not adequately satisfy its interest.

**3. The Rule Violates the First Amendment**

Even if the Rules was content-neutral, it still cannot withstand intermediate scrutiny because it is not narrowly tailored to accomplish EOIR's purposes. EOIR admits that, even under intermediate scrutiny, a "time, place, and manner restriction"—which this Rule is ***not***—cannot survive review if it significantly restricts "a substantial quantity of speech that does not create the same evils." Opp'n 16 (citing *Mothershed*, 410 F.3d at 612). EOIR's Rule is not narrowly tailored to meet its purported goals, and in the interim, it sweeps in and burdens a vast swath of protected speech. Relevant here, NWIRP does not charge for pro se services to persons in deportation proceedings, so any purported interest in preventing notario fraud is inapplicable, Additionally, NWIRP self-identifies on any motion or brief it assists clients in preparing, so EOIR's purported interest in assuring attorneys are identifiable for disciplinary purposes is already served. Further diminishing EOIR's purported rationale is that EOIR does not allege a single instance of any actual misconduct in NWIRP's filings, or a situation where it could not trace NWIRP's conduct back to NWIRP. In short, none of the purported "evils" the Rule is designed to prevent are being inhibited

PLS' REPLY RE: TRO - 6
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

by applying this Rule to NWIRP; but in the process of doing so, EOIR has burdened a substantial quantity of otherwise-protected speech.

EOIR confuses the issue by submitting a memorandum relating to the Legal Orientation Program (LOP). This is a specific program that provides some of NWIRP's funding and imposes certain restrictions on the use of those funds. The program is separate from NWIRP's limited assistance and legal advice to clients, and the program does not "prohibit [NWIRP] from providing direct legal representation using non-LOP funding." Dkt. 14-2 at 8. Nonetheless, the memorandum confirms EOIR's limitless and vague scope of what it considers "representation." For example: i) NWIRP cannot provide "consultations" to clients in removal proceedings—a crucial part of NWIRP's work and mission; ii) attorneys may "not give legal advice concerning the individual's specific case," leaving immigrants without help navigating the quagmire of the immigration process and forms of available relief; iii) attorneys cannot study the facts of the case, give legal advice, and perform other activities such as the preparation of forms; iv) attorneys cannot prepare or provide "specific written materials," impeding work for detainees where NWIRP provides country condition packets; v) attorneys can only provide personal documents where "unrepresented individuals [] have independently determined that such documents are necessary for their immigration case;" and vi) attorneys cannot provide any advice as to how to fill out any form or how to answer any question. Dkt. 14 at 3, 6, 11-12. These activities are at the heart of NWIRP's legal advocacy. EOIR does not acknowledge that to survive intermediate scrutiny, the Rule must "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). It leaves open *no* alternative channels for an unrepresented immigrant to receive legal advice and assistance, unless a lawyer is willing to assume the burdens associated with full representation. The Rule therefore fails intermediate scrutiny.

**C.    The Tenth Amendment Prohibits EOIR from Undermining the States' Authority**

EOIR tries to rebut NWIRP's Tenth Amendment arguments by regurgitating NWIRP's statement in the Motion that, as a federal agency, EOIR has "inherent powers to regulate the

PLS' REPLY RE: TRO - 7
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

conduct of attorneys *who appear and practice before [it].*" Opp'n 12 (emphasis added) (citing Mot. 17). EOIR then expand upon this, suggesting the Rule "serves the critical role of placing the parties in notice of who is the representative of a particular respondent in a removal proceeding," and that a lawyer's "professional obligations plainly require the attorney to enter a notice of appearance" whenever the attorney "represents a client in proceedings before the immigration court." Opp'n 13–14. EOIR completely misses the point, however. As NWIRP showed in its motion, EOIR is *limited* to regulating the conduct of *only* those attorneys who *appear and practice before it*. Ergo, if an attorney does *not* appear and practice before the agency in a particular matter, EOIR does not have the power to regulate that attorney's conduct in that matter. Of course, nothing would prevent EOIR from reporting alleged misconduct to the relevant state bar.

