1

The Honorable Richard A. Jones

2

3

4

5

6

7

8      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9                  AT SEATTLE

10   NORTHWEST IMMIGRANT RIGHTS
     PROJECT ("NWIRP"), a nonprofit Washington          No. 2:17-cv-00716
11   public benefit corporation; and YUK MAN
     MAGGIE CHENG, an individual,                        MOTION FOR PRELIMINARY
12                                                       INJUNCTION
                          Plaintiffs,
13
            v.                                           Note on Motion Calendar:
14                                                       June 30, 2017
     JEFFERSON B. SESSIONS III, in his official
15   capacity as Attorney General of the United
     States; UNITED STATES DEPARTMENT OF
16   JUSTICE; EXECUTIVE OFFICE FOR
     IMMIGRATION REVIEW; JUAN OSUNA, in
17   his official capacity as Director of the Executive
     Office for Immigration Review; and JENNIFER
18   BARNES, in her official capacity as
     Disciplinary Counsel for the Executive Office
19   for Immigration Review,

20                        Defendants.

21

22

23

24

25

26

27

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES...................................................................................................iii

INDEX OF SUPPORTING MATERIALS .........................................................................vii

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 1

    A.   The Vital Importance of Legal Assistance to Immigrants in Removal
        Proceedings ..................................................................................................... 1

    B.   NWIRP Plays a Critical Role in Providing Legal Assistance to
        Immigrants ...................................................................................................... 2

    C.   EOIR Threatens NWIRP with Disciplinary Sanctions for Providing
        Limited Legal Assistance to Unrepresented Immigrants ............................3

III.  ARGUMENT ............................................................................................................ 5

    A.   Plaintiffs Are Likely to Succeed on the Merits .......................................... 5

        1.   EOIR's Compulsory-Representation Rule Violates the First
            Amendment Because It Unduly Burdens Plaintiffs' Speech and
            Petitioning Rights ................................................................................. 6

            a.   As a Non-Profit Legal Advocate, NWIRP Has a First Amendment
                Right to Advise Others of Their Legal Rights ......................... 6

            b.   EOIR's Rule Is a Restriction on Speech, Not Conduct ........................... 7

            c.   EOIR's Rule is Subject to Strict Scrutiny Because It Imposes a
                Content-Based Restriction and Targets Political Speech ........................ 9

            d.   The Rule Cannot Survive Strict Scrutiny ............................................... 10

                (1)   *EOIR Cannot Articulate a Compelling Interest in Enforcing*
                        *the Compulsory-Representation Rule*.............................. 10

                (2)   *The Rule Is Not Narrowly Tailored to Achieve EOIR's Stated*
                        *Purpose, Nor Is It the Least Restrictive Means of Doing So*......... 12

            e.   The Rule Cannot Survive Intermediate Scrutiny.................................... 15

            2.   EOIR's Compulsory-Representation Rule Violates the Tenth
            Amendment by Attempting to Broadly Regulate Lawyer Conduct ............... 15

            a.   The Tenth Amendment Vests States with the Exclusive Right to
                Regulate Lawyer Conduct Outside of Federal Judicial or Agency
                Proceedings ......................................................................... 15

            b.   The Tenth Amendment Limits Federal Agencies' Ability to
                Regulate the Practice of Law ................................................ 16

            c.   EOIR's Rule Advances an Impermissible Purpose and Encroaches
                Upon the States' Authority to Regulate Lawyer Conduct.................... 17

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – i

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

d.   EOIR's Rule Conflicts with the Duties Imposed on Attorneys under State Law ...................................................................... 18

B.   NWIRP Will Suffer Imminent and Irreparable Harm Absent an Injunction ..................................................................................... 19

C.   The Balance of Equities and Public Interest Strongly Favor a Preliminary Injunction ........................................................................... 21

1.   The Public Interest Favors Preventing the Violation of Constitutional Rights ................................................................................... 22

2.   The Public Interest Favors Allowing Limited Representation ....................... 22

D.   The Preliminary Injunction Should Provide Nationwide Relief ............................ 24

**IV.   CONCLUSION .............................................................................................. 24**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Mukasey,*
   534 F.3d 181 (3d Cir. 2008) ........................................................................10

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ......................................................................5

*Ashcroft v. ACLU,*
   542 U.S. 656 (2004) ...................................................................................12

*Baltazar-Alcazar v. INS,*
   386 F.3d 940 (9th Cir. 2004) ........................................................................1

*Barrows v. Jackson,*
   346 U.S. 249 (1953) ...................................................................................21

*Bond v. United States,*
   564 U.S. 211 (2011) ...................................................................................15

*Bradwell v. People of State of Ill.,*
   83 U.S. (16 Wall.) 130, 139 (1872) ..............................................................15

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.,*
   331 F.3d 342 (2d Cir. 2003) ........................................................................19

*Castro-O'Ryan v. INS,*
   847 F.2d 1307 (9th Cir. 1987) ......................................................................1

*Conant v. Walters,*
   309 F.3d 629 (9th Cir. 2002) ..................................................................6, 8

*Craig v. Boren,*
   429 U.S. 190 (1976) ...................................................................................21

*Drakes Bay Oyster Co. v. Jewell,*
   747 F.3d 1073 (9th Cir. 2013) ....................................................................21

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749 (1985) .....................................................................................9

*Elrod v. Burns,*
   427 U.S. 347 (1976) ...................................................................................19

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Forsyth Cty., Ga. v. Nationalist Movement,*
    505 U.S. 123 (1992) ...........................................................................................13, 14

*Goldfarb v. Va. State Bar,*
    421 U.S. 773 (1975) .................................................................................................15

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ...................................................................................................7, 9

*Hunter ex rel. Brandt v. Regents of Univ. of Cal.,*
    190 F.3d 1061 (9th Cir. 1999) .................................................................................12

*In re Primus,*
    436 U.S. 412 (1978) ...................................................................................7, 8, 10, 11

*Jean v. Nelson,*
    727 F.2d 957 (11th Cir. 1984) ...............................................................................6, 9

*King v. New Jersey,*
    767 F.3d 216 (3d Cir. 2014)) .....................................................................................8

*Kivitz v. SEC,*
    475 F.2d 956 (1973) .................................................................................................16

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001) .................................................................................................7, 8

*Leis v. Flynt,*
    439 U.S. 438, 442 (1979) .........................................................................................15

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995) ..............................................................................................9, 14

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...............................................................................19, 22

*Moncrieffe v. Holder,*
    133 S. Ct. 1678, 1690 (2013) ...................................................................................21

*NAACP v. Button,*
    371 U.S. 415 (1963) ......................................................................................... *passim*

*New York v. United States,*
    505 U.S. 144 (1992) .................................................................................................15

*Ohralik v. Ohio State Bar Ass'n,*
    436 U.S. 447 (1978) .................................................................................................15

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – iv

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Pickup v. Brown*,
    740 F.3d 1208 (9th Cir. 2014) ................................................................14

*Pierce v. Society of Sisters*,
    268 U.S. 510 (1925) ................................................................................21

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ..................................................................22

*Reed v. Town of Gilbert, Ariz.*,
    135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) ..............................................9

*Reno v. ACLU*,
    521 U.S. 844 (1997) ..........................................................................12, 13

*Sable Commc'ns of Cal., Inc. v. FCC*,
    92 U.S. 115 (1989) ..................................................................................10

*San Diego Comm. Against Registration & the Draft (Card) v. Governing Bd. of
    Grossmont Union High Sch. Dist.*,
    790 F.2d 1471 (9th Cir. 1986) ................................................................19

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ................................................................................21

*Small v. Avanti Health Sys., LLC*,
    661 F.3d 1180 (9th Cir. 2011) ................................................................22

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ..................................................................................9

*Sperry v. State of Fla.*,
    373 U.S. 379 (1963) ................................................................................16

*Touche Ross v. SEC*,
    609 F.2d 570 (2d Cir. 1979) ...................................................................16

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*,
    389 U.S. 217 (1967) ..................................................................................7

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................................14

*Winter v. Nat'l Res. Def. Council*,
    555 U.S. 7 (2008) ...............................................................................5, 22

*Wollschlaeger v. Florida*,
    848 F.3d 1293 (11th Cir. 2017) ................................................................8

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – v

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**Statutes & Regulations**

8 U.S.C. § 1229a(b)(4)(A) ................................................................................2

8 C.F.R. § 1001.1 ..................................................................................3, 4, 7

8 C.F.R. § 1003.102(t) ........................................................................3, 4, 17

8 C.F.R. § 1003.110(b) ...................................................................................17

8 C.F.R. § 1292 ...............................................................................................3

73 Fed. Reg. 76,914 ............................................................................3, 10, 11

80 Fed. Reg. 59,500 .........................................................................................4

**Court Rules**

Imm. Ct. Prac. Man. Rule 2.3(d) ....................................................................4

Wash. Rule of Prof. Conduct Rule 1.2(c) & cmts. ........................................18

Wash. Rule of Prof. Conduct 1.6(a) & cmts. ...........................................18, 19

**Other Authorities**

Am. Bar Ass'n, "Fight Notario Fraud,"
    http://www.americanbar.org/groups/public_services/immigration/
    projects_initiatives/fightnotariofraud.html .............................................11

Arthur Best, *Shortcomings of Administrative Agency Lawyer Discipline*,
    31 Emory L.J. 535 (1982) .....................................................................16

Ingrid Eagly and Steven Shafer, American Immigration Council,
    *Access to Counsel in Immigration Court* (Sept. 2016),
    https://www.americanimmigrationcouncil.org/sites/default/files/research/
    access_to_counsel_in_immigration_court.pdf .....................................2, 21

Public Comment Letter,
    2006 WL 4774818 (IRS 2006) ..............................................................16

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# INDEX OF SUPPORTING MATERIALS

Dkt. No.

**Declarations**

Ahmad, Prof.Muneer I. (Yale Law School)
[Allen Decl. Ex. H] ............................................................................... 39-8

Alger, Maureen P. (Cooley LLP)
[Allen Decl. Ex. GG] ........................................................................... 39-33

Barón, Jorge L. (NWIRP) ..........................................................................38

Bauer, Prof. Jon & Cabot, Jessica Anna (Univ. of Conn. School of Law)
[Allen Decl. Ex. F] ............................................................................... 39-6

Bildhauer, Juliann (Kids in Need of Defense)
[Allen Decl. Ex. P] ............................................................................. 39-16

Chan, Prof. R. Linus (Univ. of Minn. Law School)
[Allen Decl. Ex. C] ............................................................................... 39-3

Cheng, Yuk Man Maggie (NWIRP) ..............................................................4

Davis, Claire Loebs (Lane Powell PC)
[Allen Decl. Ex. FF] ........................................................................... 39-32

Dos Santos, Cristina (Cmty. Legal Servs. in East Palo Alto)
[Allen Decl. Ex. E] ............................................................................... 39-5

Fleming, John H. (Eversheds Sutherland (US) LLP)
[Allen Decl. Ex. V] ............................................................................. 39-22

Frahn, Harrison J. (Simpson Thacher & Bartlett LLP)
[Allen Decl. Ex. CC] ........................................................................... 39-29

Fritz, Kathryn J. (Fenwick & West LLP)
[Allen Decl. Ex. DD] ........................................................................... 39-30

Josef, Ellyn Haikin (Vinson & Elkins, LLP)
[Allen Decl. Ex. W] ............................................................................. 39-23

Kathawala, Rene A. (Orrick, Herrington & Sutcliffe LLP)
[Allen Decl. Ex. Y] ............................................................................. 39-25

Keller, John (Immigrant Law Ctr. of Minn.)
[Allen Decl. Ex. I] ............................................................................... 39-9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Kelly, Nancy (Greater Boston Legal Servs.)
    [Allen Decl. Ex. O] ............................................................................ 39-15

Kreimer, Frances M. (Dolores St. Cmty. Servs.)
    [Allen Decl. Ex. N] ............................................................................ 39-14

Lash, David A. (O'Melveny & Myers LLP)
    [Allen Decl. Ex. EE] ........................................................................... 39-31

Lindblom, Marjorie P. (Kirkland & Ellis LLP)
    [Allen Decl. Ex. HH] .......................................................................... 39-34

Little, Cheryl (AI Justice)
    [Allen Decl. Ex. L] ............................................................................. 39-12

London, Judy (Public Counsel)
    [Allen Decl. Ex. M] ............................................................................ 39-13

Marcus, Prof. Lynn (Univ. of Ariz. College of Law)
    [Allen Decl. Ex. Q] ............................................................................ 39-17

Medway, Leah E. (Perkins Coie LLP)
    [Allen Decl. Ex. Z] ............................................................................ 39-26

Murray, Mayor Edward B. (City of Seattle)
    [Allen Decl. Ex. II] ............................................................................ 39-35

Pennington, Alison (Centro Legal de la Raza)
    [Allen Decl. Ex. T] ............................................................................ 39-20

Phelps, Kursten (Tahirih Justice Ctr.)
    [Allen Decl. Ex. B] .............................................................................. 39-2

Roche, Susan (Immigrant Legal Advocacy Project)
    [Allen Decl. Ex. K] ............................................................................ 39-11

Sennett, Caroline Devan (Int'l Institute of Conn.)
    [Allen Decl. Ex. G] .............................................................................. 39-7

Slater, Stacey (Nixon Peabody LLP)
    [Allen Decl. Ex. X] ............................................................................ 39-24

Soloway, Audra J. (Paul, Weiss, Rifkind, Wharton & Garrison LLP)
    [Allen Decl. Ex. BB] .......................................................................... 39-28

Stolz, Richard (OneAmerica)
    [Allen Decl. Ex. J] ............................................................................ 39-10

Van Nortwick, Jr., William A. (Akerman LLP)
[Allen Decl. Ex. AA]........................................................................ 39-27

Warden-Hertz, Timothy (NWIRP) ...................................................................3

Weissman-Ward, Lisa (Stanford Law School)
[Allen Decl. Ex. D]........................................................................... 39-4

Werner, Daniel (Southern Poverty Law Center)
[Allen Decl. Ex. U]......................................................................... 39-21

Zoltan, Paul S. (Refugee Support Networks)
[Allen Decl. Ex. R]......................................................................... 39-18

Zukin, Valerie Ann  (Bar Assoc. of S.F.)
[Allen Decl. Ex. S] ........................................................................ 39-19

**Briefs by Amici Curiae**

American Civil Liberties Union (ACLU) of Washington ...................................... 20-1

Attorney General of Washington............................................................... 18-1

**Transcripts**

Excerpts from Oral Argument re: Plaintiffs' Motion for Temporary Restraining Order
(May 17, 2017) [Allen Decl. Ex A]........................................................ 39-1

**Other Documents**

Barnes, Jennifer J., EOIR, *Cease & Desist Letter to NWIRP* (Apr. 5, 2017)............................ 8-1

Lang, Steven, EOIR, *Memorandum re: Legal Orientation Program Guidelines –
Orientation vs. Representation* (July 11, 2011)............................................... 14-2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

On May 17, 2017, this Court granted Northwest Immigrant Rights Project ("NWIRP")'s Motion for Temporary Restraining Order, enjoining the Executive Office for Immigration Review ("EOIR") from enforcing a "cease and desist" order that impaired NWIRP's ability to provide legal assistance to thousands of immigrants per year (Dkt. 33).  The Court's nationwide TRO also prevented EOIR from targeting others for similar unconstitutional enforcement efforts.

This broad injunctive relief was, and remains, vitally necessary.  EOIR cannot articulate *any* constitutionally permissible justification for its newfound insistence that NWIRP either commit in advance to full representation of *every* immigrant in removal proceedings—an impossibility—or refrain from providing them *any* legal assistance.  EOIR's cease-and-desist order will deprive thousands of unrepresented immigrants—including asylum seekers, unaccompanied children, and those in detention—of the chance to consult with a NWIRP attorney and receive critical assistance navigating the complex immigration system.  If left unchecked, EOIR's unconstitutional conduct will cause immediate and irreparable harm to NWIRP, its staff and volunteer attorneys, its clients, and countless other legal aid providers, volunteer lawyers, and unrepresented immigrants across the country.  For the reasons identified previously (*see* Dkts. 2, 21) and those discussed below, the Court should convert the temporary restraining order into a preliminary injunction, allowing NWIRP and others to continue providing vital legal assistance to unrepresented immigrants while this lawsuit is pending.

## II.    FACTUAL BACKGROUND

### A.    The Vital Importance of Legal Assistance to Immigrants in Removal Proceedings

Removal proceedings have often been described as the second most complex legal system, following only the tax code.  *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987); *see also Baltazar-Alcazar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004) (emphasizing the complexity of the immigration system and noting lawyers may be the only ones capable of navigating it).  Removal proceedings are also fiercely adversarial, with a U.S. government-employed attorney advocating against the noncitizen in every proceeding.  Despite the

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

complexity and adversarial nature of removal proceedings, and despite all that is at stake (including, *inter alia*, forced return to persecution and torture as well as permanent separation from family, home and employment), there is no right to appointed counsel for indigent persons in removal proceedings.  *See* 8 U.S.C. 1229a(b)(4)(A).  This is true for unaccompanied children, illiterate persons, and those in custody.

"Detainees who are represented by counsel prevail in their cases almost ten times more often than those who proceed *pro se*."  Allen Decl. Ex. U ¶ 18; Ex. II ¶ 4.  Yet, between 2007 and 2012, only 65 percent of non-detained individuals at immigration court in downtown Seattle were represented by an attorney; while only ***eight*** percent of detained individuals in Tacoma were represented.  *Id.* Ex. II ¶ 4.  Nationwide, for those detained while in removal proceedings, approximately 86% are forced to proceed without any legal representation.[1]  Seattle ranks among the top 20 metropolitan areas with the largest populations of undocumented/unauthorized immigrants.  *Id.*  Against this backdrop, organizations like NWIRP provide crucial services to otherwise unrepresented immigrants navigating the byzantine immigration legal system.

## B.      NWIRP Plays a Critical Role in Providing Legal Assistance to Immigrants

Founded in 1984, NWIRP seeks to promote justice by defending and advancing the rights of immigrants through direct legal services, systematic advocacy, and community education.  Barón Decl. ¶ 2.  NWIRP is the primary nonprofit legal services provider for immigrants in removal proceedings in Washington State and for persons detained at the Northwest Detention Center in Tacoma.  *Id.*  NWIRP relies on grants and contributions to fund its operations and services.  *Id.*  NWIRP provides "Know Your Rights" ("KYR") presentations, community workshops, and individual consultations to unrepresented individuals.  *Id.* ¶ 3.  NWIRP screens several thousand potential clients per year, and its staff attorneys provide direct representation in hundreds of immigration cases before EOIR.  *Id.*  NWIRP also organizes pro bono representation for more than 200 additional cases each year in removal proceedings.  *Id.*

---

[1] *See* Ingrid Eagly and Steven Shafer, American Immigration Council, *Access to Counsel in Immigration Court*, (Sept. 2016), at 5, *available at* https://www.americanimmigrationcouncil.org/sites/default/files/research/access_to_counsel_in_immigration_court.pdf.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Full representation in removal proceedings entails the preparation and filing of required procedural and substantive motions, applications and briefing for all defenses and forms of relief for which the applicant is eligible and/or extensive documentation of key facts in the case, including reports on country conditions, witness testimony, and evaluations by psychologists or other medical professionals.  *Id.*  Removal proceedings also often involve multiple hearings over the course of several years.  *Id.*  Due to time, cost, and other resource constraints, NWIRP cannot provide full representation to every person who seeks out NWIRP's assistance.  *Id.*  Therefore, to meet the exigent need for legal assistance, NWIRP provides a range of limited services to otherwise unrepresented immigrants.  *Id.*  These services include helping file motions to terminate proceedings, change venue, and reopen old removal orders before EOIR.  Dkt. 4 ¶ 5.  NWIRP also assists clients in preparing various forms seeking relief from removal, including applications for asylum, family visas, cancellation of removal, special immigrant juvenile status, and U & T visas for survivors of trafficking and violent crimes.  *Id.*; Barón Decl. ¶ 4.

NWIRP's limited legal services are critical to immigrants who cannot afford private legal representation, especially unaccompanied children, detained persons, and those who are illiterate or speak a rare language and therefore have difficulty accessing resources and preparing their own filings.  Dkt. 4 ¶ 9; Dkt. 3 ¶ 8.  These services help pro se individuals navigate complex immigration court procedures, file motions and applications with all information necessary to preserve eligibility for relief, and understand their rights and options.  *Id.*  To ensure accountability when providing these services, NWIRP provides written and oral notice to individuals that it is not agreeing to represent them, and it explains to them the scope of the services it will and will not provide.  Dkt. 4 ¶ 10; Dkt. 3 ¶ 7.

**C.      EOIR Threatens NWIRP with Disciplinary Sanctions for Providing Limited Legal Assistance to Unrepresented Immigrants**

On December 18, 2008, EOIR published a rule of professional conduct governing "practitioners who appear before [EOIR]."  *See* Professional Conduct for Practitioners, 73 Fed. Reg. 76,914 (Dec. 18, 2008) (the "Rule"), codified at 8 C.F.R. §§ 1001, 1003 & 1292.  Among other things, EOIR's Rule establishes that an attorney "shall be subject to disciplinary sanctions"

if the attorney "[f]ails to submit a signed a completed Notice of Entry of Appearance … when the [attorney] … [h]as engaged in practice or preparation."  8 C.F.R. § 1003.102(t)(1).  The Rule further defines the terms "practice" and "preparation" as follows:

> The term *practice* means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS, or any immigration judge, or the Board ....
>
> The term *preparation,* constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers ....

8 C.F.R. § 1001.1(i), (k).

When this Rule was adopted, NWIRP met with the local EOIR immigration court administrator to discuss the Rule's impact on NWIRP's services to pro se individuals.  Barón Decl. ¶ 5.  NWIRP agreed that it would notify the courts of its assistance with any pro se motion or brief by including a subscript or other clear indication that NWIRP had prepared or assisted in preparing the motion or application.  *Id.*  In the nine years since the Rule was adopted, the immigration courts have not raised any concerns to NWIRP about this practice.  *Id.*

On April 13, 2017, NWIRP received a letter from Defendant Jennifer Barnes, EOIR's Disciplinary Counsel, stating EOIR was aware that NWIRP had assisted at least two pro se applicants in filing motions without first filing notices of appearance.  Dkt. 8-1.  Defendant Barnes instructed NWIRP to "cease and desist from representing aliens unless and until the appropriate Notice of Entry of Appearance form is filed with each client that NWIRP represents," threatening discipline if NWIRP failed to do so.  *Id.*  EOIR did not, however, allege NWIRP's limited assistance to the two pro se individuals was in any way deficient.  *Id.*

EOIR does not allow practitioners to enter limited notices of appearance to handle discrete motions or issues in a removal case.[2]  Dkt. 4 ¶ 6; Dkt. 3 ¶ 7.  Any attorney who appears consents to fully represent the immigrant in the proceeding until its conclusion.  The attorney cannot withdraw from representation without leave of the immigration court, and leave is granted

---

[2] The one exception allows for a limited appearance for the purpose of representing a respondent in a custody proceeding. *See* Separate Representation for Custody and Bond Proceedings, 80 Fed. Reg. 59,500 (Oct. 1, 2015).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

only in exceptional circumstances.  *See* Imm. Ct. Prac. Man. R. 2.3(d) ("Once an attorney has made an appearance, that attorney has an obligation to continue representation until such time as a motion to withdraw or substitute counsel has been granted by the Immigration Court.");[3] *see also* Dkt. 4 ¶ 9.  NWIRP lacks the resources to provide full representation of each immigrant to whom it currently provides limited services.  So, in effect, EOIR's new interpretation of this Rule will force NWIRP to discontinue providing limited legal services to thousands of individuals in removal proceedings.  Dkt. 4 ¶ 6; Dkt. 3 ¶ 14.

EOIR's interpretation of the Rule compels NWIRP attorneys to accept a scope of representation beyond what they and their clients have agreed to.  EOIR's letter also casts doubt on whether NWIRP can initially consult with pro se persons or screen cases for referral to volunteer attorneys.  This uncertainty means NWIRP must now choose to either abandon most of the services it provides to immigrants in removal proceedings or to continue to provide those services under the imminent threat of disciplinary sanctions.  EOIR's letter has a considerable chilling effect on NWIRP's activities and the activities of other legal aid providers and volunteer lawyers, impairing their ability to provide legal advice to and advocacy for immigrants.

### III.   ARGUMENT

To obtain a preliminary injunction, NWIRP must satisfy the same criteria it satisfied for the TRO: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if relief is denied; (3) the balance of equities tips in the movant's favor; and (4) the public interest favors granting relief.  *See Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008).  The Ninth Circuit uses a balancing or "sliding scale" approach: where the balance of equities weighs strongly in favor of the moving party, it may prevail if its claims raise serious legal questions and otherwise meet the remaining factors.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

### A.   Plaintiffs Are Likely to Succeed on the Merits

NWIRP is likely to succeed on the merits of its claims because EOIR's Rule, and its

---

[3] https://www.justice.gov/sites/default/files/pages/attachments/2016/12/02/practice_manual.pdf#page=26.

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – 5

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  application to NWIRP, violates the First and Tenth Amendments.  As it did when it entered the

2  TRO, the Court should again find that NWIRP is likely to succeed on the merits of its claims.

### 1.    EOIR's Compulsory-Representation Rule Violates the First Amendment Because It Unduly Burdens Plaintiffs' Speech and Petitioning Rights

The Rule violates NWIRP's First Amendment right to advocate on behalf of

immigrants, including the right to speak and associate through the provision of nonprofit legal

services, and the right to petition the government for redress.  NWIRP brings its challenge on

both an as-applied basis, to the extent EOIR seeks to enforce the rule against NWIRP through its

cease-and-desist letter, ***and*** on a facial basis, as the Rule is unconstitutional on its face.  The Rule

cannot survive the applicable strict scrutiny standard, much less the lower, intermediate scrutiny

standard, because the Rule is not narrowly tailored to achieve EOIR's purported interest.

### a.    As a Non-Profit Legal Advocate, NWIRP Has a First Amendment Right to Advise Others of Their Legal Rights

NWIRP's right to assist clients and prospective clients in removal proceedings is

protected by the First Amendment.  "Attorneys have rights to speak freely subject only to the

government regulating with 'narrow specificity.'"  *Conant v. Walters*, 309 F.3d 629, 637 (9th

Cir. 2002) (citing *NAACP v. Button*, 371 U.S. 415, 433, 438–39 (1963)).  "The Supreme Court

has repeatedly emphasized that counsel have a [First Amendment] right to inform individuals of

their rights ... when they do so as an exercise of political speech without expectation of

remuneration."  *Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir. 1984), *aff'd,* 472 U.S. 846 (1985).

The First Amendment accords heightened free speech guarantees to Plaintiffs and

similarly situated persons who "advocate [for] lawful means of vindicating legal rights."

*NAACP v. Button*, 371 U.S. 415, 429, 437 (1963).  In *Button*, the Supreme Court upheld the

NAACP's right to provide nonprofit legal services—as Plaintiffs do here—as "a form of political

expression" by "serving to vindicate the rights of members" of a particular community.  *Id.* at

429, 431 (invalidating solicitation law prohibiting attorneys from advising others their legal

rights had been infringed and referring them to an attorney).  Recognizing this form of legal

advice and advocacy was protected expression, the Court remarked that the First Amendment

"protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." *Id.* at 429, 437. Thus, although EOIR asserts the Rule regulates lawyer conduct, EOIR "may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id.* at 439.

Since *Button*, the Supreme Court has continued to accord broad First Amendment protections to lawyers who advise others of their legal rights. For example, in *In re Primus*, 436 U.S. 412 (1978), the Court affirmed South Carolina could "not abridge unnecessarily the associational freedom of nonprofit organizations, or their members," through broad lawyer disciplinary rules. *Id.* at 439; *see also United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 221 (1967) (*Button*'s holding is not "narrowly limited" to "litigation that can be characterized as a form of political expression"). In 2001, the Court affirmed the government cannot "prohibit the analysis of certain legal issues" without violating the First Amendment. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("*LSC*"). The *Button*, *Primus*, and *LSC* trio of cases confirms that lawyers—and, in particular, non-profit legal organizations—have an unfettered First Amendment right to advise clients and prospective clients about their legal rights.

### b. EOIR's Rule Is a Restriction on Speech, Not Conduct

EOIR claims its Rule regulates conduct, not speech, because it applies to activities like "practice" and "preparation." As a threshold matter, EOIR's argument is without merit. "Preparation" includes, and in fact requires, the giving of "advice." 8 C.F.R. § 1001.1(k). To determine whether NWIRP engaged in "preparation," EOIR must determine whether NWIRP gave "advice"—which it can do only by examining the content of NWIRP's speech.

Moreover, EOIR's position contravenes Supreme Court precedent. A restriction on a lawyer giving legal advice is a regulation of speech, not conduct. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 25 (2010) ("*HLP*") (rejecting as "extreme" the government's argument that a statute prohibiting lawyers from providing "expert advice or assistance" to terrorist organizations regulated conduct rather than speech). As the Court explained in *HLP*, while a law restricting the giving of legal advice "may be described as directed at conduct ... as applied to

plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Id.* at 28 (upholding restriction under strict scrutiny because of national security implications). "[L]abeling certain verbal or written communications 'speech' and others 'conduct' is unprincipled and susceptible to manipulation." *Wollschlaeger v. Florida*, 848 F.3d 1293, 1308 (11th Cir. 2017) (quoting *King v. New Jersey*, 767 F.3d 216 (3d Cir. 2014)).

Nor can EOIR avoid First Amendment scrutiny by characterizing its Rule as a regulation of the legal profession. The Supreme Court routinely applies "heightened scrutiny to regulations restricting the speech of professionals." *Wollschlaeger*, 848 F.3d at 1310. "Being a member of a regulated profession does not, as the government suggests, result in a surrender of First Amendment rights." *Conant*, 309 F.3d at 637 (citing *Button,* 371 U.S. at 433). EOIR's primary justification for the Rule is its purported need to regulate attorney conduct. But, "it is no answer to the constitutional claims ... to say that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Button*, 371 U.S. at 438–39.

EOIR's compulsory-representation rule infringes the same First Amendment speech rights recognized by the Supreme Court in *Button*, *Primus*, *LSC*, and *HLP*. The First Amendment "protects vigorous advocacy, certainly of lawful ends, against governmental intrusion," particularly when offered on a pro bono basis on behalf of an "unpopular minority." *Button*, 371 U.S. at 429, 434, 441. NWIRP exists to advocate for the rights of an "unpopular minority"—immigrants in removal proceedings. And like the NAACP and ACLU, NWIRP's services to individual clients are part of the organization's broader political efforts on behalf of immigrants' rights, which implicate free speech, free association, and petitioning rights.[4] Moreover, by constraining NWIRP's ability to advise persons in agency proceedings, the Rule limits NWIRP's right to provide "vigorous advocacy … against governmental intrusion"—which is "even more problematic because ... the client is unlikely to find other counsel." *LSC*, 531 U.S.

---

[4] *See Button*, 371 U.S. at 428–29 ("[T]he activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments ... ."); *id.* at 430 ("[U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances.").

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – 8

at 546.  As a result, EOIR's Rule is subject to the "exacting [or strict] scrutiny applicable to limitations on core First Amendment rights."  *Primus*, 436 U.S. at 432.

### c.   EOIR's Rule is Subject to Strict Scrutiny Because It Imposes a Content-Based Restriction and Targets Political Speech

EOIR's Rule is subject to strict scrutiny for two separate reasons.

*First*, EOIR's Rule is a content-based speech restriction.  A content-based restriction is one that "cannot be justified without reference to the content of the regulated speech."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."  *Id.* at 2229–30.  Content-based speech restrictions are presumptively unconstitutional and subject to strict scrutiny.  *Id.* at 2226.  This is particularly true when the speech consists of legal advice given by an attorney.  *See HLP*, 561 U.S. at 27.  The Rule singles out a certain form of speech (legal advice) on a specific subject matter (immigration law) directed at unrepresented immigrants in removal proceedings, and curtails it.  If NWIRP intends to speak to unrepresented immigrants who seek legal advice, and wants to do so without triggering the compulsory-representation rule, "whether [it] may do so ... depends on what [it] say[s]."  *HLP*, 561 U.S. at 27 (2010).  This is the essence of an impermissible content restriction.

*Second*, strict scrutiny is warranted because the Rule targets political speech on issues of public concern.  The Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (internal quotations omitted).  This special protection extends to speech "relating to any matter of political, social, or other concern to the community ....."  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and quotations omitted).  Informing immigrants of their legal rights without expecting compensation is "an exercise of political speech."  *See Jean*, 727 F.2d at 983.  And when a "law burdens core political speech," strict scrutiny unquestionably applies.  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995).

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – 9

### d.     The Rule Cannot Survive Strict Scrutiny

"To survive strict scrutiny … a statute must: (1) serve compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008) (citing *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989)).  The Rule fails every element of that test.

### (1)     EOIR Cannot Articulate a Compelling Interest in Enforcing the Compulsory-Representation Rule

Because NWIRP asserts both facial and as-applied challenges to the Rule, EOIR must articulate both a compelling interest the Rule generally advances *and* a compelling interest EOIR has in applying the Rule to NWIRP.  *See Primus*, 436 U.S. at 434–35 (solicitation rule unconstitutional as applied to lawyer "unless her activity in fact involved the type of misconduct" the rule was intended to prevent; no evidence that misconduct "actually occurred" in her case).  EOIR asserts various justifications for its Rule, but none of those justifications are served by the Rule in general or by enforcing the Rule against NWIRP:

*First*, in enacting the Rule, EOIR explained it wanted "to advance the level of professional conduct in immigration matters and foster increased transparency in the client-practitioner relationship." 73 Fed. Reg. 76,914; Allen Decl. Ex. A 42:14–16.  EOIR required practitioners to enter a notice of appearance when they represent an individual in a proceeding so that it could ensure that "[a]ny practitioner who accepts responsibility for rendering immigration-related services to a client [will] be held accountable for his or her own actions . . . ." 73 Fed. Reg. 76, 914.  But the Rule is not an identification requirement, and it does nothing to advance professional conduct or increase accountability or transparency; instead, it compels attorneys to undertake full representation, and it eliminates their ability to provide limited-scope representation.  EOIR cannot articulate any compelling interest in imposing this all-or-nothing approach.

Moreover, as applied to NWIRP, EOIR admits "the record does not reflect that NWIRP has engaged in any ineffective assistance or anything like that." Allen Decl. Ex. A 43:14–16.  EOIR does not allege misconduct or a need to discipline NWIRP or its attorneys. *Id.* 39:19–20;

40:6–15 (EOIR has no information NWIRP was deficient, filed false statements, or engaged in misconduct).  The cease-and-desist letter does not suggest any deficiencies in NWIRP's legal services.  *See* Dkt 8-1.  Absent evidence that misconduct has "actually occurred," EOIR has no compelling interest in applying its Rule to NWIRP.  *Primus*, 436 U.S. at 435.

*Second*, EOIR has suggested the Rule helps to prevent "notario fraud"[5]—the unauthorized practice of law by "immigration consultants" who charge immigrants and deliver substandard services (or no services at all).  But, again, EOIR's purported interest in holding attorneys accountable for misconduct and fraud is not served by barring nonprofit legal organizations (especially those, like NWIRP, that have been accredited by EOIR and placed on its pro bono referral lists, *see* Dkt. 3 ¶ 4) from providing limited legal services, especially when those organizations identify themselves on the papers they assist in preparing.

As applied to NWIRP, EOIR's justification makes even less sense.  NWIRP does not charge fees for *pro se* services to persons in removal proceedings, so any purported interest in preventing notario fraud is inapplicable.  *See* Barón Decl. ¶ 4.  In fact, "NWIRP is a critical partner in helping the State [of Washington] prevent and combat notario fraud," as it is well-positioned to learn about and report such abuse given its role as a trusted legal aid provider.  Dkt. 18-1 at 7.  Ironically, a reduction in NWIRP's ability to provide limited legal services would *undermine* the State's interest in combatting notario fraud.  *Id.*; s*ee also* Allen Decl. Ex. R ¶ 9 (without limited legal services, "[t]he penniless aliens we assist would turn to so-called *notarios* or, more likely, give up on the asylum process altogether."); *Id.* Ex. G ¶ 17 (compulsory representation does not resolve the issue of full representation for all, but instead denies those who need it "crucial access to basic legal advice.").

*Third,* EOIR suggests it has an interest in preventing the practice of "ghostwriting."  *Id.* Ex. A 35:17–36:19.  A compulsory-representation rule (as opposed to an identification requirement) does not advance this purported interest.  This interest is also not compelling—in

---

[5] *See* Am. Bar Ass'n, "Fight Notario Fraud," http://www.americanbar.org/groups/public_services/immigration/ projects_initiatives/fightnotariofraud.html (last accessed June 8, 2017).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

fact, it has been squarely rejected.  Limited representation, and specifically the practice of ghostwriting, "has been endorsed by the [ABA] and jurisdictions nationwide, and can be accomplished in a manner that maximizes the availability of legal advice (as required by the First Amendment) to people who sorely need it, while preserving attorney oversight."  Dkt. 20-1, at 11 (and authorities cited therein).  Washington courts, for example, "expressly authorize limited representation to increase the availability of legal services to clients of limited financial means." *Id.* (internal citation and quotation omitted).

Unlike an identification rule, or rules that impose minimum standards of attorney competence, the only practical effect of EOIR's Rule is to eliminate the provision of limited legal services and impose an all-or-nothing framework of attorney representation in agency proceedings.  EOIR cannot articulate any compelling interest in imposing such a policy on NWIRP or similarly situated legal aid providers.

### (2)   The Rule Is Not Narrowly Tailored to Achieve EOIR's Stated Purpose, Nor Is It the Least Restrictive Means of Doing So

Even if EOIR's interests were sufficiently compelling, the Rule is not narrowly tailored to achieve those interests: "strict scrutiny requires a direct rather than approximate fit of means to ends."  *Hunter ex rel. Brandt v. Regents of Univ. of Cal.*, 190 F.3d 1061, 1077 (9th Cir. 1999) (internal quotation marks omitted).  The Rule also fails to satisfy the least-restrictive-means test because it "effectively suppresses a large amount of [constitutionally-protected] speech ... [when] less restrictive alternatives would be at least as effective in achieving" its purported goal. *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) (quoting *Reno v. ACLU*, 521 U.S. 844, 874 (1997)).  "[T]he burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute."  *Id.*  That burden is "not merely to show that a proposed less restrictive alternative has some flaws; its burden is to show that it is less effective."  *Id.* at 669.  EOIR cannot satisfy that burden.

*First*, the Rule imposes an all-or-nothing paradigm that is not tied to EOIR's proffered interest in reducing either attorney misconduct or notario fraud.  If an attorney enters an appearance, given the difficulty of later withdrawing, she must be prepared to commit to

represent the client for the duration of the proceeding.  If EOIR wants to hold legal providers accountable, EOIR could have those providers identify themselves on the filings they prepare— *which NWIRP already does*.  If EOIR seeks to combat notario fraud, eliminating NWIRP's ability to provide limited low- or no-cost legal services achieves precisely the opposite: it will drive individuals to notarios, who will become the only option available.  *See* Dkt. 18-1 at 5-6.

**Second**, the Rule triggers an appearance requirement based on preliminary lawyer-client communications that do not implicate EOIR's standards of professional conduct.  For instance, information exchanged during an individual screening could be construed as "advice," and documenting it might be deemed an "auxiliary activity."  Providing legal advice by identifying avenues for relief and forms to complete, informing clients about deadlines, and advising clients how to present their case to the court could also run afoul of the Rule.  *See* Barón Decl. ¶ 4. Likewise, NWIRP's community workshops and KYR presentations may also be subject to the Rule depending on what NWIRP's attorneys say during those events.  NWIRP plainly does not intend to form an attorney-client relationship with every person who attends a community event, but NWIRP attorneys may inevitably provide "advice" and engage in "auxiliary activity," especially if they provide assistance, as they usually do, by answering questions after the presentation and directing individuals to particular forms of relief.

**Third**, the Rule is impermissibly vague and overbroad.  "The vagueness of [a content-based restriction] raises special First Amendment concerns because of its obvious chilling effect on free speech."  *Reno*, 521 U.S. at 871–72.  Likewise, any regulation that impacts speech may be invalidated as overbroad "in cases where the [regulation] sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected."  *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).  The Court in *Button* described the extraordinary threat created by a vague and overbroad restriction on attorney speech and advocacy:

> The objectionable quality of vagueness and overbreadth [depends] ... upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.  These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

space to survive, government may regulate in the area only with narrow specificity.

*Button*, 371 U.S. at 432–33.  EOIR concedes that under the Rule, NWIRP cannot "engage in acts that constitute providing advice and providing actual assistance that is to be presented before the immigration court."  Allen Decl. Ex. A 34:22-35:3.  Notably, EOIR cannot clearly define the parameters of "practice," "preparation," or "auxiliary activities" that would subject an attorney to discipline.  *Id.* 52:23-53:9 ("the moment your actions have advice and constitute auxiliary activities ... [an] appearance is required"); *see also, e.g.*, *id.* 57:14–22.  The Rule's definition of "preparation" is similarly vague: it requires the giving of "advice" and "auxiliary activities," but neither of these terms is defined.  Some *or all* of the above examples of services NWIRP provides could fall within the definition.  Tellingly, EOIR could not tell the Court whether an attorney could help someone fill out a form, *id.* 58:1-59:8, or whether answering a question at a legal aid clinic required the attorney to file an appearance, *id.* 32:18-33:24.  The Rule's vagueness is highlighted by EOIR's reliance on lawyers' "knowledge and experience of distinguishing between providing legal advice and providing legal information" to define the proscribed conduct.  *Id.* 59:13-19.  An ambiguous law that leaves unclear whether certain attorney speech is permissible cannot be tolerated.  *Button*, 371 U.S. at 432.

The Rule is also overbroad because it "sweeps too broadly" and burdens constitutionally protected speech.  *Forsyth Cnty.*, 505 U.S. at 130.  NWIRP's community workshops and KYR presentations are two obvious examples.  "[W]here a professional is engaged in public dialogue, First Amendment protection is at its greatest."  *Pickup v. Brown*, 740 F.3d 1208, 1227–28 (9th Cir. 2014).  "The right of free speech, the right to teach and the right of assembly are … fundamental rights."  *McIntyre*, 514 U.S. at 336 n.1 (1995).  The Rule will certainly burden, if not curtail, NWIRP's ability to engage in these protected activities.

In sum, the Rule is not narrowly tailored to achieve EOIR's interest, nor is it the least restrictive means of doing so.  It therefore fails strict scrutiny.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### e.     The Rule Cannot Survive Intermediate Scrutiny

Even if the Court applies intermediate scrutiny, the Rule cannot survive because it is not "narrowly tailored to serve a significant governmental interest and ... [does not] leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The lack of any legitimate interest or tailoring is discussed above, and the absence of "ample alternative channels" is apparent. "NWIRP is the primary non-profit legal services provider for immigrants in removal proceedings in Washington and for detained person in Tacoma," Dkt. 18-1 at 2, and in many cases, there are no alternative providers for these vulnerable individuals. NWIRP's work will be sharply curtailed under EOIR's new all-or-nothing framework. Many immigrants who receive limited legal services will be deprived of those services with no available alternative. The Rule cannot survive intermediate scrutiny.

### 2.     EOIR's Compulsory-Representation Rule Violates the Tenth Amendment by Attempting to Broadly Regulate Lawyer Conduct

The Tenth Amendment "is a mere affirmation of what, upon any just reasoning, is a necessary rule of interpreting the constitution[:] … that what is not conferred, is withheld, and belongs to the state authorities." *New York v. United States*, 505 U.S. 144, 156 (1992). NWIRP has standing to bring Tenth Amendment claims because its "injury [stems] from governmental action taken in excess of the authority that federalism defines." *Bond v. United States*, 564 U.S. 211, 220, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011).

### a.     The Tenth Amendment Vests States with the Exclusive Right to Regulate Lawyer Conduct Outside of Federal Judicial or Agency Proceedings

The Tenth Amendment unequivocally vests "the right to control and regulate the granting of license to practice law" in the States, not the federal government. *Bradwell v. People of State of Ill.*, 83 U.S. (16 Wall.) 130, 139 (1872). "Since the founding of the Republic, the licensing and regulation of lawyers has been left *exclusively* to the States and the District of Columbia within their respective jurisdictions." *Leis v. Flynt*, 439 U.S. 438, 442 (1979) (emphasis added). "The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have

historically been 'officers of the courts.'" *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (quoting *Goldfarb v. Va. State Bar,* 421 U.S. 773, 792 (1975)).  To that end, the "States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers." *Leis*, 439 U.S. at 700–01.

### b.   The Tenth Amendment Limits Federal Agencies' Ability to Regulate the Practice of Law

The Tenth Amendment's limitations on federal power are strongly implicated whenever a federal agency seeks to regulate the practice of law.  *See Sperry v. State of Fla.*, 373 U.S. 379 (1963).  An agency may regulate persons practicing before it because the agency has an interest in the integrity of its administrative processes.  *See Touche Ross v. SEC*, 609 F.2d 570, 581(2d Cir. 1979).  However, an agency may not regulate for other purposes or substitute its judgment for that of state licensing agencies in matters that are outside the scope of its expertise.  Two factors argue for a narrow definition of permissible agency regulation.  First, "agencies bring a mixture of responsibilities and motivations to the discipline process."  Arthur Best, *Shortcomings of Administrative Agency Lawyer Discipline*, 31 Emory L.J. 535, 557–58 (1982) ("*Best*").  They are often not neutral decision-makers.  *Id.*, *see also* Public Comment Letter, 2006 WL 4774818 at *5 (IRS 2006) ("The relationship between representatives of the Treasury or the IRS and the practitioners whom the Secretary is authorized to regulate is sometimes adversarial; and the Secretary's authority to dictate how practitioners must conduct themselves might potentially be used to disadvantage unfairly the taxpayers whom those practitioners represent.").  Moreover, the agency's desire for certain outcomes may lead they agency to improperly impose substantive obligations on attorneys that are disguised as lawyer discipline.  *Best* at 536.

Second, agencies generally lack expertise in lawyer discipline.  Ethics rules are very different from most agencies' ordinary work.  *Id*. at 558; *Kivitz v. SEC*, 475 F.2d 956, 961–62 (1973).  While the agency may regulate a lawyer's conduct in a hearing, an agency trying to regulate client counseling "ought to have to justify that scope of attention by demonstrating a clear need for such regulation, as well as by demonstrating its own competence to carry it out."

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Best* at 564.  The need for the regulation when the conduct is already regulated by the state, as is the case here, is especially questionable.  *Id.* at 563-64.

### c.    EOIR's Rule Advances an Impermissible Purpose and Encroaches Upon the States' Authority to Regulate Lawyer Conduct

The purpose of EOIR's "notice of appearance" requirement goes well beyond protecting the integrity of its own administrative process: it encompasses conduct outside of agency hearings, and extends to legal advice and assistance provided in confidential consultations.  A lawyer[6] is subject to discipline by EOIR for failing to enter a notice of appearance when "engag[ing] in practice *or* preparation."  8 C.F.R. § 1003.102(t) (emphasis added).  Because the terms "practice" and "preparation" are broad enough to encompass nearly any activity, when coupled with the difficulty of a lawyer later withdrawing from representation, the Rule effectively restricts lawyer communication and thereby limits the number of persons able to obtain *some* form of legal advice.  This does not ensure the integrity of agency proceedings.

EOIR's neutrality and competence in this area is questionable, which only further underscores the need to limit the scope of lawyer conduct it may regulate.  As an executive administrative agency within an Administration that has announced its intent to deport as many people as possible, as fast as possible, EOIR finds itself in a directly adversarial position to NWIRP.  The Rule will result in fewer immigrants—asylum seekers, unaccompanied children, detainees, and individuals seeking to reunite with family, among others—receiving the legal advice they need to competently represent themselves, which furthers the Administration's goal. In contrast, the agency cannot show that limiting the number of immigrants who receive legal advice will improve the competency of attorneys or enhance the agency's disciplinary efforts. Some attorneys may provide full representation but provide it poorly; others may provide limited representation and do it well.  The Rule will not change this.  Indeed, the Rule will have no impact on unlicensed notaries (one of the primary disciplinary targets), as they have never been in a position to enter an appearance with respect to their unlicensed practice of law.  It is unlikely

---

[6] EOIR further extends its disciplinary grasp to recognized organizations whenever such sanctions are "in the public interest."  § 1003.110(b) (containing a nonexhaustive list of grounds for organizational discipline, including "fail[ure] to adequately supervise accredited representatives").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

that the Rule could ever achieve anything beyond minimal and selective enforcement, all while depriving immigrants of critical legal advice.

Fortunately, every state, including Washington, has an agency which investigates and disciplines lawyers for misconduct, including lack of competency, and takes disciplinary referrals from courts, state and federal agencies, and individuals.  Nothing prevents EOIR from making such a referral.  State courts and bar associations are far better positioned to neutrally and competently evaluate the conduct of and, where necessary, discipline their attorneys.

> **d.    EOIR's Rule Conflicts with the Duties Imposed on Attorneys under State Law**

Washington and other states following the Model Rules of Professional Responsibility have adopted a rule regarding limited representation that directly contravenes EOIR's Rule. Washington Rule of Professional Conduct 1.2 specifies that "lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."  WRPC 1.2(c).  As the comments to Rule 1.2 reflect, "the client [has] the ultimate authority to determine the purposes to be served by legal representation," WRPC 1.2, cmt. [1], and there are a variety of reasons why limited representation may be necessary or desirable, including the client's limited objectives.  *Id.*, cmt. [6].  Moreover, limited representation may, in some circumstances, serve the best interests of both the lawyer and the client, if "a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited...."  *Id.*, cmt. [7]. EOIR's Rule, however, disregards Washington's decision to allow limited representation, thus violating Washington's sovereign right to regulate attorney conduct.

The compulsory-representation rule also conflicts with the attorney's duty to keep client confidences. When a NWIRP lawyer consults with a client about *future* (or even *potential*) immigration proceedings—be it an asylum application, possible removal, or an adjustment of status—the lawyer's duty to file a notice of appearance is triggered, even though the client may not want to disclose the fact they have received legal advice.  Lawyers may not, however,

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – 18

"reveal information relating to the representation of a client."  WRPC 1.6(a).  It is "a fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation."  RPC 1.6, cmt [2].  This ironclad guarantee of confidentiality "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."  *Id.*, cmt [3].  Washington has adopted additional comments to Rule 1.6, reflecting the State's *expansion* of a lawyer's duty of confidentiality beyond that imposed under the Model Rule:

> The phrase "information relating to the representation" should be interpreted broadly. The "information" protected by this Rule includes, but is not necessarily limited to, confidences and secrets. "Confidence" refers to information protected by the attorney client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

*Id.*, cmt. [21].

The challenged regulations eviscerate this duty of confidentiality and leave NWIRP attorneys with an impossible choice: disclose to the government the fact that a client has obtained confidential legal advice by filing a notice of appearance, or refuse to appear, thereby risking disciplinary sanctions.  The Rule's obvious conflict with attorney duties and rights imposed by state law further shows why the Rule violates the Tenth Amendment.

**B.      NWIRP Will Suffer Imminent and Irreparable Harm Absent an Injunction**

Standing alone, EOIR's violation of NWIRP's First and Tenth Amendment rights "unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for the purposes of the issuance of a preliminary injunction."  *Elrod*, 427 U.S. at 373; *see also San Diego Comm. Against Registration & the Draft (Card) v. Governing Bd. of Grossmont Union High Sch. Dist.*, 790 F.2d 1471, 1473 (9th Cir. 1986) ("[t]he loss of First Amendment freedoms ... [as] [t]he timeliness of political speech is particularly important.").  "Where a plaintiff alleges

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may

be presumed." *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d

Cir. 2003). On these grounds alone, NWIRP establishes the requisite harm.

Moreover, NWIRP's ability to advance the rights of immigrants in removal proceedings

is severely impacted.  Dkt. 4 ¶ 11; Dkt. 3 ¶ 15.  For example, the Rule prevents NWIRP from:

- Interviewing asylum seekers about the harm they suffered in their home country; advising them of their eligibility for asylum, withholding of removal, or relief under CAT; explaining which forms they must complete and why it is critical to include certain facts in those forms; and providing evidence of country conditions that the individual would not otherwise know to research or be able to access. *Compare* Dkt 14-2 at 6–7 (attorneys may only assist immigrants in obtaining those documents that the client has "independently determined" are "necessary for their immigration case," and, in assisting with forms, may not "provide advice on how to answer a question"), *with, e.g.*, Dkt. 3 at ¶ 8 (individuals who have "limited education or knowledge of English"), and *id.* at ¶ 9 (individuals who are "illiterate or speak a rare language").[7]

- Reviewing an individual's notice to appear (charging document) and other documents, advising them as to their grounds of removability and options of relief, and preparing corresponding motions or applications for relief.  Dkt. 1 at ¶ 3.21(g); Dkt. 4 at ¶ 8 (explaining that NWIRP cannot enter an appearance for removal proceedings in another state); *id.* at ¶ 16 (citing an example of an individual who needed such assistance).

- Interviewing an individual about their criminal history and charges of removability, researching whether a certain conviction constitutes a ground of removability, and advising how to respond to the factual allegations and charges of removability; helping draft a motion to terminate proceedings or providing them with already-prepared briefs on whether certain convictions constitute removable offenses. Dkt. 1 at ¶ 3.21(f); Ex. 3 at ¶ 11 (noting "complex and evolving" nature of such legal analysis).

- Reviewing the facts of an individual's prior removal case, advising them of grounds to re-open removal proceedings, and helping draft and file a motion to reopen, as expressly precluded by the cease-and-desist letter.  Dkt. 1 at ¶ 3.21(h); Dkt. 8-1 at 1–2; Dkt. 3 ¶ 10 (discussing importance of pro se assistance for motions to reopen).

Prior to the TRO, in only a two week period, NWIRP was unable to help four non-

detained asylum seekers fill out or physically submit applications in order to meet a statutory

deadline.  Dkt. 4 ¶ 16; *see* Compl. ¶ 3.21(d).  NWIRP also could not help another non-detained

individual file a motion to change venue without entering an appearance.  Dkt. 4 ¶ 9.  Every

single day until the Court entered the TRO, NWIRP was forced to refuse to provide limited legal

services to unrepresented persons detained at the NWDC.  Barón Decl. ¶ 8; Dkt. 3 ¶ 14.

---

[7] This is particularly important for individuals who are facing a one-year deadline, Dkt. 4 at ¶ 7, 8, 12, and for detained individuals, whose only alternative is to ask for help from a fellow detainee.  Dkt. 3 at ¶ 9.

MOTION FOR PRELIMINARY INJUNCTION
(No. 2:17-cv-00716-RAJ) – 20

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

NWIRP is also harmed by the fact that volunteer attorneys will no longer be able to take cases that help NWIRP serve more clients and further its mission. *See* Allen Decl. Exs. V-HH (detailing likelihood law firms' pro bono services would cease if the Rule prohibited limited scope representation).   In short, the Rule has a profound and adverse impact on NWIRP's ability to carry out its mission.

Finally, EOIR's prohibition against limited pro se assistance translates into irreparable harm for hundreds of unrepresented individuals in proceedings before the Seattle and Tacoma immigration courts. *See* Dkt. 4 ¶¶ 12-15; Dkt. 3 ¶¶ 9-11.  NWIRP is entitled to assert—and the court is entitled to rely on—the harm caused to these individuals for purposes of a preliminary injunction.[8] *See e.g. Singleton v. Wulff*, 428 U.S. 106, 114 (1976); *Craig v. Boren*, 429 U.S. 190 (1976); *Barrows v. Jackson*, 346 U.S. 249 (1953); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).  The harm is particularly pronounced for detained immigrants who face significant challenges to obtaining legal representation or evidentiary support for their cases.[9]

## C.   The Balance of Equities and Public Interest Strongly Favor a Preliminary Injunction

Since this case involves the government, the balance-of-equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013).  As recognized by the Washington State Attorney General, NWIRP "is essential to the [State's] mission as the primary provider of free and low-cost immigration assistance in the State." Dkt. 18-1 at 2.  A limitation of NWIRP's critical services would be detrimental to the

---

[8] A plaintiff with a unique relationship to a third party can assert the rights of others when the plaintiff: (1) possesses a concrete interest in the outcome of the dispute (NWIRP's mission to advocate for immigrants); (2) has a close relationship with the party whose rights it is asserting (attorney client relationship); and (3) there is some hindrance to the third party's ability to protect its own interest (immigrant's lack of English and unlikely to assert representation rights).  *See Singleton*, 428 U.S. at 114-15.

[9] *See* Dkt. 3 ¶ 9; Ingrid Eagly & Steven Shafer, *Special Report: Access to Counsel in Immigration Court*, Am. Imm. Council, (Sept. 2016), at 6, available at https://www.americanimmigrationcouncil.org/research/access-counsel-immigration-court (last accessed May 4, 2017) ("[I]n the immigration system noncitizens can be transferred to detention centers located a great distance from where they reside or were apprehended.  This means that they are far from their families, lawyers, and the evidence they need to support their cases.  Furthermore, many detention facilities are located in remote areas."); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1690 (2013) ("[D]uring removal proceedings noncitizens are not guaranteed legal representation and are often subject to mandatory detention, § 1226(c)(1)(B), where they have little ability to collect evidence.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

public interest.  *Id.* at 2.  And, as the City of Seattle recognizes, "providing funds to enable indigent persons to obtain legal counsel for immigration related matters is a public function, providing necessary support for the poor and infirm." Allen Decl. Ex. II ¶ 4(g).  EOIR's Rule will significantly impair the public interest of Washington's state and local governments in ensuring that free and low-cost immigration assistance is available to their residents.

When considering "the competing claims of injury and … the effect on each party of the granting or withholding of the requested relief," the balance favors NWIRP.  *Winter*, 555 U.S. at 24 (internal quotation omitted).  Here, and most simplistically, the harm caused by *not* continuing the injunctive relief is significantly greater than any possible harm caused by enjoining EOIR from implementing its new interpretation of the nine-year-old Rule.

### 1. The Public Interest Favors Preventing the Violation of Constitutional Rights

"It is *always* in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002; *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011) ("[T]he public interest favors applying federal law correctly."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

### 2. The Public Interest Favors Allowing Limited Representation

It is decisively in the public interest to have more individuals in the immigration system receive more legal advice.  The Rule eviscerates this interest.  EOIR's new interpretation of the Rule will result in preventing NWIRP, and countless other organizations like it, from "helping a highly vulnerable and extremely needy population."  Allen Decl. Ex. L ¶ 8.  There is absolutely no doubt that the cease-and-desist letter has already had a chilling effect, and if left unchecked, will almost certainly eviscerate much of the pro bono legal assistance presently available to immigrants.  *Id.* Ex. E ¶ 7 (likely have to stop assisting asylum applicants and detained individuals in filling out forms); Ex. R ¶ 9 (program assisting immigrants would cease to exist); Ex. 8 ¶ 13 (unable to assist with basic filings to prevent *in absentia* orders); Ex. I ¶¶ 9, 10

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(discontinue consultations with hundreds of individuals per year); Ex. F ¶¶ 5, 7 (prevent week-long service trip where law students help draft asylum applications and declarations); Ex. D ¶ 9 (clinic does not have capacity to agree to full representation of every individual); Ex. K ¶ 8 (same); Ex. S ¶ 8 (limit or entirely prevent assistance to *pro se* detained and non-detained immigrants who have no other assistance available); Ex. Q ¶ 9 (if forced to choose "resource limitations would dictate that we provide them with no services, sometimes with tragic results for the respondents involved."); Ex. N ¶¶ 7, 11-12 (lose opportunity to assist asylum seekers in filing an application and individuals from receiving *in abstentia* removal orders); Ex. M ¶ 7 (forced to turn away those who will not be able to find representation elsewhere); Ex. B ¶¶ 5, 10 (limited scope services would be "denied to those immigrants who need it most"); Ex. H ¶ 8 (constrain ability to represent potential class members in limited capacity beyond bond hearings and provide pro bono assistance on discrete issues); Ex. C ¶ 9 (prevent information and advice to families and "threatens ability to provide "basic legal information to clients, that cannot be transmitted via fliers, handouts, or mass presentations"); Ex. L ¶ 7 (unable to help the majority of clients); Ex. O ¶ 7 (prevent from assisting in preparation of forms and applications and evaluating and providing advice); Ex. P ¶ 6, 14 (unable to provide advice to questions after KYR presentations and the order "creates an incentive for children's advocates such as KIND to withhold free assistance of the type they have previously rendered to the benefit of unrepresented children as well as the Court"); Ex. J ¶ 6 (same); Ex. U ¶ 17 (Southern Poverty Law Center's program to represent individuals at a detention center where only six percent of detainees have attorneys would "dramatically reduce the number of clients" it could serve); Ex. T ¶ 16 (hundreds of detained immigrants would not have any legal representation).

Many law firms across the country partner with NWIRP and other similar organizations to provide limited legal services to immigrants on a volunteer basis. Stifling the ability of law firms to help clients simply because they "cannot provide full scope direct representation" is contrary to the public interest and "is counter-productive to the human and humane goal of helping those in need of legal services." Ex. Z ¶ 8. EOIR's interpretation of its Rule will limit,

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  or eliminate entirely, law firms' abilities to provide limited scope assistance at detention centers,

2  in legal clinics, and otherwise working in conjunction with NWIRP and groups like them." *Id.*

3  ¶ 8; Ex. DD ¶ 16; Ex. X ¶ 10; Ex. CC ¶ 7; Ex. Y ¶ 12; Ex. I ¶ 11; Ex. EE ¶ 14; Ex. GG ¶ 14; Ex.

4  V. ¶ 19.  The law firms provide critical attorney representation to an under-represented

5  population, but are limited both in the time they have to devote to representation, Ex. W ¶ 11,

6  and their reliance on NWIRP and similar providers for their expertise to "mentor...attorneys and

7  provide critical technical assistance to ensure [the firms] are providing the best possible service."

8  Ex. Z ¶ 6.  *See also* Ex. AA ¶ 12; Ex. BB ¶ 12; Ex. DD ¶ 6; Ex. CC ¶ 12; Ex. Y ¶ 12; Ex. I ¶ 11;

9  Ex. FF ¶ 4; Ex. EE ¶ 12; Ex. HH ¶ 9; Ex. V ¶ 7.

10        Finally, "[l]imited-scope services ... create efficiencies for the immigration court and

11  ICE counsel, which would otherwise have to expend significantly greater resources on each

12  case."  Ex. I ¶ 14.  It is against the public interest to "increase the number of individuals

13  appearing before EOIR without any preparation or understanding of the proceedings" since this

14  will inevitably "hamper the court's efficiency."  Ex. I ¶ 10.

15  **D.        The Preliminary Injunction Should Provide Nationwide Relief**

16        At the hearing on NWIRP's motion for a temporary restraining order, EOIR advised the

17  Court that it would potentially advance its new application of the Rule by issuing similar cease-

18  and-desist letters to others.  Allen Decl. Ex. A 56:17-57:8.  This alone justifies the Court in

19  continuing to enjoin EOIR from enforcing the Rule on a nationwide basis.  But, beyond this,

20  other legal service providers are now facing the chilling effect of EOIR's order to NWIRP,

21  fearful that their own, similar conduct could result in disciplinary action.  *See id.* Exs. B–U; §

22  III(C)(2), *supra*.  Without the protection afforded by nationwide relief, their services will be

23  hindered by EOIR's threat of disciplinary sanctions.

24                                    **IV.        CONCLUSION**

25        NWIRP respectfully asks this Court to convert the temporary restraining order into a

26  preliminary injunction, allowing NWIRP and others to continue providing vital legal assistance

27  to unrepresented immigrants while this lawsuit is pending.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 8th day of June, 2017.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Northwest Immigrant Rights Project*

By  *s/Jaime Drozd Allen*
  Michele Radosevich, WSBA #24282
  Jaime Drozd Allen, WSBA #35742
  James Harlan Corning, WSBA #45177
  Robert E. Miller, WSBA #46507
  Laura-Lee Williams, WSBA #51358
  1201 Third Avenue, Suite 2200
  Seattle, WA  98101-3045
  Telephone: (206) 622-3150
  Fax: (206) 757-7700
  E-mail:  micheleradosevich@dwt.com
     jaimeallen@dwt.com
     jamescorning@dwt.com
     robertmiller@dwt.com
     lauraleewilliams@dwt.com


NORTHWEST IMMIGRANT RIGHTS PROJECT
Matt Adams, WSBA #28287
Glenda M. Aldana Madrid, WSBA # 46987
Leila Kang, WSBA #48048
615 2nd Avenue, Suite 400
Seattle, WA 98104-2244
Phone: (206) 957-8611
Fax: (206) 587-4025
E-mail:  matt@nwirp.org
   glenda@nwirp.org
   leila@nwirp.org

# CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, I filed the foregoing using CM/ECF which will cause a copy to be sent to the following:

*Attorneys for Defendants Jefferson B. Sessions, III Attorney General of the United States; United States Department of Justice; Executive Office for Immigration Review; Juan Osuna; Jennifer Barnes*

| | |
|---|---|
| Carlton Frederick Sheffield | carlton.f.sheffield@usdoj.gov |
| Gisela A. Westwater | gisela.westwater@usdoj.gov |
| Gladys M. Steffens Guzman | Gladys.Steffens-Guzman@usdoj.gov; |
| Victor M. Mercado-Santana | victor.m.mercado-santana@usdoj.gov |

*Attorneys for Amicus Attorney General of Washington*

| | |
|---|---|
| Patricio A. Marquez | PatricioM@atg.wa.gov, chamenew@atg.wa.gov, colleenm1@atg.wa.gov, marshac@atg.wa.gov |

*Attorneys for Amicus American Civil Liberties Union of Washington (ACLU)*

| | |
|---|---|
| Andrew Garcia Murphy | agm@hcmp.com, brenda.partridge@hcmp.com |
| Michael J. Ewart | jake.ewart@hcmp.com, angie.perkins@hcmp.com |

DATED: June 8, 2017

By   *s/ Jaime Drozd Allen*
Jaime Drozd Allen, WSBA #35742
Attorney for Plaintiffs

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax