Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST IMMIGRANT RIGHTS PROJECT ("NWIRP"), a nonprofit Washington Public benefit corporation; and YUK MAN MAGGIE CHENG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; JAMES MCHENRY, in his official capacity as Acting Director of the Executive Office for Immigration Review; and JENNIFER BARNES, in her official capacity as Disciplinary Counsel for the Executive Office for Immigration Review,<br><br>Defendants. | Case No. 2:17-cv-00716<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS |

DEFENDANTS REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS
(Case No. 2:17-cv-716)

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

-1-

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................................. 1

    I.    Plaintiffs' claims under the First Amendment should be dismissed. ................................ 1

        a.    This Court's ruling on the Plaintiffs' motion for preliminary injunction was a preliminary ruling and is not binding on this Court as the law of the case .............. 1

        b.    Plaintiffs urge this Court to imagine a sweeping interpretation of Rule 102(t) that has never been applied by EOIR, solely for purposes of bolstering their First Amendment Claim ................................................................................................... 2

        c.    Rule 102(t) is reasonable in light of the purpose it serves, and is viewpoint neutral; Plaintiffs misapprehend the test applicable to nonpublic forums ............................ 6

        d.    To the extent there is any question about the scope of Rule 102(t), the Court should adopt a narrowing construction consistent with the agency's own application of the Rule ................................................................................................................... 7

    II.    EOIR's regulation of immigration court practitioners' is permitted under the Tenth Amendment and cause undue conflict with Washington's power to regulate lawyers ............................................................................................................. 10

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Berrigan v. Sigler*,
   499 F.2d 514 (D.D.C. 1974) .................................................................................................. 2

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ............................................................................................... 9

*Canatella v. Stovitz*,
   365 F. Supp. 2d 1064 (N.D. Cal. 2005) ................................................................................. 8

*City of Angoon v. Hodel,*
   803 F.2d 1016 (9th Cir.1986) ................................................................................................ 1

*DeBartolo Corp., v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988)............................................................................................................... 7

*Dent v. Holder*,
   627 F.3d 365 (9th Cir. 2010) ................................................................................................. 7

*Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*,
   112 F.3d 1283 (5th Cir. 1997) ............................................................................................. 10

*Gadda v. Ashcroft,*
   377 F.3d 934 (9th Cir. 2004) ............................................................................................ 1, 3

*Golden State Transit Corp. v. City of Los Angeles,*
   754 F.2d 830 (9th Cir. 1985) ............................................................................................... 10

*Koden v. U.S. Dep't of Justice*,
   564 F.2d 228 (7th Cir. 1977) ......................................................................................... 10, 11

*Preminger v. Peake*,
   552 F.3d 757 (9th Cir. 2008) ............................................................................................. 6, 7

*Romero v. U.S. Dep't. of Justice*,
   556 F. App'x 365 (5th Cir. 2014) ........................................................................................ 10

*Sperry v. Florida ex. rel. Florida Bar*,
   373 U.S. 379 (1963)....................................................................................................... 10, 11

*Swarmer v. United States*,
   937 F.2d 1478 (9th Cir. 1991) ............................................................................................... 6

*United States v. Arizona*,
   2010 WL 11405085 (D. Ariz. Dec. 10, 2010) ................................................................ 2, 3

*United States v. Houser*,
   804 F.2d 565 (9th Cir. 1986) ............................................................................................ 2

*United States v. Smith*,
   389 F.3d 944 (9th Cir. 2004) ............................................................................................ 2

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981) .............................................................................................. 1, 2, 3, 4

*Zal v. Steppe*,
   968 F. 2d 924 (9th Cir. 1992) ........................................................................................... 8

**STATUTES**

8 U.S.C. § 1103(g) ............................................................................................................... 12

8 U.S.C. § 1362 ................................................................................................................. 4, 12

28 U.S.C. § 530B .................................................................................................................... 7

**REGULATIONS**

8 C.F.R. § 1001.1(i) ................................................................................................................ 8

8 C.F.R. § 1001.1(k) ........................................................................................................... 8, 9

8 C.F.R. § 1003.102(t) ................................................................................................. 1, passim

8 C.F.R. § 1003.16(b) ............................................................................................................. 4

8 C.F.R. § 2635.101 ................................................................................................................ 7

**FEDERAL REGISTER**

23 Fed. Reg. 2,670 ................................................................................................................ 11

65 Fed. Reg. 39,513 ................................................................................................................ 7

73 Fed. Reg. 44,178 ................................................................................................................ 6

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS
(Case No. 2:17-cv-716)                                -iii-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

73 Fed. Reg. 76,914 ................................................................................................................. 6, 10

73 Fed. Reg. 76,917 ..................................................................................................................... 7

73 Fed. Reg. 76,918 ................................................................................................................... 10

**MISCELLANEOUS**

Wash. R. Prof. Conduct 1.2 ...................................................................................................... 12

This Court should grant Defendants' motion to dismiss Plaintiffs' complaint. This Court's ruling on the preliminary injunction is not binding as law of the case because of its preliminary nature. Furthermore, the Court should reject Plaintiffs' invitation to read 8 C.F.R. § 1003.102(t) i more broadly than the Executive Office for Immigration Review ("EOIR") has ever done. Rather, any concerns this Court has regarding the constitutionality of the agency's regulations should be addressed by engaging in a narrow construction of the statute as consistently proposed by Defendants. Indeed, 8 C.F.R. § 1003.102(t) is amenable to a narrow reading that avoids constitutional concerns because it can and should be read as applying to speech conducted either in person or via filings with the immigration court or the Board of Immigration Appeals ("Board"). This regulation is viewpoint neutral and reasonable in light of the forum's need to promote quality in the representation of respondents in immigration court proceedings. Lastly, the regulation does not violate the Tenth Amendment because EOIR has the inherent and statutory power to regulate the practice of immigration law, including the conduct of any practitioners before it, nor does the regulation in fact conflict with state rules. Consequently, this Court should dismiss Plaintiffs' Complaint for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

**ARGUMENT**

**I.      Plaintiffs' claims under the First Amendment should be dismissed.**

      **a.      This Court's ruling on the Plaintiffs' motion for preliminary injunction was a preliminary ruling and is not binding on this Court as the law of the case.**

While Plaintiffs' first argue that the "law-of-the-case" doctrine precludes the Court from revisiting issues addressed in its Order granting Plaintiffs' Motion for Preliminary Injunction, Pls.' Resp., at 4; *see* ECF No. 66, Plaintiffs ignore overwhelming authority holding that decisions on preliminary injunctions do not constitute binding "law of the case." *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("the finding of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); *City of Angoon v. Hodel,* 803 F.2d 1016, 1024 n. 4 (9th Cir.1986) (determinations corresponding to a preliminary injunction do not constitute the law of the case); *Golden State Transit Corp. v. City*

*of Los Angeles,* 754 F.2d 830, 832 n. 3 (9th Cir.1985) ("As a general rule, decisions on preliminary injunctions do not constitute law of the case and parties are free to litigate the merits.") (internal quotations omitted), *rev'd on other grounds*, 475 U.S. 608 (1986); *see also Berrigan v. Sigler*, 499 F.2d 514, 519 (D.D.C. 1974) ("The decision of a trial . . . court to grant or deny a preliminary injunction does not constitute the law of the case for purposes of further proceedings and does not limit or preclude the parties from litigating the merits . . .").

The cases Plaintiffs cite to invoke the "law of the case" doctrine are inapposite. *See* Pls.' Resp. at 4-5 (citing *United States v. Arizona*, 10–cv-1413, 2010 WL 11405085, at *6 (D. Ariz. Dec. 10, 2010); and *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004); and *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)).  Neither *Smith* nor *Houser* involved a ruling on a motion for preliminary injunction, and in any event, in both cases the Ninth Circuit *declined* to apply the law of the case doctrine.  *See Smith*, 389 F.3d at 948-49 ("[A] district court may reconsider its prior rulings so long as it retains jurisdiction over the case."); *Houser*, 804 F.2d 567-69 (noting "that the doctrine is discretionary, not mandatory," and that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment" (internal quotation marks omitted)).  In *Arizona*, an unpublished district court decision, the court decided on a Rule 12(b)(6) motion not to revisit issues on which plaintiff had already demonstrated a likelihood of success, but even in doing so echoed the Supreme Court's holding that law of the case did not apply to preliminary injunction determinations.  2010 WL 11405085, at *6 (quoting *Camenisch*, 451 U.S. at 395).  In sum, the law of the case doctrine does not preclude this Court from analyzing anew whether Plaintiffs have failed to state a claim on which relief can be granted.

    **b.**    **Plaintiffs urge this Court to imagine a sweeping interpretation of Rule 102(t) that has never been applied by EOIR, solely to bolster their First Amendment claim.**

Plaintiffs argue that Defendants have attempted to "[r]estrict [their] [o]ut-of-[c]ourt [s]peech to [p]otential [c]lients." Pls.' Resp. at 5.  But as discussed in Defendants' Motion to Dismiss, the Complaint fails to allege a single instance in which EOIR has applied Rule 102(t) to communications – either written or oral – that were not actually presented to an immigration

DEFENDANTS' REPLY IN SUPPORT OF                                            P.O. Box 868 Ben Franklin Station
THEIR MOTION TO DISMISS                                                               Washington, D.C. 20044
(Case No. 2:17-cv-716)                                                                     -2-                                                          (202) 305-7181

court.  *See* Defs.' Mot. at 14-15.  Indeed, EOIR's April 5, 2017 letter cited two specific motions to reopen apparently authored by NWIRP staff, and it is undisputed that both of these motions were filed in immigration court.  Compl. at ¶ 3.15-17.

In their Response, Plaintiffs cite this Court's Order granting their Motion for Preliminary Injunction, wherein the Court expressed skepticism about whether Rule 102(t) would apply only to in-court statements.  ECF No. 66, 11, n. 5 ("Attorneys who speak in such a forum – that is, as a representative inside the courtroom – have presumably filed a notice of appearance."), *id*., is perfectly consistent with Defendants' position.  Indeed, EOIR's application of Rule 102(t) is aimed precisely at enforcing this commonsense presumption but with one important clarification – that attorneys may "speak in a forum" through written as well as oral communication and therefore must file an appearance when directly communicating to a court by either means.  To the extent that the Court suggested nonpublic forum analysis only applies to statements made within the physical confines of a courtroom, Defendants urge the Court to reconsider this position.  As discussed in Defendants' Motion to Dismiss, "[c]ourts have routinely held that nonpublic forum analysis applies to rules that govern an attorney's oral *or written* statements *to a court*." *See* Defs.' Mot. at 13 (citing cases).  Insofar as written pleadings are almost always prepared outside the physical confines of a courtroom, the cases cited in Defendants' Motion to Dismiss establish that nonpublic forum analysis extends to statements directed *to a court*, regardless of the physical space in which those statements are authored.  *Id*.  Upsetting this delicate balance would affect practice before Article III courts – not just immigration courts.  *Id*.

In their effort to re-interpret Rule 102(t) to better suit their constitutional claims, Plaintiffs also mischaracterize Defendants' position.  *See* Pls.' Resp. at 6.  Contrary to what Plaintiffs assert, Defendants do *not* take the position that Rule 102(t) applies to "self-help workshops, individual consultations, and asylum workshops."  *See id.*  As long as the individual conducting these activities does not submit written statements to the immigration court, they are free to engage in all of those activities without filing a notice of appearance.  As Defendants have repeatedly stated, EOIR only applies Rule 102(t) to statements made out of court (in a physical sense) if they *presented to* an immigration court – thus constituting in-court speech.  By focusing

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS
(Case No. 2:17-cv-716)                                    -3-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

on various scenarios, such as self-help workshops, individual consultations, and asylum workshops, to which EOIR has never applied Rule 102(t), Plaintiffs obfuscate the real issue: whether nonpublic forum analysis governs documents that are prepared for and actually filed in immigration court - the exact in-court speech that led to the April 5, 2017 letter.

Plaintiffs' effort to mischaracterize the scope of Rule 102(t) also relies on the Legal Orientation Program ("LOP") memorandum that Defendants attached to their Opposition to Plaintiffs' Motion for Temporary Restraining Order. *See* Pls.' Resp. at 6 (citing ECF No. 14-2). As explained in Defendants' previous filings, the purpose of the LOP memorandum was to ensure that organizations receiving LOP funding[1] use that funding to provide legal orientation, rather than legal representation, as directed by law.[2]  ECF No. 14 at 5; *see* ECF No. 14-2 (citing 8 U.S.C. § 1362, and 8 C.F.R. § 1003.16(b)).  The LOP memorandum plainly states that practitioners *may* indeed participate in many of the activities that Plaintiffs claim are at risk, all *without* filing a notice of appearance.  *See* ECF No 14-2 (explaining that activities which generally do not require entry of an appearance include: group orientations, individual orientations, distribution of materials, self-help workshops, assistance in obtaining documents, and assistance in completing legal forms).

Plaintiffs nevertheless cite several passages from the memo out of context in an attempt to suggest that EOIR has read the regulations defining "practice" and "preparation" to cover out of court speech.  Pls.' Resp. at 6.  The LOP addresses activities for which a provider may use program funds without triggering representation while the regulation addresses conduct that reaches an immigration court or the Board and therefore triggers the requirement to file a notice of appearance before the appropriate forum.  These passages do not support the reading Plaintiffs imply.  For example, the language in the memorandum Plaintiffs cite regarding "direct preparation of an individual's papers" should be read in concert with the next section, "Assistance in Obtaining Documents," which states that "LOP presenters *may* assist . . . in obtaining personal documents (such as medical or criminal conviction records) under LOP

---

[1] Plaintiff Northwest Immigrant Rights Project receives LOP funding for its work as LOP provider at the Northwest Detention Center in Tacoma, Washington.  *See* ECF No. 50 at ¶ 64.

[2] The LOP memorandum does not prohibit organizations from advocating on behalf of their clients; instead it provides guidance so that program funds are used for their intended purpose. *Id.*

funding." ECF No. 14-2 (emphasis added). Reading these sections together, it is evident that "direct preparation of an individual's papers" refers to authorship of documents to be filed in immigration court, and not merely to assistance with obtaining or organizing papers. While preparing documents to be filed in immigration court is not compensable under the LOP, it is important to note that under Rule 102(t) the preparer would not be required to file a notice of appearance unless and until the document is filed with the immigration court or Board. Plaintiffs also cite a portion of Steven Lang's Declaration out of context. *See* Pls.' Resp. at 6 (citing ECF No. 50, at ¶ 68). In the memo, Lang quotes from part of the LOP memorandum he authored and notes that practitioners should be "careful not to give legal advice concerning [an] individual's specific case*, see* ECF No. 14-2, at 4. The next sentence of the LOP memorandum, however, goes onto clarify that representation occurs when a practitioner prepares a filing for immigration court. ECF No. 14-2, at 4 (emphasis added) (representation "does not occur unless the legal representative (1) studies the fact of the case, (2) gives legal advice, *and* (3) performs other activities, *such as the preparation of forms or a brief for the Immigration Court*."[3])

In any event, given the purpose of the LOP memorandum – ensuring that government funds are used for "legal orientation" and not representation – it makes sense that the document conservatively cautions LOP providers to avoid scenarios that begin to approach "legal representation." ECF No. 14-2, at 2 ("The purpose of this memo is to provide guidance in distinguishing between services considered 'legal representation' and those considered 'legal orientation' for individuals providing contract services through the . . . Legal Orientation Program. The LOP memorandum nevertheless serves to clarify that practitioners may proceed with many of the activities Plaintiffs claim are in jeopardy – self-help workshops, individual consultations, assistance in completing forms – without the filing of a notice of appearance.[4]

---

[3] The LOP memorandum goes on to state that while *all three* of these elements are necessary in order to constitute representation under federal regulations, "[p]roviding even one of these three services . . . may lead to circumstances in which an attorney-client relationship is created under local state bar rules." ECF No. 14-2, at 4.
[4] Plaintiffs also claim that "Defendant Barnes initially contacted NWIRP because she believed NWIRP's practice of hosting pro se asylum workshops violated the Regulation." *See* Pls.' Resp. at 6. Plaintiffs did not allege this fact in their Complaint, and instead offered only a vague allegation that "Defendant Barnes stated that EOIR's regulations limit organizations, including nonprofit organizations, from assisting pro se individuals in filling out asylum applications." Compl. at ¶ 3.13.

| DEFENDANTS' REPLY IN SUPPORT OF | | P.O. Box 868 Ben Franklin Station |
| THEIR MOTION TO DISMISS | | Washington, D.C. 20044 |
| (Case No. 2:17-cv-716) | -5- | (202) 305-7181 |

**c. Rule 102(t) is reasonable in light of the purpose its serves, and is viewpoint neutral; Plaintiffs misapprehend the test applicable to nonpublic forums.**

While Plaintiffs ostensibly argue that Rule 102(t) "fails to pass muster" even under nonpublic forum analysis, they arrive at this result only by largely ignoring the test that applies in nonpublic forum cases and resorting instead to intermediate scrutiny. *See* Pls.' Resp. at 8-10. As Plaintiffs seemingly acknowledge, a regulation that governs a nonpublic forum survives a First Amendment challenge if it is reasonable in light of the purpose served by the forum, and viewpoint neutral. Pls.' Resp. at 8-9; *see* Defs.' Mot. at 18-20.

Plaintiffs' argument as to why Rule 102(t) is not reasonable in light of the purpose served by the forum is simply that "the regulation is not narrowly tailored to achieve its own ends," and that "a less burdensome self-identification requirement would equally serve its purported need." Pls.' Resp. at 8-9. Defendants offered numerous reasons why Rule 102(t) addresses a "legitimate need." *See* Defs.' Mot. at 8-10, 18-20; *Preminger v. Peake*, 552 F.3d 757, 766 (9th Cir. 2008) (noting that under nonpublic forum analysis, the restriction "must reasonably fulfill 'a legitimate need'"). Plaintiffs do not appear to contest any of these points. *See* Pls.' Resp. at 8-9. Rather, Plaintiffs simply argue that Rule 102(t) is not reasonable because there may be less restrictive means of accomplishing the same result. *Id*. The Ninth Circuit has clearly held that for purposes of nonpublic forum analysis, "the restriction need *not* constitute the least restrictive alternative available." *Preminger*, 552 F.3d at 766 (emphasis added) (citing *Swarmer v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991)). Plaintiffs' suggestion that EOIR's objectives could be served "by far less intrusive requirements" is thus inapposite. *See* Pls.' Resp. at 9.

Plaintiffs similarly misread binding precedent with respect to whether the regulation is "viewpoint neutral." Pls.' Resp. at 9-10. "[I]n a nonpublic forum, the government has the right to make distinctions in access on the basis of subject matter and speaker identity, as long *as the distinctions are not an effort to suppress expression merely because public officials oppose the speakers view*." *Preminger*, 552 F.3d at 767 (emphasis added). While Plaintiffs suggest in their response that Rule 102(t) is not viewpoint neutral because it applies only to non-government practitioners, their Complaint in no way alleges that the regulation was somehow devised as a

means of suppressing expression by immigration attorneys. *See generally*, Compl. In any event, the rationale behind Rule 102(t) is well-documented in the Federal Register, as Defendants have described. *See* Defs.' Mot. at 8-10 (citing 73 Fed. Reg. 76,914 (Dec. 18, 2008), and 73 Fed. Reg. 44,178 (July 30, 2008)). Nothing there remotely suggests that the regulation is "an effort to suppress expression merely because public officials oppose the speaker's view." *Preminger*, 552 F.3d at 767. To the extent that government lawyers are subject to different ethical rules, that difference is attributable to their different role as public servants subject to state ethics rules, federal and agency regulations, and not to the viewpoints they may express in court. *See, e.g.*, 28 U.S.C. § 530B (imposing regulation of government attorneys); 8 C.F.R. § 2635.101 *et seq.* (government ethics regulations); 8 C.F.R. § 1003.109 (providing for referral of government attorneys accused of ethical violations); 73 Fed. Reg. at 76,917 (discussing regulation of government attorneys); 65 Fed. Reg. 39,522 (same). Indeed, by Plaintiffs' logic, any rule in any court that applies differently for government attorneys could be challenged as a form of "viewpoint discrimination."

### d. To the extent there is any question about the scope of Rule 102(t), the Court should adopt a narrowing construction consistent with the agency's own application of the Rule.

As stated in Defendants' Motion to Dismiss, "the doctrine of constitutional avoidance requires [the Court] to construe [a] statute [or] regulation, if possible, to avoid a serious constitutional question." Defs.' Mot. at 16 (citing *Dent v. Holder*, 627 F.3d 365, 375 (9th Cir. 2010)). Accordingly, the Supreme Court has held that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *DeBartolo Corp., v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Plaintiffs' primary arguments as to why this Court should not adopt a narrowing construction are based primarily on the allegations that Defendants have offered inconsistent interpretations of the regulation. *See* Pls.' Resp. at 11-13. Defendants disagree with this assessment,[5] but the issue is ultimately a distraction. Plaintiffs offered no authority for the

---

[5] In their effort to portray Defendants' position as "inconsistent," Plaintiffs rely in large part on statements made by Defendants' counsel at a Temporary Restraining Order hearing conducted nine days after the filing of the

DEFENDANTS' REPLY IN SUPPORT OF  
THEIR MOTION TO DISMISS  
(Case No. 2:17-cv-716) -7-  
P.O. Box 868 Ben Franklin Station  
Washington, D.C. 20044  
(202) 305-7181

position that a Court's obligation to consider a reasonably available narrowing construction diminishes if the government offers varying interpretations of a statute or regulation. *See* Pls. Resp. at 11-13.

The only relevant test – as Plaintiffs acknowledge– is whether the regulation is "readily susceptible" to a narrowing construction. Pls.' Resp. at 12. To the extent this Court has concerns about the scope of Rule 102(t), the Court can avoid the vast majority of these concerns by construing the rule to apply only to speech – either oral or written communication – that is directed to the immigration court or the Board. As explained above and in Defendants' Motion to Dismiss, courts have routinely held that First Amendment protections apply more narrowly in the context of speech – whether written or oral – that is actually presented to a court. *See* Defs.' Mot. at 13 (citing *Canatella v. Stovitz*, 365 F. Supp. 2d 1064, 1071 (N.D. Cal. 2005), and *Zal v. Steppe*, 968 F. 2d 924, 925-29 (9th Cir. 1992). Accordingly, construing Rule 102(t) in the manner suggested above would necessarily reduce the degree to which the rule affects First Amendment protected speech.

Notwithstanding Plaintiffs' argument to the contrary, *see* Pls.' Resp. at 13-14, interpreting Rule 102(t) so that it applies only to speech that is directed to the immigration court or the Board is fully consistent with the language of the regulations. As explained in Defendants' Motion to Dismiss (and Defendants' Opposition to the Plaintiffs' Motion for Preliminary Injunction, *see* ECF No. 47, at 12) the term "practice" includes a built-in limitation in that it only applies to appearances "before . . . any immigration judge, or the Board." Defs'. Mot. at 13-14 (citing 8 C.F.R. § 1001.1(i)). Plaintiffs urge the Court to adopt an expansive reading of the term "preparation," as set forth in 8 C.F.R. § 1001.1(k), to encompass all forms of "study, advice, or auxiliary activities," regardless of whether any materials are ever filed in

---

Complaint. Pls.' Mot. at 11-13. It is entirely reasonable to expect that Defendants would be able to better articulate their position in later filings, after having additional time to review how the regulations in question have been applied in practice by the agency. Moreover, even at that early hearing, Defendants' counsel stated on several occasions that it was the presentation of materials to the immigration court that triggers the notice of appearance requirement. *See e.g.*, ECF No. 39-1, at 34:22 – 35:3 ("NWIRP is still allowed to consult with individuals, to provide know-your-rights presentations, they can still prepare forms, they can still engage in many of the average activities that they want to engage in so long as they don't engage in acts that constitute providing advice and providing actual assistance *that is to be presented before the immigration court*.") (emphasis added).

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS
(Case No. 2:17-cv-716)                               -8-

P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 305-7181

immigration court or with the Board. Pls.' Resp. at 14. But the Court need not "graft[] new words into the [regulation]" in order to limit its scope. *Id*. Rather, the Court need only recognize that the term being defined at 8 C.F.R. § 1001.1(k) is not simply "preparation," but "preparation, *constituting practice*." Indeed, as explained in Defendants' previous filings, a careful reading of the regulatory definitions of "practice" and "preparation, constituting practice" leads to the reasonable conclusion that the regulations only extend to those practitioners whose activities result in communications presented to the immigration court or the Board. *See* ECF No. 47, at 12 (explaining how the terms "practice" and "preparation" should be read in concert).

Plaintiffs also suggest that Defendants' narrowing construction is not viable because of uncertainty about when assistance with completing an asylum form triggers a notice of appearance requirement. Pls.' Resp. at 11-12. However, the regulations allow assistance with the preparation of materials to be filed before the immigration court without triggering the notice of appearance requirement. 8 C.F.R. § 1001.1(k). Defendants' counsel did acknowledge during the Preliminary Injunction hearing that application of this exception is often fact-specific because an individual assisting with an asylum form could conceivably populate blank spaces on an asylum form with legal arguments, which could trigger a notice of appearance requirement. Pls.' Resp., Ex. A, at 36:5-12 (ECF No. 76-1). Nevertheless, the fact-specific nature of these determinations is not the "fatal flaw" that Plaintiffs allege in their Response. Pls.' Resp. at 12. "[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes in the vast majority of its intended applications." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001). In this case, the narrowing construction proposed by Defendants makes it clear when a notice of appearance is required in the vast majority of situations: those who author briefs and motions must file a notice of appearance. On the other hand, the notice of appearance requirement does not apply to those who simply offer assistance via self-help workshops and know your rights presentations, as well as those who offer basic clerical assistance with completing asylum forms.

In sum, the narrowing construction proffered by Defendants is reasonable in light of the regulatory language, and would avoid the vast majority of the Constitutional concerns raised by

DEFENDANTS' REPLY IN SUPPORT OF  
THEIR MOTION TO DISMISS  
(Case No. 2:17-cv-716) -9-  

P.O. Box 868 Ben Franklin Station  
Washington, D.C. 20044  
(202) 305-7181

Plaintiffs. The Court should construe the regulations in this constitutionally adequate manner, and should reject Plaintiffs' invitation to purposely reach for a constitutionally suspect interpretation. This Court should therefore dismiss Counts I and II of Plaintiffs' Complaint.[6]

**II.   EOIR's regulation of immigration court practitioners is permitted under the Tenth Amendment and causes no undue conflict with Washington's power to regulate lawyers.**

Under the Tenth Amendment, the federal government has the ability to regulate practice before the immigration courts, including regulation of admission to practice and the conduct of practitioners. Plaintiffs rely on an extremely narrow reading of case law and EOIR authority to regulate immigration court practice. The case law does not support such a reading.

EOIR, as the federal administrator of the immigration court system, has the inherent and statutory authority to regulate the practice of immigration practitioners before its tribunals. *See* Defs.' Mot. at 21 (collecting statutory authority); *see also* ECF 66, at 13 (this Court stated "Congress may authorize agencies to regulate attorneys appearing before them"). Consequently, Plaintiffs' narrow interpretation of EOIR's authority to regulate immigration practitioners is inconsistent with Supreme Court precedent. *Sperry v. Florida ex. rel. Florida Bar*, 373 U.S. 379, 385 (1963) ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give the State's licensing board a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress."). In other words, *Sperry* recognizes that the state cannot interfere with a federal agency's power to regulate practice before its federal

---

[6] Plaintiffs inaccurately suggest that Defendants "wait[ed] at least six years after enactment" of Rule 102(t) before ever seeking to enforce it. Pls.' Resp. at 14. As Plaintiffs are well aware, EOIR has issued warning letters under Rule 102(t) in many instances dating back to at least 2012. *See* ECF No. 49-3, 49-7. Plaintiffs' argument that "they did not have reason to know that Defendants would enforce the Regulation to prevent NWIRP from offering limited legal services" is also problematic. Pls. Resp. at 18. First, the document that Plaintiffs' repeatedly cite as evidence for EOIR's "new" broad interpretation is the previously discussed LOP memorandum, which was authored in 2011. ECF No. 14-2. More fundamentally, the Final Rule adopting section 1003.102(t) in 2008 explicitly declined one commenter's suggestion that "the Department permit limited appearances." *See* 73 Fed. Reg. 76,914, 76,918; *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir. 1997) ("On a facial challenge to a regulation, the [statute of] limitations period beings to run when the agency publishes the regulation in the Federal Register.").

| | |
|---|---|
| DEFENDANTS' REPLY IN SUPPORT OF<br>THEIR MOTION TO DISMISS<br>(Case No. 2:17-cv-716)                           -10- | P.O. Box 868 Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 305-7181 |

forum, because the state of Washington only "maintains control over the practice of law within its borders *except to the limited extent necessary for the accomplishment of the federal objectives.*" *Id.* at 402 (emphasis added). In this case, such permissible federal regulation is of immigration court practitioners, a field with nationwide and unique concerns. Def. Mot. at 21-22. And, Plaintiffs' narrow interpretation of EOIR's authority to regulate immigration practitioners is inconsistent with courts that have found EOIR's regulation of the admission and conduct of immigration practitioners permissible. *Gadda v. Ashcroft*, 377 F.3d 934, 944-45 (9th Cir. 2004) (finding no conflict between EOIR attorney regulation and state regulation); *Romero v. U.S. Dep't. of Justice*, 556 F. App'x 365, 370 (5th Cir. 2014) (upholding EOIR authority to restrict practice of law by foreign law graduates); *Koden v. U.S. Dep't of Justice*, 564 F.2d 228, 230, 234, 235 (7th Cir. 1977) (stating that it is "elementary that any court or administrative agency which has the power to admit attorneys to practice has the authority to disbar or discipline attorneys" and finding that the immigration court has authority to regulate the conduct of immigration practitioners, i.e. representation for a fee and methods of soliciting clients).

Plaintiffs attempt to distinguish *Sperry* by alleging that it only involved authorization to practice, but not regulation of the conduct of practitioners. Pls.' Resp. at 21. That distinction misreads *Sperry*. *Sperry* upheld the authority of a federal agency under the Tenth Amendment to regulate *who* can practice before the agency, *what* conduct those practitioners may engage in, and whether practitioners do so competently. 373 U.S. at 383-84, 403-04; *id.* at 402 (Patent Office insists "on the maintenance of high standards of integrity," and failure to comply "may result in suspension or disbarment"). Under the Tenth Amendment, EOIR could regulate analogous conduct of immigration practitioners.[7] *Cf. Koden*, 564 F.2d at 234 (attorney discipline for immigration practitioners need not be "in connection with a proceeding pending" before the legacy INS or Board).[8]

---

[7] To the extent that Plaintiffs raise a "parade of horribles," alleging that EOIR cannot claim authority to regulate conduct beyond the confines of immigration court, Pls' Resp. at 22, such fears are unfounded because the regulation at issue applies to in-court activities.

[8] Plaintiffs' Tenth Amendment arguments, if accepted, ironically would also limit the ability of non-attorneys to practice before immigration courts on behalf of respondents. Def. Mot. at 22; *see also* 23 Fed. Reg. 2670 (Apr. 14, 1958). Such a result would have unintended consequences for Plaintiffs and other organizations that provide immigration-related services through accredited representatives. And it would limit out-of-state attorneys' ability to

DEFENDANTS' REPLY IN SUPPORT OF　　　　　　　　　　　　　　　P.O. Box 868 Ben Franklin Station
THEIR MOTION TO DISMISS　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20044
(Case No. 2:17-cv-716)　　　　　　　-11-　　　　　　　　　　　　　　　(202) 305-7181

Ultimately, Plaintiffs do nothing more than manufacture a conflict between Washington's rules authorizing (but not mandating) limited legal practice and EOIR's rule requiring notices of appearance. *See* Compl. ¶¶ 6.1-7.8. But there is no actual tension between these rules. While Rule 1.2(c) of the Washington Rules of Professional Conduct permits limited representation, that rule does not provide NWIRP with a carte blanche to engage in limited representation in any way it sees fit – it merely permits such practice *in state court* when such practice is reasonable and comports with other rules "and other law." Wash. R. Prof. Conduct 1.2 cmt.8; *see also id.* 1.2(c) & cmt. 7 (emphasizing that any limited representation must be reasonable and supported by informed consent). And in fact, EOIR allows practitioners to limit their representation to discrete aspects of immigration court proceedings by allowing notices of appearances to be filed solely for bond proceedings or for appeals before the Board and by providing a mechanism – which Plaintiffs do not allege to have tried – for withdrawing (and hence limiting) appearances. Def. Mot. at 23 n.10. Any concern regarding the scope of Rule 102(t) can be resolved with a narrowing construction of the statute. *See supra* Part I.d. The requirement of a notice of appearance does not cause any undue conflict with Washington's regulation of lawyers licensed by that state. And even if it did, as this Court stated, "Congress authorized EOIR to regulate the conduct of attorneys appearing before it. 8 U.S.C. §§ 1103(g), 1362. As such, EOIR may regulate immigration practitioners. ECF No. 66 at 13. This Court should, therefore, dismiss Counts III and IV for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint.

---

practice immigration law in Washington. *Id.* Significantly, the implications of such an interpretation for regulation of practice before this Court, other Article III courts, and all federal administrative adjudicative bodies.

| | |
|---|---|
| Dated: September 1, 2017. | Respectfully submitted, |
| | CHAD A. READLER<br>Acting Assistant Attorney General |
| | WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation |
| | GISELA A. WESTWATER<br>Assistant Director |
| | C. FRED SHEFFIELD<br>GLADYS M. STEFFENS GUZMÁN<br>Trial Attorneys |
| | /s/ Victor M. Mercado-Santana<br>VICTOR M. MERCADO-SANTANA<br>Trial Attorney<br>Civil Division, Office of Immigration Litigation<br>United States Department of Justice<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 305-7001<br>Facsimile: (202) 616-8962<br>victor.m.mercado-santana@usdoj.gov |
| | *Counsel for Defendants* |

# **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that all participants are CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 1, 2017              Respectfully submitted.
                                       /s/ Victor M. Mercado-Santana
                                       VICTOR M. MERCADO-SANTANA
                                       Trial Attorney
                                       Civil Division, Office of Immigration Litigation
                                       United States Department of Justice
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC  20044
                                       Telephone:  (202) 305-7001
                                       Facsimile:  (202) 616 -8962
                                       victor.m.mercado-santana@usdoj.gov

                                       *Counsel for Defendants*