This is precisely the issue here, and this is why EOIR's Rule is incompatible with the Washington Rules of Professional Conduct. Rule 1.2 unambiguously permits limited representation where "limitation is reasonable under the circumstances and the client gives informed consent." WRPC 1.2(c). Because NWIRP's legal advice and assistance to *pro se* individuals occur outside EOIR proceedings, such activities are not subject to EOIR regulations and thus fall well "within the limits imposed by law and the lawyers' professional obligations." WRPC 1.2 cmt. 1.

EOIR also fundamentally misreads *Sperry*. The case does not demonstrate that "to the extent that any Washington rule may appear inconsistent with EOIR's requirements, the state rule must yield." Opp'n at 13. As an initial matter, this statement, in and of itself, is a breathtaking— and entirely unsupported—assertion of agency authority. *Sperry* concerned the narrow issue of whether a nonlawyer, when explicitly authorized to practice as a patent agent before the U.S. Patent & Trademark Office, may do so in spite of the Florida bar's efforts to regulate the unlicensed practice of law. 373 U.S. at 404. Relying on the long history of nonlawyer practice before the Patent Office and the overwhelming necessity of continuing that practice, the Court found it "implicit … that registration in the Patent Office confers a right to practice before the Office without regard to whether the State within which the practice is conducted would otherwise

PLS' REPLY RE: TRO - 8
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

prohibit such conduct." *Id.* at 389. Thus, *Sperry* stands for the unremarkable proposition that a federal agency may, in its own limited forum, authorize non-lawyers to perform certain activities irrespective of a state's general efforts to regulate unlicensed practice of law. More broadly, though, *Sperry* reaffirmed that the regulation of the practice of law is "otherwise a matter within the control of the State." *Id.* at 403-04.

The situation at hand is, in a sense, the inverse of *Sperry*. Here, a federal agency (EOIR) seeks to prohibit (not permit) legal advice and assistance that is allowed (not forbidden) by the relevant state bar association, and that, while bearing on an agency proceeding, occurs entirely outside of that proceeding. Neither *Sperry* nor any other case suggests a federal agency may extend its power outside of its own proceedings to control a lawyer's practice of law when the lawyer has not appeared and submitted herself to the jurisdiction of the agency in a particular matter.

EOIR ignores the balance and substance of NWIRP's Tenth Amendment arguments. It does not contest that the regulation of the practice of law is a power specifically reserved to the states under the Tenth Amendment. It does not dispute that its Rule compels an attorney to appear and commit to representation of an immigrant once the attorney has engaged in either "practice" or "preparation," as the Rule defines those terms. It does not engage at all on the vague and overbroad definitions of those terms. It does not contest that its Rule would compel attorneys to undertake full representation of a client once the attorney provides any legal advice, even outside of an agency proceeding, and even in those situations where neither the client nor the attorney wants such representation. EOIR's pointed silence on these issues only further illustrates why NWIRP is likely to succeed in establishing its Tenth Amendment claims, and why temporary injunctive relief is necessary.

**D.     Plaintiffs Satisfy the APA and Have Standing to Bring Their Constitutional Claims**

EOIR contends that NWIRP has not adequately pleaded a cause of action under the APA, and that even if it had, this Court could not review it because the cease and desist letter was not a final agency action under the APA. EOIR is wrong on both points.

PLS' REPLY RE: TRO - 9
(Case No. 2:17-cv-00716)

First, NWIRP does not bring a claim under the APA; its complaint satisfies the requirements of notice pleading under Fed. R. Civ. P. 8(a). NWIRP pled federal question jurisdiction under 28 U.S.C. § 1331. "Laws of the United States" encompass 5 U.S.C. § 702, governing judicial review of administrative actions, as well the First and Tenth Amendment. Further, NWIRP's allegations expressly challenge EOIR's recent interpretation of its administrative regulations and the regulations themselves. EOIR plainly received notice of the nature of the action—a bare citation to 5 U.S.C. § 702 would have added no new information nor substantively affected the parties.

Second, the cease and desist letter is not the only basis for this action. NWIRP also alleges that 8 C.F.R. § 1001.1(k), the regulation defining "preparation," as incorporated into 8 C.F.R. § 1003.102(t), is facially unconstitutional. Dkt. 1 ¶¶ 5.1–5.5. Given that NWIRP challenged the regulation itself, "there can be no question that this regulation—promulgated in a formal manner after notice and evaluation of submitted comments—is a 'final agency action' under § 10 of the Administrative Procedure Act, 5 U.S.C. § 704." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 162 (1967). The cease and desist letter *is* a final action under the APA. It satisfies the two conditions set forth by the Supreme Court in *Bennett v. Spear*: (1) it was not tentative or interlocutory in nature, and (2) it gives rise to legal consequences. 520 U.S. 154, 177–78 (1997). The cease and desist letter facially satisfies the first condition. It is not an invitation to discuss; it states EOIR's definitive interpretation of its regulations and concludes that NWIRP has violated them. The letter also satisfies the second condition by implicitly threatening legal consequences in the form of disciplinary sanctions. The Supreme Court has long held that such agency actions are "final" for APA purposes. Just last year in *U.S. Army Corps of Engineers v. Hawkes Co, Inc*., the court confirmed the "pragmatic" approach it has taken to finality. 136 S.Ct. 1807, 1815 (2016). Discussing *Frozen Food Express v. U.S*., 351 U.S. 40 (1956), the court noted that even without authroity except to give notice, an order was immediately reviewable. Similarly, EOIR iognores that its rule would subject NWIRP or any other attorney providing services to immigrants to disciplinary sanctions.

PLS' REPLY RE: TRO - 10
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    EOIR argues that the letter does not satisfy these conditions because it does not actually
2 impose discipline. But, NWIRP does not have to wait for disciplinary action. The Supreme Court
3 rejected this absurd premise in *Hawkes* holding that "parties need not await enforcement
4 proceedings before challenging final agency action where such proceedings carry the risk of
5 'serious criminal and civil penalties.'" *Id. (internal quotations and citations omitted).*

**E.  NWIRP Establishes Imminent and Irreparable Harm Absent an Injunction**
    **1.  Plaintiffs' First Amendment Claims Establish the Requisite Harm**

Plaintiffs are being deprived of their constitutional rights, which alone merits granting a preliminary injunction. Dkt. 2 § III(C). EOIR's own cited cases support this. *Brown v. California Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) ("[t]o establish irreparable injury in the First Amendment context...[plaintiffs] need only demonstrate the existence of a colorable First Amendment claim."). EOIR cites to nothing to challenge that Plaintiffs' First Amendment claim does not meet the minimally "colorable" standard. To the contrary, EOIR's minimization of the impact of the cease and desist letter is proven untrue by the tangible losses of NWIRP's services. Similarly, in a case cited by EOIR, *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, where the plaintiff alleged a First Amendment claim, the court held that "[n]o further showing of irreparable injury is necessary when the moving party has shown a probable violation of constitutional right." 573 F. Supp. 2d 1291, 1300 (C.D. Cal. 2008) (granting injunction for club to have equal access to school facilities). "In First Amendment cases, the presumption in favor of irreparable harm is particularly strong, as the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for the purposes of the issuance of a preliminary injunction." *Id. citing Elrod v. Burns*, 427 U.S. 347, 373 (1976) (internal quotations omitted).[3]

    **2.  Regulations Impacting First Amendment Rights Are Presumed Harmful**

"Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Bronx Household of Faith v. Bd. of Educ. of*

---

[3] EOIR's other support that First Amendment harm is insufficient is inapposite. *Huston v. Burpo*, 1995 WL 73097, at *5 (N.D. Cal. Feb. 13, 1995) (prisoner's claim for interference with mail did not state a likelihood of success or actual injury); *G&G Fremont LLC v. City of Las Vegas*, 2014 WL 4206882, at * 1-2 (D. Nev. Aug. 25, 2014) (plaintiffs who did not allege a constitutional violation did not show requisite harm through conclusory allegations that their businesses would be harmed).

PLS' REPLY RE: TRO - 11
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) *overruled on other grounds Sasmor v. Powell*, 2011 WL 4460461 at *1 (E.D.N.Y. Sept. 26, 2011) (harm presumed when deprivation of First Amendment rights due to a policy). Plaintiffs allege specific harm to their First Amendment rights as a direct result of the Rule.

### 3. Plaintiffs Can Assert Third-Party Harm on a Facial Challenge

Generally jurisdiction "can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action" *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal citations and quotations omitted), in limited circumstances, a plaintiff has third-party standing to assert the rights of others. The unique relationships giving rise to third-party standing have been recognized in multiple situations.[4] For third-party standing to be permitted, the party bringing the claim: (1) must possess a concrete interest in the outcome of the dispute (NWIRP's mission to advocate for immigrants); (2) must have a close relationship with the party whose rights it is asserting (attorney client relationship); and (3) there must be some hindrance to the third party's ability to protect its own interest (immigrant's lack of English and unlikely to assert representation rights). *See Singleton*, 428 U.S. at 114-15. .

### 4. The Balance of Equities and Public Interest Weigh in Plaintiffs' Favor

EOIR's interest in applying public law does not outweigh the constitutional interests of Plaintiffs. For the reasons that EOIR's alleged goals to promote compliance with the compulsory-representation requirement are not narrowly tailored, they also do not serve the public interest. EOIR purports to have an interest in identifying the attorneys practicing before it and maintaining disciplinary authority over them. Dkt. 14 at 24. But, these goals are not impacted by NWIRP's practice; EOIR is able to identify NWIRP as practitioners on its filings, whether or not it enters a notice of appearance. EOIR's claimed public interest fails because it does not gain any additional advantage in furthering its goals to identify and have disciplinary authority over counsel when NWIRP is already identifying itself on its EOIR filings. .

---

[4] *See e.g. Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (doctors/patients) ; *Barrows v. Jackson*, 346 U.S. 249 (1953) (seller/purchaser); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (private school/student and parents); *Craig v. Boren*, 429 U.S. 190 (1976) (vendors/vendees).

PLS' REPLY RE: TRO - 12
(Case No. 2:17-cv-00716)

1       DATED this 12th day of May, 2017.

                                  DAVIS WRIGHT TREMAINE LLP
*Attorneys for Northwest Immigrant Rights Project*

By  s/ *Jaime Drozd Allen*
      Michele Radosevich, WSBA #24282
      Jaime Drozd Allen, WSBA #35742
      James Harlan Corning, WSBA #45177
      Robert E. Miller, WSBA #46507
      Laura-Lee Williams, WSBA #51358
      1201 Third Avenue, Suite 2200
      Seattle, WA 98101-3045
      Telephone: (206) 622-3150
      Fax: (206) 757-7700
      E-mail: micheleradosevich@dwt.com
                  jaimeallen@dwt.com
                  jamescorning@dwt.com
                  robertmiller@dwt.com
                  lauraleewilliams@dwt.com

NORTHWEST IMMIGRANT RIGHTS PROJECT
Matt Adams, WSBA #28287
Glenda M. Aldana Madrid, WSBA # 46987
Leila Kang, WSBA #48048
615 2nd Avenue, Suite 400
Seattle, WA 98104-2244
Phone: (206) 957-8611
Fax: (206) 587-4025
E-mail: matt@nwirp.org
        glenda@nwirp.org
        leila@nwirp.org

PLS' REPLY RE: TRO - 13
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# CERTIFICATE OF SERVICE

I certify that on May 12, 2017, I caused the freogoing documents via ECF to registered counsel.

Declared under penalty of perjury under the laws of the State of Washington this 8th day of May, 2017, in Seattle, Washington.

                                                By /s Jaime Drozd Allen
                                                  Jaime Drozd Allen, WSBA #35742

CERTIFICATE OF SERVICE
(Case No. 2:17-cv-00716)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax